# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT



## NO. 10-10676-FF

### KEVIN SPENCER,

Petitioner-Appellant,

v.

### UNITED STATES OF AMERICA,

Respondent-Appellee.

On Appeal from the United States District Court
for the Middle District of Florida

## INITIAL BRIEF OF KEVIN SPENCER

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Counsel for Kevin Spencer

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## NO. 10-10676-FF

---

KEVIN SPENCER,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

---

On Appeal from the United States District Court
for the Middle District of Florida

---

## INITIAL BRIEF OF KEVIN SPENCER

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Counsel for Kevin Spencer

Spencer v. USA
Case No. 10-10676-FF

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to the Federal Rule of Appellate Procedure 26.1 and the Eleventh Circuit Court Rule 26.1-1, Appellant Spencer certifies that the following persons and entities have an interest in the outcome of this case:

Corsemeier, Arnold B., Assistant United States Attorney;

Covington, Virginia M., United States District Judge;

Krutules, Agne, appellate counsel for Petitioner-Appellant;

McNamara, Linda Julin, Assistant United States Attorney, Deputy Chief, Appellate Division;

O'Neill, Robert, United States Attorney;

Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

Ronca, Peggy Morris, Assistant United States Attorney;

Savell, Julie Hackenberry, Assistant United States Attorney;

Spencer, Kevin, Petitioner-Appellant.

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Spencer respectfully requests oral argument. This is a case of first impression for this Court and involves an inter-circuit split -- whether a challenge to a career offender sentence is cognizable under 28 U.S.C. § 2255. The Appellant respectfully submits that oral argument would assist this Court in setting the precedent in this Circuit.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT i

TABLE OF CONTENTS ii

TABLE OF CITATIONS iv

STATEMENT OF JURISDICTION ix

STATEMENT OF THE ISSUES 1

STATEMENT OF THE CASE 1

 A. Course of Proceedings 1

 B. Statement of the Facts 2

 C. Statement of Standards of Review 7

SUMMARY OF THE ARGUMENT 8

ARGUMENT AND CITATIONS OF AUTHORITY 8

  I. Spencer's Challenge to a Career Offender Sentence is Cognizable under 28 U.S.C. § 2255 8

   A. The Sentencing Error Resulted in a Complete Miscarriage of Judgment 9

    a. Technical and Substantive Errors 9

    b. Inter-circuit Split 11

ii

c.  Law in this Circuit                                            14

d.  Miscarriage of Justice in this Case                           19

B. The Sentencing Error Violated Spencer's Due Process Rights     24

II.    Spencer Was Improperly Classified as a Career Offender      26

A. Career Offender Designation                                    26

B. Categorical and Categorical Modified Approaches                27

C. Spencer's Florida Conviction                                   31

D. Application                                                    33

a.  The Elements Clause                                       34

b.  The Residual Clause                                       36

CONCLUSION                                                        39

CERTIFICATE OF COMPLIANCE                                         41

CERTIFICATE OF SERVICE                                            42

APPENDIX 1

APPENDIX 2

APPENDIX 3

# TABLE OF CITATIONS

## Cases

*Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1582 (2008) — passim

*Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604 (1998) — 9

*Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298 (1974) — 10-11

*Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) — 1, 14-16, 22-23

*Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227 (1980) — 22

*Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468 (1962) — 9-10

*Hunter v. United States*, 130 S.Ct. 1135 (2010) — 19

*Hunter v. United States*, 449 Fed. Appx. 860 (11th Cir. 2011) (unpublished) — 18-19, 23

*Hunter v. United States*, 559 F.3d 1188 (11th Cir. 2009), *vacated by Hunter v. United States*, 130 S.Ct. 1135 (2010) — 1, 18-19

*James v. United States*, 550 U.S. 192, 127 S.Ct. 1586 (2007) — 37

*Johnson v. United States*, 544 U.S. 295, 125 S.Ct. 1571 (2005) — 23-24, 28-29, 34

*McKay v. United States*, 657 F.3d 1190 (11th Cir 2011) — 16-18, 23

*Munao v. State*, 939 So.2d 125 (Fla. App. 4 Dist. 2006) — 32, 37

*Narvaez v. United States*, 2011 WL 6382106 (7th Cir. 2011) — passim

*Raford v. State*, 828 So.2d 1012 (Fla. 2002) — 32-33, 37

*Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291 (1994) — 10, 20

*Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257 (1990) — 20

iv

*Schriro v. Summerlin*, 542 U.S. 248, 124 S.Ct. 2519 (2004) ............... 20

*Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254 (2005) ............ 29

*Shukwit v. United States*, 973 F.2d 903 (11th Cir. 1992) ................. 24

*State v. Coleman*, 937 So.2d 1226 (Fla. App. 1 Dist. 2006) ............ 33-34

*State v. DuFresne*, 782 So.2d 888 (Fla. App. 4 Dist. 2001) ........... 32-33

*Sun Bear v. United States*, 644 F.3d 700 (8th Cir. 2011) (en banc) ..... 13, 22

*Sykes v. United States*, 131 S.Ct. 2267 (2011) .......................... 28

*Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252 (1948) .................. 24

*Unites States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235 (1979) ....... 9, 19

*United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008) ............. 27n.3

*United States v. Chitwood*, 2012 WL 1122971 (11th Cir. 2012) ......... 28, 37

*United States v. Dean*, 752 F.2d 535 (11th Cir. 1985) ................... 25

*United States v. Espinoza*, 481 F.2d 533 (5th Cir. 1973) ............... 25

*United States v. Ivory*, 475 F.3d 1232 (11th Cir. 2007), *vacated by* ..... 6-7
*United States v. Owens*, 672 F.3d 966 (11th Cir. 2012)

*\*United States v. Harris*, 608 F.3d 1222 (11th Cir. 2010) ...... 31, 31n.5, 35, 38

*United States v. Jordan*, 915 F.2d 622 (11th Cir. 1990) .................. 8

*United States v. King*, 673 F.3d 274 (4th Cir. 2012) .................... 27

*United States v. LaBonte*, 520 U.S. 751, 117 S.Ct. 1673 (1997) .......... 26

*United States v. Mannino*, 212 F.3d 835 (3d Cir. 2000) .................. 25

v

*United States v. Owens*, 672 F.3d 966 (11th Cir. 2012) .......... passim

*United States v. Pettiford*, 101 F.3d 199 (1st Cir. 1996) .......... 9

*United States v. Rosales-Bruno*, 2012 WL 1138648 (11th Cir. 2012) .......... 34

*United States v. Shipp*, 589 F.3d 1084 (9th Cir. 2009) .......... 18

*United States v. Spencer*, 271 Fed. Appx. 977 (11th Cir. 2008) .......... 2, 6, 34

*United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085 (1979) .......... 9-10, 20

*United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589 (1972) .......... 24-25

*United States v. Walker*, 198 F.3d 811 (11th Cir. 1999) .......... 7

*Welch v. United States*, 604 F.3d 408 (7th Cir. 2010) .......... 12, 21

## Statutes

18 U.S.C. § 922(g)(1) .......... 18

18 U.S.C. § 924(a)(2) .......... 18

18 U.S.C. § 3553 .......... 6

21 U.S.C. § 841(a) .......... 2

21 U.S.C. § 841(1)(C) .......... 3

21 U.S.C. § 841(b)(1)(C) .......... 2

28 U.S.C. § 994(h) .......... 26

28 U.S.C. § 1291 .......... ix

28 U.S.C. § 2241 .......... 14-15

28 U.S.C. § 2253(c)(1)                                ix

28 U.S.C. § 2254                                      10

28 U.S.C. § 2255                                      passim

28 U.S.C. § 2255(e)                                   15

28 U.S.C. § 2255(h)                                   15

Fla. Stat. § 800.04(2)                               36

Fla. Stat. § 800.04(3)                               36

Fla. Stat. § 800.04(3)(1996)                         31

Fla. Stat. § 800.04(4)                               passim

Fla. Stat. § 800.04(4)(a)                            39

Fla. Stat. § 827.03                                  3, 31

Fla. Stat. § 827.03(1)                               33-34, 37

Fla. Stat. § 827.03(1)(a)                            passim

Fla. Stat. § 827.03(1)(b)                            passim

Fla. Stat. § 827.03(1)(c)                            32

Fla. Stat. § 827.03(2)                               32, 38

Fla. Stat. § 827.03(2)(a)                            32

Fla. Stat. § 827.03(2)(b)                            32

Fla. Stat. § 827.03(2)(c)                            32

vii

**Rules**

11th Cir. R. 26.1-1                                              C-1 of 1

Fed. R. App. P. 26.1-1                                           C-1 of 1

Fed. R. Crim. P. 32(a)                                               10

Fed. R. App. P. 32(a)(7)(B)                                         41

Fed. R. App. P. 32(a)(7)(B)(iii)                                   41


**United States Sentencing Guidelines**

U.S.S.G. § 3E1.1(a)                                                  3

U.S.S.G. § 3E1.1(b)                                                  3

U.S.S.G. § 4B1.1                                                passim

U.S.S.G. § 4B1.1(a)                                              6, 26

U.S.S.G. §4B1.1(b)                                                 26

U.S.S.G. §4B1.2(1)(2)                                              33

U.S.S.G. § 4B1.2(a)                                                27

U.S.S.G. §4B1.2(a)(1)                                              27

U.S.S.G. § 4B1.2(a)(2)                                         passim

U.S.S.G. Sentencing Table                                          3

## STATEMENT OF JURISDICTION

This appeal is from a final order of the United States District Court for the Middle District of Florida, entered on January 8, 2010, denying a 28 U.S.C. § 2255 motion. Civil Case 3:08-cv-00914, Document ("Civ. Doc.") 18.  Kevin Spencer timely appealed on February 11, 2010.  Civ. Doc. 20.  The Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291 and remedial authority pursuant to 28 U.S.C. §§ 2253(c)(1) and 2255.

## STATEMENT OF THE ISSUES

This Court has certified the following issues:

I.  Is Kevin Spencer's freestanding challenge to a career offender sentence imposed under U.S.S.G. § 4B1.1 cognizable under 28 U.S.C. § 2255 in light of *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581 (2008), *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011), and *Hunter v. United States*, 559 F.3d 1188 (11th Cir. 2009), *vacated by Hunter v. United States*, 130 S.Ct. 1135 (2010)?

II. If the challenge in Issue I is cognizable under 28 U.S.C. § 2255, did the district court err, in light of *Begay*, by classifying Kevin Spencer as a career offender where he had a prior state conviction for felony child abuse under Fla. Stat. § 827.03(1)?

*See* Civ. Doc. 22 at 2.

## STATEMENT OF THE CASE

### A. Course of Proceedings

A federal grand jury charged Kevin Spencer with one count of distributing cocaine base, a violation of 21 U.S.C. § 841(a) and (b)(1)(C). Criminal Docket 1, Case No. 3:06-cr-00349 (Crim. Doc.). On October 27, 2006, he was arrested and detained pending trial. Crim. Docs. 10, 29.  Spencer pleaded guilty without the benefit of a written plea agreement. Crim. Docs. 33-34. The district court classified Spencer as a career offender and sentenced him to 151 months in prison, 36 months of supervised release, and imposed a $100 special assessment. Crim. Doc. 43-44, 49 at 16, 21.

1

On direct appeal, Spencer challenged his sentence by arguing that his prior child abuse conviction was not a crime of violence. *See generally* Civ. Doc. 12-2. This Court affirmed Spencer's sentence in an unpublished opinion. *See United States v. Spencer*, 271 Fed. Appx. 977 (11th Cir. 2008); *see also* Crim. Doc. 55 at 6. On April 16, 2008, the Supreme Court ruled that a "violent felony" within the meaning of the Armed Career Criminal Act of 1984 (ACCA), is a crime that is "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses and involved "purposeful, violent and aggressive conduct." *Begay*, 553 U.S. at 143, 145, 128 S.Ct. at 1585, 1588.

Spencer, *pro se*, timely filed his 28 U.S.C. § 2255 motion on September 22, 2008. Civ. Doc. 1; Crim. Doc. 56. Among other things, he claimed that his state child abuse conviction was not a "crime of violence." Crim. Doc. 56 at 3-6. The district court denied the motion. Crim. Doc. 59. This Court granted Spencer a certificate of appealability (COP) on the issues listed above. Civ. Doc. 22 at 2. Spencer has been incarcerated since October 27, 2006. Crim. Docs. 10, 29. As of April 26, 2012, Spencer has served 66 months of his original 151 month sentence of imprisonment.

## B. Statement of the Facts

Spencer was twenty one years old when he sold two pieces of crack cocaine to an informant for $20, in violation of 21 U.S.C. § 841(a) and (b)(1)(C). *See* Pre-

2

Sentence Investigation Report (PSR) ¶ 8. The maximum statutory penalty carried a punishment of twenty years imprisonment. *See* 21 U.S.C. § 841(1)(C). Spencer's base offense level was set at 26. PSR ¶ 16.  After a three-point reduction for acceptance of responsibility under U.S.S.G § 3E1.1(a) and (b), his total offense level became 23, and when combined with a criminal history category of IV, produced a guideline range would of 70-87 months imprisonment. *Id.* ¶ 39; *see* U.S.S.G Sentencing Table.

However, Spencer had two previous felony convictions. *Id.* ¶¶ 29, 32.  In 2003, when he was 17 years old, Spencer was charged with possession with intent to sell cocaine. *Id.* ¶¶ 25, 29. Initially charged as a juvenile, he was eventually certified and convicted as an adult in 2004. *Id.*

Then, in 2004, an 18-year old Spencer was originally charged with lewd and lascivious assault on a child over 12 and under 16 years old in violation of Fla. Stat. § 800.04(4). *See* Appendix 1. The information alleged that Spencer "did engage in sexual activity with a person 12 years of age or older, but less than 16 years of age, by placing his penis *in or upon the vagina* of" a victim. *See id.* (emphasis added). However, Spencer pleaded guilty to a lesser offense, felony child abuse, violation of Fla. Stat. § 827.03. *See* Appendix 2; PSR ¶ 32. The factual foundation for his guilty plea was as follows: Spencer "did engage in *sexual activity* with a minor and that action could reasonably cause physical or mental

3

injury to that child." Appendix 3 at 9 (emphasis added). The PSR, however, stated that Spencer "engaged in sexual *intercourse* with a 14 year old female victim." PSR ¶ 32 (emphasis added).

Based on these prior convictions, the probation officer classified Spencer as a career offender under U.S.S.G. § 4B1.1 *Id.* ¶ 25. Accordingly, Spencer's total offense level increased from 23 to 29, and the criminal history category from IV to VI. *Id.* ¶¶ 40, 66. Spencer's advisory guidelines range became 151-188 months imprisonment. *Id.* ¶ 66.

Spencer objected to the career offender application and argued that his prior conviction for a felony child abuse was not a crime of violence as envisioned by U.S.S.G. § 4B1.1. *See* Addendum to PSR; *see also* Crim. Doc. 49 at 5-8, 13, 15. Spencer argued that the violation of the child abuse statute could be proven by showing that the defendant either did something that caused: (1) physical injury or threatened the use of physical force; or (2) mental injury. *Id.* at 6. He contended that when the statute can be proven without the violence element, the court should consider the least culpable act satisfying the count of conviction. *Id.* at 6-7. Finally, Spencer claimed that the factual basis to his guilty plea indicated that he had engaged in *sexual activity* only:

> So we went to the plea colloquy, and the prosecutor said that he engaged in *sexual activity, not sexual intercourse; it was sexual activity.* And what is the least culpable thing you can do when engaging in sexual activity, I suppose maybe kissing or touching. . .

4

*Id.* at 13 (emphasis added). The Government informed the court that Spencer was originally "charged with lewd and lascivious [battery] and then pled down to the felony child abuse." *Id.* at 8. The Government asserted that Spencer's child abuse offense was a crime of violence and in support cited to the cases holding that lewd battery and statutory rape involved serious potential risk of physical injury. *Id.* at 10-12. It argued that the offense was also a crime of violence because the statute contained the element of physical violence. *Id.* at 10. And even if the charging statute did not contain an element of physical violence, the sexual act was performed without a minor's consent, and, thus, was a crime of violence. *Id.* at 15-16.

The district court overruled Spencer's objections and accepted the Government's reasoning and its reliance on lewd assault and minor enticement cases. *Id.* at 13-15. It emphasized the fact that a 14-year old was "not old enough to be able to give [her] consent" to having sexual relations with an 18-year old. *Id.* at 13, 15-16. The court concluded that "an intentional act that could reasonably be expected to result in physical or mental injury to a child," was a crime of violence. *Id.* at 13-14. It determined that the total offense level was 29, the criminal history category VI, and the guideline range 151-188 months of imprisonment. *Id.* at 16.

Next, the court acknowledged that without the career offender enhancement Spencer would have been facing half the sentence and, thus, was "paying a big

5

price" for his record. *Id.* at 20. It then considered 18 U.S.C. § 3553 factors and sentenced Spencer to 151 months imprisonment. *Id.* at 21. The court found that the following mitigating circumstances warranted a sentence at the lowest range of the advisory guidelines: (1) Spencer's young age ("You're a young man. 151 months is a long time to spend in prison"); (2) difficult childhood; and (3) the small drug amount that he had sold. *Id.* at 23. It further explained that Spencer, at 21 years old, was facing "a significant" incarceration because of his criminal history which involved selling drugs and "that situation with a 14-year-old-girl." *Id.* at 25.

On direct appeal, Spencer diligently pursued his argument that his prior child abuse conviction was not a crime of violence. *See generally* Civ. Doc. 12-2. Thus, it did not qualify as a predicate offense for the career offender status under U.S.S.G. § 4B1.1(a). *Id.* at 8-12. The Government responded that because "felony child abuse conviction involved sexual intercourse with a minor," the crime was a crime of violence. *See* Civ. Doc. 12-3 at 6-7.

This Court, relying on now abrogated *United States v. Ivory,* 475 F.3d 1232 (11th Cir. 2007), *vacated by United States v. Owens*, 672 F.3d 966, 970-71 (11th Cir. 2012), affirmed Spencer's sentence in an unpublished opinion. *See United States v. Spencer*, 271 Fed. Appx. 977 (11th Cir. 2008); *see also* Crim. Doc. 55 at 6. First, it reasoned that the district court properly considered the factual findings in the PSR surrounding Spencer's child abuse conviction. Crim. Doc. 55 at 4.

6

Second, the Court found that Spencer's child abuse conviction involved "a serious potential risk of physical injury to another" under § 4B1.2(a)(2) residual clause because "sexual offense against minors 'always present a substantial risk that physical force will be used ...'" *Id.* at 6, citing *Ivory,* 475 F.3d at 1238.

Despite his defeat on direct appeal, Spencer, *pro se,* pursued the same issue in his 28 U.S.C. § 2255 motion. *See* Civ. Doc. 1, 14. Again, he argued that his felony child abuse conviction was not a crime of violence, and he was "actually innocent of the underlying U.S.S.G. § 4B1.1 enhancement elements." Civ. Doc. 1 at 4. He also produced an affidavit from the child-victim, now adult, stating that the sexual encounter between them was consensual and Spencer did not abuse, intimidate or coerce her. Civ. Doc. 14. The district court denied relief. Crim. Doc. 59 at 1. It reasoned that victim's consent was irrelevant, and this Court had held on direct appeal that Spencer was properly classified as a career offender. *Id.* at 1, 10.

## C. Statement of Standards of Review

In a 28 U.S.C. § 2255 proceeding, this Court reviews legal issues *de novo* and factual findings under a clear error standard. *United States v. Walker,* 198 F.3d 811, 813 (11th Cir. 1999). The scope of this Court's review is limited to the issues enumerated in the COA. *Murray v. United States,* 145 F.3d 1249, 1250-51 (11th Cir.1998) (per curiam).

7

## SUMMARY OF THE ARGUMENT

I.   Spencer's challenge to a career offender sentence imposed under U.S.S.G. § 4B1.1 is cognizable under 28 U.S.C. § 2255 on two independent grounds. First, the sentencing error resulted in a complete miscarriage of justice. Second, the error was of constitutional magnitude because it violated Spencer's due process right to be sentenced on the basis of accurate information.

II. Spencer's prior child abuse conviction is not a "crime of violence" within the meaning of U.S.S.G. § 4B1.1. First, the offense does not have an element of the use of violent physical force. Second, the conduct does not present a serious risk of physical injury that the offenses enumerated in § 4B1.2(a)(2) and does not involve violent and aggressive conduct. Finally, the child abuse offense is not one of the crimes enumerated in § 4B1.2(a)(2) .

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. Spencer's Challenge to a Career Offender Sentence is Cognizable under 28 U.S.C. § 2255

Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. *United States v. Jordan*, 915 F.2d 622, 625

8

(11th Cir. 1990). The fourth prong of § 2255, *i.e.*, the "otherwise subject to collateral attack" "stands by itself" and "encompasses other than constitutional or statutory error." *United States v. Pettiford*, 101 F.3d 199, 201 (1st Cir. 1996).

## A. The Sentencing Error Resulted in a Complete Miscarriage of Justice

"[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235 (1979), quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468 (1962). The "distinction between substance and procedure is an important one in the habeas context." *Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1604, 1610 (1998).

### a. Technical and Substantive Errors

The Supreme Court held that "technical," non-prejudicial violations of the "formal requirements" of procedural rules afford no basis for § 2255 relief. In *United States v. Timmreck*, 441 U.S. 780, 782, 99 S.Ct. 2085, 2086 (1979), the district judge failed to describe the mandatory special parole term at the Fed.R.Crim.P. 11 plea colloquy. Timmreck neither objected to the sentence nor appealed his conviction. *Id.* About two years later, he moved to vacate the sentence pursuant to 28 U.S.C. § 2255 on the ground that the trial judge had violated Rule 11 by accepting his plea without informing him of the mandatory special parole

9

term. *Id.*, 441 U.S. at 782, 99 S.Ct. at 2086-87. The Supreme Court held that "technical violation" of Rule 11 did not result in a miscarriage of justice because the defendant did not show or even allege prejudice from the court's failure to advise him of the special parole term. *Id.*, 441 U.S. at 784, 99 S.Ct. at 2087. Similarly, in *Hill*, 368 U.S. at 426, 82 S.Ct. at 470, the Supreme Court held that the district court's "failure to follow the formal requirements" of Fed.R.Crim.P. 32(a) by failing to explicitly offer a defendant an opportunity to speak at sentencing was not cognizable. The *Hill* Court found it significant that there was no suggestion that in imposing the sentence, the district court was "either misinformed or uninformed as to any relevant circumstances," and "there was no claim that the defendant would have had anything at all to say if he had been formally invited to speak." *Id.* 368 U.S. at 429, 82 S.Ct. at 742; *see also Reed v. Farley*, 512 U.S. 339, 342, 114 S.Ct. 2291, 2294 (1994) (state court's failure to observe the 120-day rule of Interstate Agreement on Detainers Act Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement).

Conversely, errors that seriously undermine the validity of criminal proceedings have been held to constitute a miscarriage of justice. In *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305 (1974), the petitioner sought § 2255 relief after a subsequent interpretation of the statute, under which he was

10

convicted, established that his conviction and punishment were "for an act that the law does not make criminal." The Supreme Court concluded that "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice." *Id.* (internal quotation marks omitted).

### b. Inter-circuit Split

The Seventh Circuit Court of Appeals has held that the misapplication of the career offender status was "certainly a substantive error" akin to the error in *Davis*, the error resulted in a miscarriage of justice, and the petitioner was entitled to relief under § 2255. *See Narvaez v. United States*, 2011 WL 6382106 at *1, 4 n. 11 (7th Cir. 2011). The district court sentenced Narvaez as a career offender under U.S.S.G. § 4B1.1 based on his two prior escape convictions involving failure to return to confinement. *Id.* at *1. The sentencing court's application of the career offender status increased the then-mandatory sentencing range from 100-125 months to 151-188 months imprisonment. *Id.* Narvaez was sentenced to 170 months imprisonment - the midpoint of the enhanced guidelines range. *Id.*

Narvaez filed a motion under 28 U.S.C. § 2255 to vacate his sentence in light of the Supreme Court's decisions in *Begay* and *Chambers* and argued that his prior convictions for failure to return to confinement did not qualify as "crimes of violence" within the meaning of the career offender guideline. *Id.* at *2. The district court dismissed the motion but granted the COA. *Id.*

11

The Seventh Circuit Court of Appeals held that a post-conviction clarification in the law has rendered the sentencing court's decision unlawful. *Id.* at *4. The Court concluded that Narvaez "never should have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive *and* violent offenders." *Id.* (emphasis in the original). The Court reasoned that the sentencing error was "a substantive" one and "more akin to the error in *Davis*." *Id.* The Court further concluded that although Narvaez was not innocent of the underlying crime, the same reasoning as in *Davis* should be extended to him, because "a post-conviction Supreme Court ruling made clear that Mr. Narvaez was not eligible for the categorization of violent offender wrongfully imposed upon him." *Id.* The Court further reasoned that "when the elements of a crime are narrowed, that change serves to prohibit *any* punishment for the conduct. *Begay* prohibits *some* of that punishment. We believe, however, that this distinction is *one of degree, not one of kind*." *Id.*, citing *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010) (emphasis in original).

Next, the Court held that classifying Narvaez "as belonging to a subgroup of defendants, repeat violent offenders, that traditionally has been treated very differently from other offenders" constitutes "the most grievous misinformation that has been the basis for granting habeas relief." *Id.* The Court concluded that a

12

miscarriage of justice occurred.[1] *Id.* Finally, the Court rejected the Government's argument that the sentencing error did not warrant § 2255 relief because Narvaez's 170-months sentence was within the authorized 20-year statutory maximum for his crime. *Id.* The Court concluded that although Narvaez did not have an absolute right to a lower sentence, he did "have an absolute right not to stand before the court as a career offender when the law does not impose that label on him." *Id.*

A sharply divided Eight Circuit Court of Appeals reached a different conclusion, creating an inter-circuit split. *Sun Bear v. United States*, 644 F.3d 700 (8th Cir. 2011) (en banc; 6-5 decision). Sun Bear pleaded guilty to the second-degree murder. *Id.* at 701. The sentencing court imposed a three-level upward departure based on the defendant's extensive and violent criminal history, resulting in a sentencing range of 292 to 365 months in prison under the then-mandatory Sentencing Guidelines. *Id.* at 701-02. The Court also classified Sun Bear as a career offender based on his prior felony convictions that were "crimes of violence:" attempted escape, attempted theft of a vehicle, and attempted burglary of a commercial building. *Id.* at 702. Accordingly, the guidelines range increased to 360 months to life. *Id.* The court sentenced Sun Bear as a career offender to 360 months in prison. *Id.*

---

[1] The Court did not reach his Narvaez's due process claim because he was entitled to relief based on his claim of miscarriage of justice. *Id.*

13

Sun Bear's sentence was affirmed on direct appeal. *Id.* He then filed a § 2255 motion to vacate his sentence relying on *Begay. Id.* The Eight Circuit Court of Appeals concluded that a collateral attack on an application of the career offender guidelines was not cognizable under § 2255. *Id.* at 704. The Court reasoned that no miscarriage of justice occurred because unlike in *Davis*, Sun Bear's underlying conduct, for which he was convicted and sentenced, remained unlawful even after the substantive change in law. *Id.* at 705-06. The Court also held it was significant that Sun Bear's sentence was both within the statutory maximum *and* initial guidelines range unenhanced by the career offender adjustment. *Id.* at 706.

### c. Law in this Circuit

Whether a collateral attack on an application of the career offender guidelines provision is cognizable in a first § 2255 round, is the issue of first impression in this Circuit. However, this Court's rulings in *Gilbert*, *McKay*, and *Hunter* are instructive. On rehearing *en banc*, this Court has held that a federal prisoner was not permitted to challenge the misapplication of the career offender guideline in a 28 U.S.C. § 2241 petition where the sentence imposed was within the statutory maximum. *Gilbert v. United States*, 640 F.3d 1295, 1305-06, 1312 (11th Cir. 2011) (en banc). Having previously filed an unsuccessful § 2255 motion raising other issues, Gilbert was barred from bringing a second or successive

14

§ 2255 motion because he could not satisfy the § 2255(h) requirements. *Id.* at 1305. Thus, he sought to invoke the "savings clause" pursuant to § 2255(e) and challenge the career offender sentencing enhancement in a federal habeas corpus petition. *Id.* at 1301, 1305-06. The "savings clause" allows a federal prisoner to bring a habeas corpus petition under 28 U.S.C. § 2241 where § 2255 procedure is "inadequate or ineffective." 28 U.S.C. § 2255(e).

First, in the interests of finality of judgments, this Court declined to extend the "savings clause" to sentencing errors where the sentence did not exceed the statutory maximum. *Gilbert*, 640 F.3d at 1310-12. It explained that a different holding "would eviscerate the second or successive motions bar, and prisoners could file and endless stream of § 2255 motions." *Id.* at 1308. The Court further reasoned:

> If the savings clause operates to allow attacks on old sentences that were lengthened by enhancements that later decisions have called into doubt, there is no reason it would not also operate to do the same with any other guidelines calculation error. As a result, no federal judgment imposing a sentence would be truly final until the sentence was completely served or the prisoner had gone on to face a different kind of final judgment.

*Id.* at 1310. Second, the Court held that Gilbert could not bring a 28 U.S.C. § 2241 petition claiming "actual innocence" because he was still guilty of the offense for which he was convicted. *Id.* at 1318. Finally, this Court concluded that "innocence of sentence" exception did not apply to claims of guidelines calculation errors, and

15

such claims were not cognizable in second or successive § 2255 motions. *Id.* at 1322-23.

The *Gilbert* Court, however, refused to "decide whether a claim that the sentencing guidelines were misapplied may be brought in a first time § 2255 motions." *Id.* at 1323. Nevertheless, the opinion suggests that this Court would be inclined to allow an attack on a sentence miscalculation in a first § 2255 proceeding: "We believe that for claims of sentence error, at least where the statutory maximum was not exceeded, the point where finality holds its own against error correction is reached *not later than the end of the first round of collateral review.*" *Id.* at 1312 (emphasis added). In addition, the Court reasoned that *"[a]fter a case has passed the stage of a first § 2255 proceeding,* the right to error correction is narrowly limited by principles of policy that reside in the finality of judgment neighborhood of the law principles which further critically important interests." *Id.* at 1324 (emphasis added).

Recently, the Court again left "for another day" the question whether a challenge to the application of the career offender guideline is cognizable in first § 2255 motion. *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). There, McKay pleaded guilty to a four-count indictment charging him with drug trafficking offenses. *Id.* at 1192, 1193 n.3. His original guideline range of 151-188 months was increased to 262-327 months imprisonment after the district court had

16

classified him as a career offender based on his prior felony convictions for carrying a concealed weapon, a "crime of violence," and a "controlled substance offense." *Id.* at 1192. The court sentenced him to 262 months imprisonment, which was within the statutory maximum penalty of life imprisonment. *Id.* at 1193.

To his detriment, McKay neither objected to the career offender enhancement at sentencing, nor did he file a direct appeal. *Id.* He only raised the claim of being erroneously sentenced as a career offender in his first-time § 2255 motion. *Id.* at 1194. McKay sought to be resentenced without the career offender enhancement in light of *Begay* and *Archer*, as his prior conviction for carrying a concealed weapon no longer qualified as a "crime of violence." *Id.* He also asked to excuse his procedural default on the ground that he was "actually innocent" of his career offender sentence. *Id.* The district court denied McKay's § 2255 motion and his application for the COA. *Id.*

This Court held that McKay's sentencing claim was procedurally defaulted. *Id.* at 1195. The Court explained that "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Id.* Finally, McKay was not able to cure the default by asserting "actual innocence of sentence" exception because even if it extended to non-capital sentencing, McKay was not entitled to relief because his asserted innocence of the predicate offense was legal

17

and not actual. *Id.*at 1198-99. In other words, he was still guilty of the predicate offense of carrying a concealed weapon. *Id.* at 1199.

However, this Court has recently held that the challenge to the armed career criminal sentence is cognizable in a first-time § 2255 motion when the sentence exceeds the statutory maximum. *See Hunter v. United States*, 449 Fed. Appx. 860 (11th Cir. 2011) (unpublished); *see also United States v. Shipp*, 589 F.3d 1084, 1090 (9th Cir. 2009) (miscarriage of justice found where the defendants was incorrectly classified as an armed career criminal and the sentence imposed exceeded the statutory maximum). Albeit this Court's holding was issued in an unpublished opinion, this case has a lengthy procedural history which involves two trips to the United States Supreme Court.

Hunter was sentenced to 188 months of imprisonment for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *Hunter v. United States*, 559 F.3d 1188, 1189 (11th Cir. 2009), vacated by *Hunter v. United States*, 130 S.Ct. 1135 (2010). The statutory maximum sentence for such offense was ten years. *See* 18 U.S.C. § 924(a)(2). The district court found that Hunter had three prior violent felony convictions, one of them for carrying a concealed weapon. *Hunter v. United States*, 449 Fed. Appx. 860, 861 (11th Cir. 2011) (unpublished). Accordingly, he was classified as an armed career criminal, and his mandatory statutory sentence increased to a minimum of 15 years imprisonment. *Id.* at 861.

18

After an unsuccessful direct appeal, the district court denied Hunter's § 2255 motion and this Court denied the application for a COA. *Hunter*, 559 F.3d at 1189. The Supreme Court vacated the denial and remanded for reconsideration in light of *Begay*. *Id.* at 1189-90. On remand, this Court again denied the COA. *Id.* at 1191. The Supreme Court remanded again. *Hunter v. United States*, 130 S.Ct. 1135 (2010). On remand, in a consolidated case, this Court acknowledged that "[c]ase law since the time of the Appellants' sentencings calls into serious question the constitutionality of imposing sentences beyond the statutory maximum on a basis that is no longer applicable." *See Hunter*, 449 Fed.Appx. at 862. Thus, the Court vacated the denial of the Appellants' § 2255 motions and remanded "in light of now-controlling case law." *Id.*

### d. Miscarriage of Justice in this Case

Spencer is entitled to relief on his Guidelines claim because the sentencing court's error constitutes a miscarriage of justice. *See Addonizio*, 442 U.S. at 185, 99 S.Ct. at 2240 (an error of law provides a basis for collateral attack if the error constituted "a fundamental defect which inherently results in a complete miscarriage of justice."). A post-conviction clarification in the law has rendered the sentencing court's decision erroneous. Spencer never should have been

19

classified as a career offender since the predicate offense of child abuse is not a crime of violence.[2]

The error here is distinguishable from the non-prejudicial, non-fundamental procedural errors found non-cognizable in *Hill*, *Timmreck*, and *Reed*. *See Narvaez*, 2011 WL 6382106 at *1. There, the defendants could not show any prejudice or harm resulting from the errors and that the outcome of the case would have been different without them. *See Reed*, 512 U.S. at 353, 114 S.Ct. at 2299 (defendant did not suggest that his ability to present a defense was prejudiced by the 54 day delay of the trial, where he himself requested a delay beyond the scheduled trial date); *see also Timmreck*, 441 U.S. at 784, 99 S.Ct. at 2087 (the defendant did not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty).

*Begay* did not announce a procedural rule that "regulate[s] only the *manner of determining* the defendant's culpability." *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S.Ct. 2519 (2004) (emphasis in original). Rather, it announced a substantive rule that "prohibit[s] a certain category of punishment for a class of defendants because of their status or offense." *Saffle v. Parks*, 494 U.S. 484, 494, 110 S.Ct. 1257 (1990) (internal quotation marks omitted). *Begay* announced a rule prohibiting *the extra punishment* of a defendant as a career offender or armed-

---

[2] Will be addressed in Issue II why a felony child abuse is not a crime of violence.

20

career criminal based on certain offenses. *See Begay,* 553 U.S. at 148, 128 S.Ct. at 1588. Thus, the intervening decision in *Begay* is analogous to the change in law in *Davis,* and is distinguishable from the non-prejudicial, non-fundamental procedural errors found non-cognizable in *Hill, Timmreck,* and *Reed.* Even though Spencer is still guilty of the crime of conviction and the predicate offenses, in contrast to the defendant in *Davis,* the distinction here between the two "is *one of degree, not one in kind.*" *Narvaez,* 2011 WL 6382106 at *4, citing *Welch,* 604 F.3d at 415.

Because Spencer was branded as a repetitive *and violent* offender, he received an *extra* punishment – his sentence was more than doubled. *See* PSR ¶¶ 24, 28. The fact that Spencer was sentenced within the statutory maximum range of 20 years should not control whether a miscarriage of justice has occurred. The imposition of the career offender status branded Spencer as "*a malefactor deserving of far greater punishment* than that usually meted out for an otherwise similarly situated individual who had committed the same offense." *Narvaez,* 2011 WL 6382106 at *5 (emphasis added). The sentencing court unambiguously stated:

> Mr. Spencer, *had you not had that career – career offender enhancement,* instead of looking at a level 32, you'd have been looking at a level 23. *It's in essence, half the sentence,* in essence.
>
> *So you're paying a big price today for your record.* What happens under the sentencing guidelines when you commit some crimes that you have committed, the *sentencing guidelines come down hard* on people, and they come down hard on people for a reason. So you want to discourage that type of activity. But I understand that you are *facing a very stiff penalty* today and I'm very cognizant of that

> and will factor in all of these items in terms of coming up with an
> appropriate sentence.

Crim. Doc. 49 at 20 (emphasis added). The district court treated Spencer differently from other offenders "because he belonged in a special category reserved for the violent and incorrigible," *Narvaez*, 2011 WL 6382106 at *5, and made him pay "a big price for [his] record." Crim. Doc. 49 at 20. Spencer should not have paid such price. He was sentenced based upon the equivalent of a non-existing crime. This case is factually distinguishable from *Sun Bear*, because there the defendant's sentence fell within the unenhanced guideline range, while Spencer's sentence more than doubled. *Compare Sun Bear*, 644 F.3d at 702, 705, *with* PSR ¶¶ 24, 28. Further, "to assume that the same sentence would have been imposed in the absence of the career offender provision is 'frail conjecture' that evinces in itself 'an arbitrary disregard of the petitioner's right to liberty.'" *Narvaez*, 2011 WL 6382106 at *5, citing *Hicks v. Oklahoma*, 447 U.S. 343, 346100 S.Ct. 2227 (1980). This error clearly constitutes a miscarriage of justice. While Spencer does not have an absolute right to a lower sentence, "he does have an absolute right not to stand before the court as a career offender when the law does not impose that label on him." *Narvaez*, 2011 WL 6382106 at *5.

This Court should establish a bright line rule that a preserved sentencing error is cognizable in the first round of collateral review irrespective whether the sentence was within the statutory maximum. *See Gilbert*, 640 F.3d at 1312, 1324.

22

First, the record reveals that Spencer, unlike McKay, diligently and relentlessly argued all along that he never was a career offender. *Compare McKay*, 657 F.3d at 1193, *with* Civ. Docs. 1; 12-2, Crim. Doc. 49 at 5-8, 13, 15, and addendum to PSR. Second, this case does not implicate finality of conviction and floodgate concerns that the *Gilbert* Court was preoccupied with. *See Gilbert*, 640 F.3d at 1322-24. Third, whether the sentence imposed is within or outside the statutory maximum, the harm and injustice for the prisoner is the same – the extra punishment based on erroneously classifying him as belonging to a special class of offenders. Even though Spencer's sentence of 151 months is within the 20 year statutory maximum, because of the sentencing error his punishment was increased by as much as 81 months or 6.75 years. PSR ¶¶ 24, 28. The prisoners in *Hunter* also suffered the same type of harm, the extra punishment, because they incorrectly were classified as armed career criminals. *See Hunter*, 449 Fed. Appx. at 862. This Court held that they were entitled to relief because the sentences exceeded the statutory maximum of 10 years. *See Hunter*, 449 Fed. Appx. at 862. Finally, the Supreme Court's decision in *Johnson v. United States*, 544 U.S. 295, 125 S.Ct. 1571 (2005), bolsters the conclusion that Spencer's claim is cognizable under § 2255, even if it is based solely on the guidelines - and irrespective of the statutory maximum. There, a prisoner brought a § 2255 action attacking his career-offender enhancement under § 4B1.1 of the guidelines on the ground that one of his

23

predicate convictions had been vacated. *See id.* at 298, 302-03. Although the Court ultimately concluded that the § 2255 motion was untimely, the Court agreed that the guidelines claim was cognizable under § 2255. *Id.* at 303.

Basic fairness requires § 2255 relief where the preserved error is not harmless and where it is ultimately shown that the defendant was correct all along as to a fully preserved issue made retroactive after a conviction becomes final.

## B. The Sentencing Error Violated Spencer's Due Process Rights

The sentencing court's error violated Spencer's due process rights to be sentenced on the basis of accurate information. The Supreme Court and this Court long have held that convicted defendants have a due process right to be sentenced on the basis of accurate information. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 740-41, 68 S.Ct. 1252, 1255-56 (1948); *see also Shukwit v. United States,* 973 F.2d 903, 904 (11th Cir. 1992).

In *Townsend,* the Supreme Court held that the defendant was entitled to habeas relief where his criminal history was misrepresented at sentencing even though the sentence imposed did not exceed the statutory maximum. *Townsend,* 334 U.S. at 740-41, 68 S.Ct. 1255-56. In *Tucker*, the Supreme Court reiterated the holding of *Townsend,* and remanded for resentencing where the sentencing judge had considered defendant's prior convictions in which defendant had not been

24

represented by counsel. *Tucker*, 404 U.S. at 447, 449, 92 S.Ct. at 592-93. "Implicit in the Court's holding in *Tucker* is the principle that despite the broad discretion left to the trial judge in assessing background information for sentencing purposes, a defendant retains the right not to be sentenced on the basis of invalid premises." *United States v. Espinoza*, 481 F.2d 553, 555 (5th Cir. 1973); *see also United States v. Dean*, 752 F.2d 535, 544 (11th Cir. 1985) ("a sentencing court cannot rely on 'false assumptions' without violating the due process clause.").

Here, Spencer indisputably was sentenced on the basis of inaccurate information - that he was a career offender. As a result, he was denied due process and is entitled to resentencing. That the sentencing error was legal, and not factual, is of no moment. As the Third Circuit has explained, "it is beyond dispute that a sentencing calculation may violate the due process clause of the Fifth Amendment if there is a possibility that the sentence imposed may have been based *on legal and/or factual error*." *United States v. Mannino*, 212 F.3d 835, 846 (3d Cir. 2000) (emphasis added).

In conclusion, Spencer is entitled to relief under § 2255 because the sentencing error resulted in a violation of his due process right to be sentenced on the basis of accurate information.

25

## II. Spencer was Improperly Classified as a Career Offender

The sentencing court misclassified Spencer as a career offender because his prior conviction for child abuse is not a crime of violence under the elements, enumerated offenses, or residual clauses.

### A. Career Offender Designation

"In 28 U.S.C. § 994(h), Congress directed the United States Sentencing Commission to 'assure' that the Sentencing Guidelines specify a prison sentence 'at or near the maximum term authorized for categories of' adult offenders who commit their third felony drug offense or violent crime." *United States v. LaBonte*, 520 U.S. 751, 752, 117 S.Ct. 1673, 1674-75 (1997), citing 28 U.S.C. § 994(h). "Section 4B1.1 implements this directive, with the definition of a career offender." U.S.S.G. § 4B1.1, comment. (backg'd). Under this guideline, the defendant receives an increased offense level and criminal history category if: (1) the current conviction is a felony that is either a "crime of violence," or a "controlled substance offense;" and (2) the defendant has at least two prior felony convictions of either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.1(a)-(b).

26

In relevant part, § 4B1.2(a) defines a "crime of violence"[3] as any offense that: (1) "has as an element the use, attempted use, or threatened use of physical force" against another (elements clause); or (2) "is a burglary of a dwelling, arson, or extortion, involves use of explosives," (enumerated crimes), "or otherwise involves conduct that presents a serious potential risk of physical injury to another" (residual clause). U.S.S.G. § 4B1.2(a)(1) and (2).

## B. Categorical and Categorical Modified Approaches

In determining whether a crime is one of violence, the courts typically use a "categorical approach." *Begay*, 553 U.S. at 141, 128 S.Ct. at 1584. That is, they consider the offense generically, *i.e.*, "examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Id.* "For an offense to constitute a crime of violence under this approach, the offense's *full range of proscribed conduct, including the least culpable proscribed conduct*, must fall within the applicable Guidelines definition of that term." *United States v. King,* 673 F.3d 274, 278 (4th Cir. 2012) (emphasis added).

An analysis under the residual clause first requires the court to look "at the relevant statute to discern the crime as it is ordinarily committed and consider

---

[3] This Court has repeatedly recognized that a "crime of violence" is "virtually identical" to the Armed Career Criminal Act (ACCA) definition of "violent felony." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

whether the crime poses a 'serious potential risk of physical injury' that is similar in kind and in degree to the risks posed by the enumerated crimes." *Begay*, 553 U.S. at 142, 128 S.Ct. at 1585. Second, the court must "ask whether the conduct at issue in the statutory offense is 'purposeful, violent and aggressive.'" *United States v. Owens*, 672 F.3d, 966 at 972 (11th Cir. 2012), citing *Begay* at 144-45, 128 S.Ct. at 1586. However, "[o]ffenses that are not strict liability, negligence, or recklessness crimes qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(2)'s residual clause if they categorically pose a serious potential risk of physical injury that is similar to the risks posed by one of the enumerated crimes." *United States v. Chitwood*, 2012 WL 1122971 at *6 (11th Cir. 2012); *see also Sykes v. United States*, 131 S.Ct. 2267, 2275-76 (2011).

On another hand, the courts may use a "modified categorical approach" "[w]hen the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not." *Johnson*, 130 S.Ct. at 1273; *see also Chitwood*, 2012 WL 1122971 at *3 (the modified categorical approach can be applied "where some, but not all, of the violations of a particular statute will involve the requisite violence."). The modified categorical approach allows the courts to look at "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was

confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26, 125 S.Ct. 1254, 1263 (2005).

In *Johnson*, the Supreme Court examined whether a battery offense under Florida law was a violent felony under the elements clause. *See Johnson*, 130 S.Ct. at 1268-69. Under Florida law, battery occurs when a person either actually and intentionally touches another person against his will or "intentionally causes bodily harm to another person." *Id.* at 1269. The Court concluded that the elements of a battery offense were satisfied by *any* intentional physical contact, "no matter how slight," and there was nothing in the records that permitted the district court to conclude that Johnson did anything more than just touching the victim. *Id.* at 1269-70. The Court concluded that "physical force" as used in the statutory definition of violent felony "mean[t] violent force - that is, force capable of causing physical pain or injury to another person." *Id.* at 1271. Thus, battery under Florida law did not satisfy the definition of "violent felony" under the elements clause.[4] *Id.* at 1274.

In *Owens*, this Court has recently held that convictions for second degree rape and second degree sodomy under Alabama law were not violent felonies

---

[4] The Supreme Court refused to analyze whether the battery offense was a violent crime under the residual clause because the Government had waived that argument. *Id.* at 1274.

under the elements, enumerated offenses, and residual clauses. *Owens*, 672 F.3d at 972. First, neither statute required, as an element, the use of violent physical force against the victim (as opposed to the use of the words "forcible compulsion" in both the first degree rape statute and the first degree sodomy statute). *Id.* at 971. The second degree rape statute required only the act of sexual intercourse with a non-consenting victim, due to age or mental incapacity. *Id.* The Court expressly overruled its previous holding in *Ivory* that the exertion of "at least some level" of physical force was enough to render second degree rape a violent felony. *Id.* "The kind of physical force required for a qualifying violent felony under the ACCA is not satisfied by the merest touching, or in this case, the slightest penetration." *Id.*

Second, the Court concluded that neither offense was listed in the specific offenses clause. Third, the Court held that neither the second degree rape nor second degree sodomy offenses were violent felonies under the residual clause. *Id.* at 972. It reasoned that even if these offenses posed a serious potential risk of physical injury to the victim, they were not "roughly similar, in kind as well as in degree of risk posed" to burglary, arson, extortion, and crimes involving the use of explosives. *Id.*, citing *Begay*, 553 U.S. at 143, 128 S.Ct. at 1585. The Court held it was significant that these offenses were strict liability offenses under Alabama law containing no *mens rea* requirement, and consent was not a defense. *Owens*, 672 F.3d at 972. The Court concluded that the offenses did not involve "purposeful,

30

violent, and aggressive conduct" and were not similar in kind and in degree of risk posed by the enumerated offenses. *Id.*

Moreover, this Court, using the categorical approach, held that a sexual battery of a child under the age of 16 years old, a violation of Fla. Stat. § 800.04(3)(1996),[5] was not a crime of violence under the residual clause. *United States v. Harris*, 608 F.3d 1222, 1233 (11th Cir. 2010). The Court pointed out that the Florida statute imposed strict liability and covered a broad range of conduct. *Id.* Thus, it held that a violation of the statute did not typically involve "purposeful, 'violent,' and 'aggressive' conduct." *Id.*

## C. Spencer's Florida Conviction

Spencer was initially charged with lewd and lascivious battery of a child over 12 and under 16 years old in violation of Fla. Stat. § 800.04(4). *See* However, he pleaded guilty to a lesser offense, felony child abuse, violation of Fla. Stat. § 827.03.[6] Appendix 2; PSR ¶ 32. In relevant part, Fla. Stat. § 827.03 provides:

> (1) "Child abuse" means:
> (a) Intentional infliction of physical or mental injury upon a child;

---

[5] Although the statute was modified since Harris's conviction, both, Harris and Spencer were charged with the same offense of a sexual battery of a minor. *See* Appendix 1; *see also Harris*, 608 F.3d at 1224-25.

[6] Most likely Spencer plead guilty to a lesser offense of child abuse to avoid being listed on a sexual predator list. *See* Crim. Doc. 49 at 15.

(b) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or

(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.

A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 827.03(1)(a)-(c); *see also Raford v. State*, 828 So.2d 1012, 1016 (Fla. 2002).

The same statute also criminalizes "aggravated child abuse," which is a first degree felony. Fla. Stat. § 827.03(2). A person is guilty of aggravated child abuse when he/she: (1) commits aggravated battery on a child; (2) willfully tortures, maliciously punishes, or willfully and unlawfully cages a child; or (3) knowingly or willfully abuses a child and in doing so causes great bodily harm, permanent disability, or permanent disfigurement to the child. Fla. Stat. § 827.03(2)(a)-(c). Spencer, however, was convicted of a simple and not aggravated child abuse.

Florida child abuse statute has been challenged as vague and overbroad, and Florida courts have issued conflicting opinions how the statute may be violated. For example, the courts disagree whether oral statements alone can inflict a "mental injury upon a child" and be the sole basis for the conviction. *See Munao v. State*, 939 So.2d 125, 128 (Fla. App. 4 Dist. 2006) ("as presently constructed, section 827.03(1)(b) cannot be applied to speech of any kind"); *see also State v.*

*DuFresne,* 782 So.2d 888, 891 (Fla. App. 4 Dist. 2001) ("this statute is not substantially overbroad and can be upheld against an overbreadth argument by narrowly construing it as not applicable to speech"); *but see State v. Coleman,* 937 So.2d 1226, 1230 (Fla. App. 1 Dist. 2006) ("We do not agree with *DuFresne I* and *Munao,* however, that, to withstand an overbreadth challenge to section 827.03(1), we must construe the statute to avoid its application to all speech.").

Further, with regard to the physical injury prong, the Florida courts also have difficulty "delineating a precise line between permissible corporal punishment and prohibited child abuse." *Raford,* 828 So.2d at 1020-21. The Supreme Court of Florida would rather leave that task to the legislature. *Id.* at 1021. However, the Radford Court acknowledged that "cases like this should stand as a warning to those, parents and others alike, who quickly turn to corporal punishment as a solution to child discipline problems. It is apparent that there is a serious risk of 'going too far' every time physical punishment is administered." *Id.* (internal citations omitted).

## D. Application

As an initial matter, Spencer's child abuse conviction is not an enumerated offense under U.S.S.G. § 4B1.2(1)(2), thus, the only issue is whether it qualifies as a crime of violence under the elements and residual clauses. It does not. The analysis under both the categorical and modified categorical approaches reveals

that a simple child abuse conviction is not a crime of violence, and Spencer's offense does not fall within the elements or residual clauses.

### a. The Elements Clause

The child abuse statute, Fla. Stat. § 827.03(1) does not necessarily have as an element the use of physical force much less "violent physical" force. *See Johnson*, 130 S.Ct. at 1271. The elements of the crime of child abuse may be satisfied by showing that a victim has suffered or was reasonably expected to suffer a *metal* injury only. *See* Fla. Stat. § 827.03(1)(a)-(b). Using the categorical approach, the least of the acts to support the conviction could be oral statements made to the victim. *See Coleman,* 937 So.2d 1226, 1230 (Fla. App. 1 Dist. 2006) ("We can envision limited circumstances in which speech alone could be used to intentionally inflict psychological injury on a child."); *see also Johnson*, 130 S.Ct. at 1269 (under the categorical approach the court must conclude that the defendant did "the least" of the acts supporting the conviction). Thus, a violation of Fla. Stat. § 827.03(1)(b) is not a crime of violence under the elements clause using the categorical approach. *See United States v. Rosales-Bruno,* 2012 WL 1138648 *3 (11th Cir. 2012) (holding that false imprisonment under Florida law is not categorically a "crime of violence" under the elements clause because offense can be committed without employing the type of "physical force" contemplated in the Guidelines).

34

Nor is it a crime of violence under the categorical modified approach, which the district court adopted at sentencing, and this Court approved on Spencer's direct appeal. *See* Crim. Doc. 49 at 14; *see also Spencer*, 271 Fed. Appx. at 978. At most, the record reveals that Spencer was initially charged with violating Fla. Stat. § 800.04(4) by engaging in sexual activity with a person 12 years of age or older, but less than 16 years of age. *See* Appendix 1; *see also* Appendix 3 at 9 ("he did engage in sexual activity with a minor"). In addition, the government throughout Spencer's sentencing and appeal zealously claimed that he was initially charged with "lewd and lascivious" battery (Crim. Doc. 49 at 8) and had "sexual intercourse with a minor." Civ. Doc. 12-3 at 14. Furthermore, the PSR also emphasized that same information. *See* PSR ¶ 32 ("This offense was originally charged as lewd and lascivious assault on a child over 12 and under 16 years old," and "the defendant engaged in sexual intercourse with a 14 year old female victim."). Relying on this information, the district court found that Spencer's conviction was indeed a crime of violence: "the child was 14 years old. She can't consent to having sexual relations with somebody who is an adult, which somebody who is 18 years old. So I think it is appropriate to consider this is a crime of violence." Crim. Doc. 49 at 13.

Spencer's conduct is virtually indistinguishable from that in *Owens* and *Harris. See Owens*, 672 F.3d 966 (second degree rape); *Harris*, 608 F.3d at 1233

(sexual battery of a child under age of sixteen). In fact, Spencer was originally charged with violating the same statute as Harris. *See Harris*, 608 F.3d at 1224-25; *see* Appendix 1. Although Spencer pleaded guilty to the lesser offense of child abuse, the underlying conduct for his conviction remained the same, *i.e.*, "sexual activity with a minor." Appendix 3 at 9.  Neither at his state sentencing for child abuse, federal sentencing at issue here, direct appeal, or his § 2255 motion, could Spencer offer defense of consent or belief about the victim's age even though he pleaded guilty to the lesser offense of child abuse. *See* Fla. Stat. § 800.04(2)-(3); *see also* Crim. Doc. 49 at 13; *see also* Crim. Doc. 59 at 1. In conclusion, even under the categorical modified approach, Spencer's conduct under the circumstances of this case was not a crime of violence under the elements clause, as it did not include a violent force. *See Owens*, 672 F.3d 966 at 971 (violent force is not an element of a second degree rape).

### b. The Residual Clause

The child abuse, Fla. Stat. § 827.03(1)(a)-(b), does not fall within the scope of the residual clause either. *See* U.S.S.G. § 4B1.2(a)(2).  This clause is not intended as a catch-all provision. Instead, "the provision's listed examples - burglary, arson, extortion, or crimes involving the use of explosives - illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the [guidelines cover] only similar crimes, rather than every crime that 'presents a

36

serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142, 128 S.Ct. 1581.

Under the categorical approach, "*the elements of* [a simple child abuse] are [not] of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *Chitwood*, 2012 WL 1122971 at *3 (citations omitted, emphasis in the original). In other words, the child abuse offense under Fla. Stat. § 827.03(1) does not "*categorically* pose a serious potential risk of *physical* injury that is similar to the risks posed by one of the enumerated crimes." *Id.* at *6 (emphasis added). There is a wide array of conduct that can be encompassed by the elements of a child abuse offense. For example, the conduct may vary from a parental spanking gone "too far" to a verbal assault of a child. *See Raford*, 828 So.2d at 1021; *see Munao v. State*, 939 So.2d at 128. Further, the physical injury to the child is *equally* criminalized as a mental injury to a child. *See* Fla. Stat. § 827.03(1). Thus, one may be guilty of child abuse by merely causing a mental injury. Accordingly, "in the *ordinary* case" a simple child abuse does not present "a serious potential risk of *physical* injury to another." *Chitwood*, 2012 WL 1122971 at *4, citing *James v. United States*, 550 U.S. 192, 208, 127 S.Ct. 1586, 1597 (2007) (emphasis added). Thus, although reading the child abuse statute categorically, the conviction requires intentional conduct, the

37

simple child abuse does not "generally risk as much physical injury as one of the enumerated crimes." *Chitwood*, 2012 WL 1122971 at *6.

It is also significant that the statute establishes different levels of child abuse. *Compare* Fla. Stat. § 827.03(1) (criminalizes an intentional act that results or could result in physical or mental injury) *with* § 827.03(2) (criminalizes aggravated battery, torture, caging). Such a stark contrast between the two sections of the same statute should be interpreted that only the aggravated child abuse is a crime of violence, and a simple child abuse is not. *See* Fla. Stat. § 827.03(2) (the aggravated child abuse does not include a mental injury).

If this Court, however, chooses to examine Spencer's *particular conduct* of child abuse, engaging in sexual activity with a person under 16 years old,[7] under the categorical modified approach, the case law is clear that it is not a crime of violence under the residual clause. *See Harris*, 608 F.3d at 1233 (sexual battery of a child under age of sixteen not a violent crime); *see also Owens,* 672 F.3d at 972 (second degree rape and second degree sodomy not violent crimes). Even if, assuming *arguendo* but without conceding, that Spencer's conduct could have posed a serious potential physical injury to the victim, his conduct was not

---

[7] Contrary to the government's argument on direct appeal, Spencer did not acknowledge engaging in "sexual intercourse" with a minor. At sentencing, Spencer strenuously objected to such characterization and argued that he engaged in "sexual activity" only. *See* Crim. Doc. 49 at 13.

"purposeful, violent, and aggressive." *Begay*, 553 U.S. at 144-45, 128 S.Ct. at 1586; *see also Owens,* 672 F.3d at 972; *see also Harris*, 608 F.3d at 1233.  In this context, this *Begay* requirement cannot be ignored. It would be absurd to hold otherwise just because Spencer had pleaded guilty to the lesser offense of child abuse, as opposed to the original charge of lewd and lascivious battery. *Compare* Fla. Stat. § 827.03(1)(a)-(b) (the statute requires an intentional act) *with* Fla. Stat. § 800.04(4)(a)(sexual activity with a person 12 years of age or older but less than 16 years of age is lewd or lascivious battery, a strict liability offense). The record is clear that the sentencing court found Spencer to be a career offender based on the conduct that involved strict liability, *i.e.*, having sexual relations with a fourteen-year old who was too young to consent. Crim. Doc. 49 at 13; Civ. Doc. 17 at 11. In conclusion, under the circumstances of this case, Spencer's specific offense is not encompassed by the residual clause under the categorical modified approach.

## CONCLUSION

For the reasons set out in Issue I, Spencer's challenge to the career offender sentence is cognizable in his first § 2255 motion.  For the reasons set out in Issues II, Spencer is entitled to relief pursuant to section § 2255. This Court should vacate Spencer's sentence and remand for resentencing without the career offender enhancement.

This 26th day of April, 2012.

Respectfully submitted,

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Fax: 404.875.8757
krutules@mjplawyers.com

40

## CERTIFICATE OF COMPLIANCE

Counsel certifies that this Brief of Appellant complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because the brief contains 9,807 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Fax: 404.875.8757
krutules@mjplawyers.com

41

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Brief of Appellant via electronic filing and by depositing a copy in the United States Mail with sufficient postage and addressed to:

Peggy Morris Ronca
Assistant United States Attorney
Appellate Division
501 W. Church Street, Suite 300
Orlando, Florida 32805

This 26th day of April, 2012.

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Fax: 404.875.8757
krutules@mjplawyers.com

42

# APPENDIX 1

S.A. CASE NO.:    04CF095486AC

RECEIVED
JAMES B. JETT

04 AUG 19 PH 3:43

Clerk of Court
Clay County, FL

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL
CIRCUIT IN AND FOR CLAY COUNTY, FLORIDA

Spring Term, in the year two thousand four

STATE OF FLORIDA

vs.

KEVIN DWAYNE SPENCER, JR.

CLERK NO.:    102004CF001079AXXXMX

DIVISION:    CRA/SAD

INFORMATION FOR:

1)    LEWD OR LASCIVIOUS BATTERY

IN THE NAME OF AND BY AUTHORITY OF THE STATE OF FLORIDA, HARRY L. SHORSTEIN, State Attorney for the Fourth Judicial Circuit of the State of Florida, in and for Clay County, charges that:

COUNT 1: KEVIN DWAYNE SPENCER, JR. on June 20, 2004, in the County of Clay and the State of Florida, did engage in sexual activity with ███████████████, a person 12 years of age or older, but less than 16 years of age, by placing his penis in or upon the vagina of ██████████████████████, contrary to the provisions of Section 800.04(4), Florida Statutes.

HARRY L. SHORSTEIN, STATE ATTORNEY
FOURTH JUDICIAL CIRCUIT

By: _____
Assistant State Attorney

STATE OF FLORIDA    }
COUNTY OF CLAY       }

Personally appeared before me, _____DANIEL B. SKINNER_____, Assistant State Attorney, for the Fourth Judicial Circuit of the State of Florida, in and for Clay County, who is personally known to me, and who being first duly sworn, says that the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged, and that this prosecution is instituted in good faith, and hereby certifies that testimony under oath has been received from the material witness(es) for the offense.

Sworn to and subscribed before me this 19th day of August, 2004.

By: Angela K. Knight

Angela K. Knight
MY COMMISSION # DD278885 EXPIRES
January 5, 2008
BONDED THRU TROY FAIN INSURANCE INC.

JAMES JETT, Clerk of the Circuit Court, Fourth Judicial Circuit of Florida, In and For Clay County, and Clerk of the County Court, In and For Clay County, Florida.

FILED THIS August 19, 2004    BY DEPUTY CLERK: _____

Dkt    2004-056058
Ext.    O
Race    Black
SS █████████████

AD
S/W    August 26, 2004
Sex    Male

DOB    01/13/1986

MCL NO.(S):  S800.04(4), F2

Bond Amount $ _____

FILED
IN COMPUTER
D. WATSON

Judge's Signature: _____    Date: _____

04001079CFMA-0003

# APPENDIX 2

_____Probation Violator/Revoked and Terminated
_____Community Control Violator/ Revoked and Terminated
_____Retrial
_____Resentence

In the Circuit Court, Fourth Judicial
Circuit in and for Clay County, Florida
Division ___A___
Case Number __10-2004-CF-1079__

State of Florida

KEVIN DWAYNE SPENCER JR
Defendant

# JUDGMENT

The defendant, ___KEVIN DWAYNE SPENCER JR_____ being personally before this court
represented by _____TED W HELLMUTH_____, the attorney of record, and the state
represented by_____CHEYENNE PALMER_____, and having

_____been tried and found guilty by jury/ by court of the following crime(s)
__XX__entered a plea of guilty to the following crime(s)
_____entered a plea of nolo contendere to the following crime(s)

| Count | Crime | Offense Statue Number (s) | Degree Of Crime | Case Number | OBTS Number |
|-------|-------|---------------------------|-----------------|-------------|-------------|
| 1 | FELONY CHILD ABUSE (LESSER) | 827.03 | F-3 | 10-2004-CF-1079 | 1001028440 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

04001079CFMA-0005

__XX___and no cause being shown why the defendant should not be adjudicated guilty, **IT IS ORDERED**
that the defendant is hereby **ADJUDICATED GUILTY** of the above crime(s).

_____and pursuant to section 943.325, Florida Statues, having been convicted of attempts or
offenses relating to Sexual Battery (ch 794), Lewd or Lascivious conduct (ch 800), Murder
(ch 782.04), Aggravated Battery (ch 784.045), Carjacking (ch 812.133), Home Invasion
Robbery (ch 812.135), or Burglary (ch 810.02). Kidnapping, False Imprisonment, Luring or
Enticing a child, Interference with custody (ch 787) Y**OU WILL DRAW BLOOD FOR DNA
DATABASE**.

_____and good cause being shown; IT IS ORDERED THAT ADJUDICATION BE WITHHELD

PAGE 1 0F __2___

FILED
IN COMPUTER
D. WATSON

FEL-016 JUDGMENT PAGE

STATE OF FLORIDA

v.

KEVIN DWAYNE SPENCER JR
_____
Defendant

Case Number   10-2004-CF-1079

| FINGERPRINTS OF DEFENDANT |
|---|

| 1. Right Thumb | 2. Right Index | 3. Right Middle | 4. Right Ring | 5. Right Little |
|---|---|---|---|---|
| | | | | |

| 1. Left Thumb | 2. Left Index | 3. Left Middle | 4. Left Ring | 5. Left Little |
|---|---|---|---|---|
| | | | | |

Fingerprints taken by: _La Hay 6339_     _C/b_
                        Name                    Title

**I HEREBY CERTIFY** that the above and foregoing are the fingerprints of the defendant,
KEVIN DWAYNE SPENCER JR
_____, and that they were placed thereon by the
defendant in my presence in open court this date.

**DONE AND ORDERED** in open court in Clay County, Florida, this ___9TH___ day of
___SEPTEMBER_____, 200_4_ .

_____
                Judge
            WILLIAM A WILKES

PAGE 2 OF 2

IN THE CIRCUIT COURT OF THE FOURTH
JUDICIAL CIRCUIT, IN AND FOR CLAY
COUNTY, FLORIDA

CASE NO.:  10-2004- CF-1079

STATE OF FLORIDA

VS

KEVIN DWAYNE SPENCER JR
Defendant

## ORDER OF ADJUDICATION OF GUILT AND SENTENCE

THIS CAUSE CAME TO BE HEARD BEFORE THE COURT AND THE DEFENDANT,

KEVIN DWAYNE SPENCER JR , BEING PERSONALLY BEFORE THIS COURT,

REPRESENTED BY   TED W HELLMUTH , HIS/HER ATTORNEY OF RECORD

AND HAVING ENTERED A PLEA OF GUILTY/NOLO CONTENDERE TO THE OFFENSE(S):

FELONY CHILD ABUSE (LESSER)

AND NO CAUSE HAVING BEEN SHOWN WHY THIS DEFENDANT SHOULD BE

ADJUDICATED GUILTY, THEREFORE IT IS

**ORDERED: THE DEFENDANT IS HEREBY ADJUDICATED GUILTY, AND**

SENTENCED TO THE CLAY COUNTY JAIL FOR A PERIOD OF   12   DAYS/MONTHS

WITH CREDIT FOR TIME HERETOFORE SERVED OF   114   DAYS/MONTHS

JUDGMENTS FOR ALL COSTS IMPOSED.  THIS SENTENCE IS CONCURRENT TO SENTENCE IN
CLAY COUNTY CASE # 10-2-004-CF-859 AND 10-2004-CF-139.

DONE AND ORDERED IN OPEN COURT AT GREEN COVE SPRINGS, FLORIDA

THIS   9TH   DAY OF   SEPTEMBER , 2004 .

CIRCUIT JUDGE
WILLIAM A WILKES

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT,
IN AND FOR CLAY COUNTY,
FLORIDA

STATE OF FLORIDA

VS

*Keven Spencer*
_____
          DEFENDANT

CASE: ~~04 - 854 F~~   *as charged*

*04-139 CF - Ct. I*
*04-1079 CF - child abuse*

DIVISION: *A*

## PLEA OF GUILTY AND NEGOTIATED SENTENCE

I hereby enter my plea of guilty because I am guilty. Before entering such plea of guilty, I was advised of the nature of all the charges against me, the statutory offenses included within such charges, the range of maximum allowable punishments for each charge, all the possible defenses to each charge, and all circumstances in mitigation of such charges. I have been advised of all other facts essential to a full and complete understanding of all offenses with which I have been charged, and of all offenses to which I am entering this plea. I have been advised of all direct consequences of the sentence to be imposed.

**Specific Terms of Negotiated Sentence:**
My sentence has been negotiated in this case in that I will be:     *04-1079 — child abuse*
                                                                                                         *04-139 - Ct. I*
       ✓ Adjudicated guilty     *04 - 859 — as charged*
       _____ Adjudication of guilt will be withheld

And I will be sentenced to: (please print)
*1 yr. jail concurrent on each case*
*Credit for 114 days served. Judgement for $378.27 & court*
*p.d. fees + $10.00 surcharge*
*License suspended for 2 yrs*
_____

I considered this negotiated sentence to be to my advantage, and I have freely and voluntarily entered my plea of guilty. I have not been offered any hope of reward, better treatment, or certain type of sentence as an inducement to enter this plea, other than the sentence set forth above. I have not been promised by anyone, including my attorney, that I would actually serve any less time than that set forth above, and I understand that any early release of any sort is not a part of this plea agreement and is entirely within discretion of governmental agencies of than this Court. I have not been threatened, coerced, or intimidated by any person, including my attorney, in any way in order to get me to enter this plea.

**Advice of Rights:**
I understand that by pleading guilty I give up the following constitutional rights: the right to trial by judge or jury (including, if I am charged with a capital offense, the right to a jury of twelve persons), the right to be represented by counsel at trial, the right to have counsel appointed to represent me if I cannot afford to retain counsel, the right to present witnesses in my own behalf and to compel the attendance of those witnesses, the right to confront the witnesses against me, the right to require to State to prove its case against me beyond a reasonable doubt and, for purposes of this plea hearing, my right against self-incrimination. I further understand that if I am not a citizen of the United States that this plea may subject me to deportation. I also understand that by entering this plea I give up the right to appeal all matters relating to the judgment, including the issue of guilt or innocence.

FEL-024 PLEA OF GUILTY

**Consultation with Attorney:**

I have had ample time to discuss this agreement with my attorney. My attorney and I have read this agreement regarding my guilty plea together in private, and my attorney has explained all portions of this agreement to my complete understanding and satisfaction. We have fully discussed all aspects of this case, including all possible defenses to all charges, including self-defense and any defense based upon any disability, disease, insanity, or intoxication. My attorney has given me the opportunity to ask questions and has answered all of my questions fully and completely. My attorney has taken all actions requested by me, or has explained to my satisfaction and agreement why such actions should not be taken, and I concur with my attorney's decisions in that regard. I am completely satisfied with the services rendered by my attorney on my behalf in this case.

**Time for Consideration and Reflection:**

I have had sufficient time to consider all charges against me, all possible defenses and circumstances in mitigation, the advice of my attorney, the constitutional rights forfeited by entering into this plea agreement, and the potential consequences that the entry of a plea of guilty may have upon me. I have been provided with the opportunity for additional time to consider and reflect upon these matters, and I specifically state that I do not require any additional time to do so. I wish to proceed with the entry of my guilty plea.

**Acknowledged in Open Court:**

In open Court I have under oath acknowledged to the Judge of this Court that:

    A.  I have read and understood this entire plea agreement, including the rights I am giving up by entering into it;

    B.  I am not under the influence of any substance, drug, or condition (physical, mental, or emotional), which interferes with my appreciation of the entire plea agreement into which I am entering and all consequences thereof;

    C.  I have not been deprived of, and am properly taking, any medication which is essential to my full, complete, and unimpaired understanding of the plea agreement and these proceedings;

    D.  I have entered into and signed this plea of guilty and negotiated sentence freely and voluntarily;

    E.  This plea of guilty and negotiated sentence form is true and correct in all respects; and

    F.  This form represents the sole and complete agreement between myself and the State. No other agreements, representations, or promises have been made by myself, my attorney, the Court, or any representative of the State.

Both my attorney and I have signed this plea agreement in open Court at Green Cove Springs, Clay County, Florida, this ____ 9th day of September , 2004.

_Kevin O. Spencer Jr._                                    _Palmer & Yeomans_
~~Attorney for~~ Defendant                                Assistant State Attorney

_Ed A. Hellmuth_                                          _R.K. Watson_
~~Defendant~~ Attorney                                    Witness, Deputy Clerk

_____
Circuit Judge

My signature as Judge of this Court is certification that I have discussed this plea agreement with Defendant and Defendant's attorney in open Court on this date and have asked Defendant questions, considered Defendant's responses, and observed Defendant's demeanor. I find that Defendant has the intelligence to comprehend these constitutional rights, the terms of this plea agreement, the contents of this written agreement, and these proceedings. I further find that Defendant has entered this plea freely and voluntarily and is not under the influence of any disability, substance, drug, or condition which would interfere with Defendant's ability to understand and appreciate the terms of this plea agreement and its consequences.

FEL-024 PLEA OF GUILTY

## RULE 3.992(a) CRIMINAL PUNISHMENT CODE SCORESHEET

| 1. DATE OF SENTENCE 9/9/04 | 2. PREPARER'S NAME ☐ DC ☒ SAO | 3. COUNTY Clay | 4. SENTENCING JUDGE W. Wilkes | |
|---|---|---|---|---|
| 5. NAME (LAST, FIRST, M.I.) Spencer, Kevin | 6. DOB 1/13/86 | 8. RACE ☐ B ☒ W ☐ OTHER | 10. PRIMARY OFF. DATE 6/20/04 | 12. PLEA ☒ |
| | 7. DC # | 9. GENDER ☒ M ☐ F | 11. PRIMARY DOCKET # 04-1079 | TRIAL ☐ |

**I.**

**PRIMARY OFFENSE:** If Qualifier, please check ___A ___S ___C ___R (A=Attempt, S=Solicitation, C=Conspiracy, R=Reclassification)

| FELONY DEGREE | F.S.# | DESCRIPTION | OFFENSE LEVEL | POINTS |
|---|---|---|---|---|
| 3° | 827.03 | Child Abuse | 6 | |

(Level - Points: 1=4, 2=10, 3=16, 4=22, 5=28, 6=36, 7=56, 8=74, 9=92, 10=116)

Prior capital felony triples Primary Offense points ☐

I. **36**

**II.**

**ADDITIONAL OFFENSE(S):** Supplemental page attached ☐

| DOCKET# | FEL/MM DEGREE | F.S.# | OFFENSE LEVEL | QUALIFY A S C R | COUNTS | POINTS | TOTAL |
|---|---|---|---|---|---|---|---|
| ___/ | ___/ | ___/ | | ☐☐☐☐ | ___ X | ___ | = ___ |
| Description | | | | | | | |
| ___/ | ___/ | ___/ | | ☐☐☐☐ | ___ X | ___ | = ___ |
| Description | | | | | | | |
| ___/ | ___/ | ___/ | | ☐☐☐☐ | ___ X | ___ | = ___ |
| Description | | | | | | | |

(Level - Points: M=0.2, 1=0.7, 2=1.2, 3=2.4, 4=3.6, 5=5.4, 6=18, 7=28, 8=37, 9=46, 10=58)

Prior capital felony triples Additional Offense points ☐

Supplemental page points ___

II. **0**

**III.**

**VICTIM INJURY:**

| | | Number | Total | | | Number | Total |
|---|---|---|---|---|---|---|---|
| 2nd Degree Murder | 240 X | ___ | = ___ | Slight | 4 X | ___ | = ___ |
| Death | 120 X | ___ | = ___ | Sex Penetration | 80 X | ___ | = ___ |
| Severe | 40 X | ___ | = ___ | Sex Contact | 40 X | ___ | = ___ |
| Moderate | 18 X | ___ | = ___ | | | | |

III. ___

**IV.**

**PRIOR RECORD:** Supplemental page attached ☐

| FEL/MM DEGREE | F.S # | OFFENSE LEVEL | QUALIFY A S C R | DESCRIPTION | NUMBER | POINTS | TOTAL |
|---|---|---|---|---|---|---|---|
| MM / | | | ☐☐☐☐ | ___/ | 1 X | .2 | = .2 |
| ___/ | | | ☐☐☐☐ | ___/ | X | | = |
| ___/ | | | ☐☐☐☐ | ___/ | X | | = |
| ___/ | | | ☐☐☐☐ | ___/ | X | | = |
| ___/ | | | ☐☐☐☐ | ___/ | X | | = |
| ___/ | | | ☐☐☐☐ | ___/ | X | | = |

(Level - Points: M=0.2, 1=0.5, 2=0.8, 3=1.6, 4=2.4, 5=3.6, 6=9, 7=14, 8=19, 9=23, 10=29)

Supplemental page points ___0___

IV. **.2**

Page 1 Subtotal **36.2**

V.   Legal Status violation = 4 Points                                                          V. _____

VI.  Community Sanction violation before the court for sentencing                               VI. _____
     6 points  x each successive violation OR
     New felony conviction  = 12 points x each successive violation

VII. Firearm/Semi-Automatic or Machine Gun = 18 or 25 Points                                    VII. _____

VIII. Prior Serious Felony = 30 Points                                                          VIII. _____

                                               Subtotal Sentence Points        0

IX.  Enhancements (only if the primary offense qualifies for enhancement)

| Law Enforcement Protection | Drug Trafficking | Grand Theft Motor Vehicle | Street Gang (offenses committed on or after 10-1-96) | Domestic Violence (offenses committed on or after 10-1-97) |
|---|---|---|---|---|
| __ x 1.5  __ x 2.0  __ x 2.5 | __ x 1.5 | __ x 1.5 | __ x 1.5 | __ x 1.5 |

                                 Enhanced Subtotal Sentence Points  IX.   0

                                 TOTAL SENTENCE POINTS        36.2

## SENTENCE COMPUTATION

If total sentence points are less than or equal to 44, the lowest permissible sentence is any  non-state prison sanction.

If total sentence points are greater than 44:

_____   minus 28 =  _____  x .75 =    0
total sentence points                                   lowest permissible prison
                                                        sentence  in months

The maximum sentence is up to the statutory maximum for the primary and any additional offenses as provided in s. 775.082, F.S., unless the  lowest permissible sentence under  the code, exceeds the statutory maximum. Such sentences may be imposed concurrently or consecutively. If total sentence points are greater than or equal to 363, a life sentence may be imposed.

                                                        5
                                                   maximum sentence
                                                      in years

## TOTAL SENTENCE IMPOSED

|                     |                | Years | Months | Days |
|---------------------|----------------|-------|--------|------|
| ☐ State Prison      | ☐ Life         | ____  |        | ____ |
| ☑ County Jail       | ☐ Time Served  | ____  | 12     | ____ |
| ☐ Community Control |                | ____  | ____   | ____ |
| ☐ Probation         |                | ____  | ____   | ____ |

Please check if sentenced as  ☐ habitual offender,  ☐ habitual  violent offender,  ☐ violent career criminal,  ☐ prison releasee
reoffender, or a ☐ mandatory minimum applies.

☐ Mitigated Departure  ☐ Plea Bargain
Other Reason

**JUDGE'S SIGNATURE**

# APPENDIX 3

se0904spencer

1

```
1                    IN THE CIRCUIT COURT OF THE
                     FOURTH JUDICIAL CIRCUIT, IN
2                    AND FOR CLAY COUNTY, FLORIDA.

3                    CASE NO.:  2004-CF-1079.

4                    DIVISION:  CR-A.

5

6   STATE OF FLORIDA

7         VS.

8   KEVIN SPENCER, JR.
    _____

9

10

11       Plea Proceedings before the Honorable William A.

12  Wilkes, on Thursday, September 9, 2004, at the Clay

13  County Courthouse, 825 North Orange Avenue, Green Cove

14  Springs, Florida, Courtroom 4, before Karen F. Howard,

15  Registered Professional Reporter and Notary Public in

16  and for the State of Florida at Large.

17                      -  -  -

18

19                              .

20

21

22

23
                     Official Reporters, Inc.
24                     201 East Adams Street
                     Jacksonville, Florida  32202
25                       (904) 358-2090
```

2

```
1                A P P E A R A N C E S

2
```

Page 1

se0904spencer

3      MARYANNE YEOMANS, Esquire
       CHEYENNE L. PALMER, Esquire
4
5          Assistant State Attorneys
           Office of the State Attorney
6          Clay County Courthouse
           825 North Orange Avenue
7          Green Cove Springs, Florida  32043

8          Appearing for the State of Florida.

9

10     THEODORE W. HELLMUTH, Esquire

11         Assistant Public Defender
           Office of the Public Defender
12         Clay County Courthouse
           825 North Orange Avenue
13         Green Cove Springs, Florida 32084

14         Appearing for the Defendant.

15

16

17

18

19

20

21

22

23

24

25

3

1                P R O C E E D I N G S

2                      - - -

3      THE COURT:  Kevin Spencer.

4      (The defendant enters the courtroom.)

5      THE COURT:  All right.  Is this Kevin

6  Spencer?

7      MR. HELLMUTH:  Yes, Your Honor.
                    Page 2

se0904spencer

8       THE COURT:  What cases am I dealing with?

9       MR. HELLMUTH:  I've got to read them to

10   you, Your Honor, and the state's trying to --

11       MS. YEOMANS:  Your Honor, it's 2004-1079,

12   plead to a child abuse.

13       THE COURT:  Okay.

14       MS. YEOMANS:  2004-139, plead to count

15   one.  2004-859 as charged.

16       MR. HELLMUTH:  Your Honor, at this time,

17   on behalf of Mr. Spencer, we would withdraw

18   our previously entered plea of not guilty in

19   case number, 04-139-CF.

20       THE COURT:  What's he pleading to there,

21   count one?

22       MR. HELLMUTH:  Count one.

23       And in 04-1079, Your Honor, we would

24   plead him to the lesser-included of child

25   abuse, a felony of the third degree.

                                                4

1       And 04-859, that's one count, I believe,

2   Your Honor, of sale, and we're pleading as

3   charged.

4       Let me make certain about 04-859.

5       THE COURT:  Is that a sale within a

6   thousand feet of a school?

7       MR. HELLMUTH:  Yes, sir.

8       THE COURT:  Minimum mandatory of three

9   years?

10       MR. HELLMUTH:  Judge, I don't think

11   there's a minimum mandatory on that.

Page 3

se0904spencer

12    THE COURT:  There isn't?

13    MR. HELLMUTH:  It is a 30-year offense,

14    Judge, but it's not a minimum mandatory.  And

15    they want the felony two on his record -- I

16    mean, felony one.

17    THE COURT:  So 526 is nol pros'd, then?

18    MS. YEOMANS:  Yes, sir.

19    THE COURT:  964 is nol pros'd, then, too,

20    right?

21    MS. YEOMANS:  Yes, sir.

22    THE COURT:  All right, Mr. Spencer.

23    Raise your right hand.

24    (The defendant was sworn by the court.)

25    THE COURT:  Case 04-139 is possession of

5

1    cocaine.  You understand that's a third-degree

2    felony, carries a maximum penalty of five

3    years in prison?

4    THE DEFENDANT:  Yes, sir.

5    THE COURT:  You understand that the

6    negotiations are that you'd receive what, a

7    year in the county jail on all these,

8    concurrent?

9    THE DEFENDANT:  Yes, sir.

10    THE COURT:  All right.  In case number

11    04-859, sale or delivery of cocaine within a

12    thousand feet of a school, you're pleading

13    guilty to that one, right?

14    THE DEFENDANT:  Yes, sir.

15    THE COURT:  You understand that's a

16    first-degree felony, carries a maximum penalty

Page 4

se0904spencer

17    of 30 years in prison.  You're going to get a
18    year on that one.
19         04-526 the state's dropping.
20         04-964 case is dropped.
21         And the 04-1079 is the child abuse,
22    third-degree felony.  You're pleading guilty
23    to that one, right?
24         THE DEFENDANT:  Yes, sir.
25         THE COURT:  You understand that you're to

6

1    get a year on that one?
2         THE DEFENDANT:  Yes, sir.
3         THE COURT:  So you'd get a year on each
4    one of these three cases that you're pleading
5    guilty to and they'll run concurrent, or at
6    the same time, correct?
7         THE DEFENDANT:  Yes, sir.
8         THE COURT:  How old are you?
9         THE DEFENDANT:  18.
10         THE COURT:  Okay.  Now, you understand
11    that these -- the one-year sentences are to
12    run concurrent to one another; that is, you
13    serve them at the same time?
14         THE DEFENDANT:  Yes, sir.
15         THE COURT:  You're to get credit for time
16    served.  And I gather he has --
17         MR. HELLMUTH:  Judge, 114 days is what
18    we're going to give him on all three cases.
19         THE COURT:  How much?
20         MR. HELLMUTH:  114 days.

Page 5

se0904spencer

21    THE COURT:  Get 114 days credit.  Do you

22    agree with that?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Now, there will be some costs

25    of $370; your driver's license will be

7

1    suspended for a period of two years; and

2    there'd be $90 for the public defender fees;

3    and I think there'd be a surcharge of $101 on

4    that child abuse case.

5        MR. HELLMUTH:  Yes.

6        THE COURT:  Is that your total

7    understanding?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  Has anyone promised you

10    anything other than that?

11        THE DEFENDANT:  No, sir.

12        THE COURT:  Has anybody threatened you or

13    coerced you, intimidated you to get you to

14    plead to any of these cases?

15        THE DEFENDANT:  No, sir.

16        THE COURT:  You understand when you plead

17    guilty you waive the right to have a trial

18    before me or before a jury?

19        THE DEFENDANT:  Yes, sir.

20        THE COURT:  You understand you waive the

21    right to remain silent?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  Waive the right to call your

24    own witnesses?

25        THE DEFENDANT:  Yes, sir.

Page 6

se0904spencer

8

1          THE COURT:  Waive the right to have your
2     attorney examine the witnesses in each of
3     those cases?
4          THE DEFENDANT:  Yes, sir.
5          THE COURT:  Waive the right to require
6     the state to prove all of these charges
7     against you?
8          THE DEFENDANT:  Yes, sir.
9          THE COURT:  You understand that?
10          THE DEFENDANT:  Yes, sir.
11          THE COURT:  Are you a citizen of the
12     United States?
13          THE DEFENDANT:  Yes, sir.
14          THE COURT:  Did you discuss all these
15     cases with Mr. Hellmuth before you pled
16     guilty?
17          THE DEFENDANT:  Yes, sir.
18          THE COURT:  Did he answer all your
19     questions?
20          THE DEFENDANT:  Not with the sales
21     charge.
22          THE COURT:  What about the sale charge?
23          THE DEFENDANT:  He didn't never get my
24     discovery, my deposition.
25          THE COURT:  Yeah, but you understand

9

1     you're pleading guilty to it today, right?
2          THE DEFENDANT:  Yes, sir.

Page 7

se0904spencer

3          THE COURT:  Did you and he go over this

4    plea agreement together?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Did you understand it?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  You understand if you had a

9    defense to any of these charges, once I accept

10   the plea, that defense is no longer available

11   to you?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT: ,Are you under the influence

14   today of any alcohol, medication, drug,

15   substance, or condition?

16         THE DEFENDANT:  No, sir.

17         MS. YEOMANS:  As to case number

18   2004-139-CF, the state would be prepared to

19   prove that on January 27th, 2004, in the

20   county of Clay and the state of Florida, this

21   defendant did unlawfully and knowingly be in

22   actual or constructive possession of cocaine,

23   contrary to the provisions of section

24   893.13(6)(a) Florida Statutes.

25         And as to case number 2004-859-CF, on

                                             10


1    November 20th, 2003, in the county of Clay and

2    the state of Florida, this defendant did sell,

3    manufacture, or deliver or possess with intent

4    to sell, manufacture, or deliver a controlled

5    substance, to wit, cocaine, in or within a

6    thousand feet of a public or private

7    elementary, middle, or secondary school

                    Page 8

se0904spencer

8    between 6 a.m. and 12 midnight, contrary to

9    the provisions of section 893.13(1)(c)(1)

10   Florida Statutes.

11       MR. HELLMUTH:  No exceptions, Your Honor.

12       MS. PALMER:  Well, I need to lay the

13   child abuse.

14       All right.  As to the same defendant, in

15   case number 2004-1079, he did engage in sexual

16   activity with a minor and that action could

17   reasonably cause physical or mental injury to

18   that child, contrary to the provisions of

19   827.03.

20       MR. HELLMUTH:  Likewise, no exceptions,

21   Your Honor.

22       THE COURT:  All right.  Adjudicate him

23   guilty on each count, give him a year in the

24   county jail, concurrent on each count, credit

25   for 114 days.  On the child abuse there's $101

                                                    11

1    surcharge.  There's $370 in court costs, $90

2    for the public defender lien, and driver's

3    license two years.

4        MR. HELLMUTH:  Thank you, Your Honor.

5        THE COURT:  Thank you.

6        (Proceedings concluded.)

7                    - - -

8

9

10

11

                    Page 9

se0904spencer

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12

1              C E R T I F I C A T E

2

3

4  STATE OF FLORIDA )

5  COUNTY OF CLAY    )

6

7      I, Karen F. Howard, Registered Professional

8  Reporter, certify that I was authorized to and did

9  stenographically report the foregoing proceedings and

10  that the transcript is a true and complete record of my

11  stenographic notes.

12

13      DATED this 7th day of Wednesday, 2007.

14

15      _____

16      Karen F. Howard
       Registered Professional Reporter
              Page 10

se0904spencer

17
18
19
20
21
22
23
24
25