## No. 10-10676-FF

### In the
# United States Court of Appeals
# for the Eleventh Circuit

---

KEVIN SPENCER,

*Movant-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NOS. 3:08-CV-914-J-33MCR & 3:06-CR-349-J-33MCR

---

## BRIEF OF THE UNITED STATES

---

ROBERT E. O'NEILL
United States Attorney

LINDA JULIN MCNAMARA
Assistant United States Attorney
Deputy Chief, Appellate Division

PEGGY MORRIS RONCA
Assistant United States Attorney
Appellate Division
Florida Bar No. 348570
501 W. Church St., Ste. 300
Orlando, Florida 32805
(407) 648-7500

June 1, 2012

*Kevin Spencer v. United States*
No. 10-10676-FF

## Certificate of Interested Persons
## and Corporate Disclosure Statement

The certificate of interested persons and corporate disclosure statement

in Kevin Spencer's principal brief is complete.

## Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement. . . . . C-1

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Citations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.     "Whether in light of *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 [] (2008), *Gilbert v. United States*, [609 F.3d 1159 (11th Cir. 2010)], and *United States v. Hunter*, 559 F.3d 1188 (11th Cir. 2009), the movant's freestanding challenge to a career offender sentence imposed under [USSG §]4B1.1 is cognizable under 28 U.S.C. § 2255?"

    II.    "If so, whether the district court, in light of [Begay], erroneously determined that the movant was properly classified as a career offender where he had a prior state conviction for felony child abuse under Fla. Stat. § 827.03(1)?"

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    *Course of Proceedings.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    *Statement of the Facts.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    *Standard and Scope of Review.* . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Argument and Citations of Authority. . . . . . . . . . . . . . . . . . . . . . . . . .  7

    I.    Spencer's freestanding challenge to his career

          offender sentence imposed under USSG §4B1.1 is

          not cognizable under 28 U.S.C. § 2255. . . . . . . . . . . . . . . . . .  7

        A.    The Misapplication of the Career-Offender Guideline does

               not Involve an Omission Inconsistent with the Rudimentary

               Demands of Fair Procedure.. . . . . . . . . . . . . . . . . . . . . . .  9

        B.    The Alleged Misapplication of the Career-Offender

               Guidelines does not Involve a Fundamental Miscarriage of

               Justice.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            (1)    *Spencer's Sentence Is Within Statutory Limits.*. . . . . . . . 13

            (2)    *The District court Could Reimpose*

                 *the Identical Sentence.* . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.    Even after *Begay*, the district court correctly classified
Spencer's felony child abuse conviction under Fla. Stat. §
827.03(1) as a "crime of violence" for purposes of the career
offender guideline... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

iv

# Table of Citations

## Cases

*Begay v. United States*,

     553 U.S. 137, 128 S. Ct. 1581 [] (2008). . . . . . . . . . . . . . . . . . . . . passim

*Burke v. United States*,

     152 F.3d 1329 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Johnson v. United States*,

     544 U.S. 295, 125 S. Ct. 1571 (2005). . . . . . . . . . . . . . . . . . . . . . . . 20

*Dorszynski v. United States*,

     418 U.S. 424, 94 S. Ct. 3042 (1974). . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ex parte Lange*,

     85 U.S. (18 Wall.) 163 (1873). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gilbert v. United States*,

     609 F.3d 1159 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gilbert v. United States*,

     625 F.3d 716 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

* *Gilbert v. United States*,

     640 F.3d 1293 (11th Cir. 2011)(en banc). . . . . . . . . . . . . . 4, 7, 14-16, 18

v

*Hill v. United States,*

    368 U.S. 424, 82 S. Ct. 468 (1962). . . . . . . . . . . . . . . . . . 8, 9, 11, 12, 20

*Hunter v. United States,*

    499 F. App'x 860 (11th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*James v. United States,*

    550 U.S. 192, 127 S. Ct. 1586 (2007). . . . . . . . . . . . . . . . . . . . 23, 27, 28

*Johnson v. United States,*

    130 S. Ct. 1265 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 28

*Jones v. Thomas,*

    491 U.S. 376, 109 S. Ct. 2522 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Llerena v. United States,*

    508 F.2d 78 (5th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lynn v. United States,*

    365 F.3d 1225 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Martin v. United States,*

    81 F.3d 1083 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McKay v. United States,*

    657 F.3d 1190 (11th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mistretta v. United States*,

    488 U.S. 361, 109 S. Ct. 647 (1989). . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Narvaez v. United States*,

    674 F.3d 621 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

*Reed v. Farley*,

    512 U.S. 339, 114 S. Ct. 2291 (1994). . . . . . . . . . . . . . . . . . . . . . 8, 9, 12

*Saylor v. Sanford*,

    99 F.2d 605 (5th Cir. 1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Scott v. United States*,

    997 F.2d 340 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sun Bear v. United States*,

    644 F.3d 700 (8th Cir. 2011) (en banc). . . . . . . . . . . . . . . . . . 14, 17, 19

\* *Sykes v. United States*,

    131 S. Ct. 2267 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

*Taylor v. United States*,

    495 U.S. 575, 110 S. Ct. 2143 (1990). . . . . . . . . . . . . . . . . . . . . . . . . 24

\* *United States v. Addonizio*,

    442 U.S. 178, 99 S. Ct. 2235 (1979). . . . . . . . . . . . 13, 14, 16, 18, 19, 20

*United States v. Archer*,

    531 F.3d 1347 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Bass*,

    404 U.S. 336, 92 S. Ct. 515 (1971). . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Bushert*,

    997 F.2d 1343 (11th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

\* *United States v. Chitwood*,

    676 F.3d 971 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . 23, 24, 26, 27, 29

*United States v. DiFrancesco*,

    449 U.S. 117, 101 S. Ct. 426 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Frady*,

    456 U.S. 152, 102 S. Ct. 1584 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Irey*,

    612 F.3d 1160 (11th Cir. 2010) (en banc),. . . . . . . . . . . . . . . . . . . . . . . .

    *cert. denied*, 131 S. Ct. 1813 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Ivory*,

    475 F.3d 1232 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. LaBonte*,

    520 U.S. 751, 117 S. Ct. 1673 (1997). . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Llanos-Agostadero*,

    486 F.3d 1194 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. McGill*,

    450 F.3d 1276 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Moriarty*,

    429 F.3d 1012 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Owens*,

    672 F.3d 966 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

\* *United States v. Schneider*,

    No. 10-15863, 2012 WL 1868645. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    (11th Cir. May 24, 2012)(unpublished). . . . . . . . . . . . . . . . . . . . . . . 23, 24

*United States v. Scott*,

    664 F.2d 264 (11th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Timmreck*,

    441 U.S. 780, 99 S. Ct. 2085 (1979). . . . . . . . . . . . . . . . . . . . 8, 9, 12, 20

*United States v. Wilson*,

    568 F.3d 670 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Wiltberger*,

    18 U.S. (5 Wheat.) 76, 95 (1820). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Williams v. New York,*

    337 U.S. 241, 69 S. Ct. 1079 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Statutes**

Fla. Stat. § 800.04. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fla. Stat. § 827.03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fla. Stat. § 827.03(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fla. Stat. § 827.03(1)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 21, 24, 27-29

18 U.S.C § 924(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, passim

21 U.S.C. § 841(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 841(b)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

28 U.S.C. § 2241. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 2253(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 2255(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 11

28 U.S.C. § 2255(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 2255(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 994(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Rules**

Fed. R. App. P. 4(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xii

Fed. R. Crim. P. 35, adv. comm. notes (1966). . . . . . . . . . . . . . . . . . . . . . . . 11

**Other Authorities**

Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987. . . . . .  9-11

USSG §4B1.1, comment. (backg'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG §4B1.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG §4B1.1(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG §4B1.2(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22, 23

# Statement of Jurisdiction

This is an appeal from a final order and judgment of the United States District Court for the Middle District of Florida denying a 28 U.S.C. § 2255 motion. Docs. 17, 18.[1] That court had jurisdiction. *See* 28 U.S.C. § 1331. The court entered its judgment on January 8, 2010, Doc. 18, and Kevin Spencer timely filed his notice of appeal on February 11, 2010, Doc. 20. *See* Fed. R. App. P. 4(a). A judge of this Court granted a certificate of appealability. Doc. 22; *see* 28 U.S.C. § 2253(c). This Court has jurisdiction over this appeal. *See* 28 U.S.C. § 1291.

---

[1]The underlying criminal case is *United States v. Spencer,* No. 3:06-cr-349-J-33MCR, and his section 2255 case is *Spencer v. United States*, No. 3:08-cv-914-J-33MCR. Record citations are to his section 2255 case unless otherwise indicated.

xii

## Statement of the Issues

As certified by the Court, the issues are:

I.      "Whether in light of *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581

[] (2008), *Gilbert v. United States*, [609 F.3d 1159 (11th Cir. 2010)], and

*United States v. Hunter*, 559 F.3d 1188 (11th Cir. 2009), the movant's

freestanding challenge to a career offender sentence imposed under

[USSG §]4B1.1 is cognizable under 28 U.S.C. § 2255?"

II.     "If so, whether the district court, in light of [Begay], erroneously

determined that the movant was properly classified as a career offender

where he had a prior state conviction for felony child abuse under Fla.

Stat. § 827.03(1)?"

## Statement of the Case

On direct appeal, this Court affirmed the district court's ruling that Kevin Spencer's prior conviction for felony child abuse constituted a "crime of violence" for purposes of the career offender enhancement under the United States Sentencing Guidelines. Now on collateral review, Spencer again asserts that his prior conviction is not a "crime of violence," and he contends that his nonconstitutional challenge to his sentence that is within the statutory maximum term is cognizable under 28 U.S.C. § 2255. His arguments in support of cognizability, however, are at odds with the Supreme Court's and this Court's precedents and, therefore, this Court should reject them. Additionally, he has not demonstrated that felony child abuse no longer qualifies as a "crime of violence."

### Course of Proceedings

A federal grand jury indicted Kevin Spencer and charged him with distributing crack cocaine, in violation of 21 U.S.C. § 841(a). Crim. Doc. 1. Spencer pled guilty without a plea agreement. Crim. Docs. 33, 37. In 2007, after classifying Spencer as a career offender under the advisory United States Sentencing Guidelines, the district court ordered him to serve 151 months in

2

the custody of the Bureau of Prisons, which was the lowest possible sentence within his advisory guidelines range.  Crim. Docs. 43, 44.

Spencer filed a direct appeal from his sentence, in which he argued that his prior conviction for felony child abuse was not a crime of violence for purposes of the career offender guideline, USSG §4B1.1.  Crim. Doc. 45.  On April 1, 2008 (two weeks before the Supreme Court decided *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008)), this Court held that Spencer's prior conviction for felony child abuse under Fla. Stat. § 827.03(1) is a crime of violence under the residual clause of section 4B1.2(a)(2) and affirmed Spencer's sentence.  Crim. Doc. 55 (*United States v. Spencer*, 271 F. App'x 977 (11th Cir. 2008)).  The mandate issued on May 2, 2008.  Crim. Doc. 55.

In September 2008, Spencer timely filed a motion under 28 U.S.C. § 2255.  Crim. Doc. 56; Doc. 1.  In relevant part, he asserted that he was "actually innocent" of being a career offender because his prior conviction for felony child abuse does not qualify as a "crime of violence."  Doc. 1 at 3. Relying on this Court's holding in Spencer's direct appeal, the district court denied Spencer's request for relief.  Doc. 17 at 9-10.

Spencer timely appealed from the denial of his section 2255 motion. Doc. 20.  In August 2010, following this Court's issuance of the panel opinion

3

in *Gilbert v. United States*, 609 F.3d 1159 (11th Cir. 2010), this Court issued a

certificate of appealability ("COA") to Spencer, Doc. 22, and the certified

questions are quoted above at page 1.  Spencer and the United States filed their

opening briefs in September and October 2010, respectively.

This Court then granted rehearing en banc in *Gilbert* and withdrew its

panel opinion.  *See Gilbert v. United States*, 625 F.3d 716 (11th Cir. 2010).  The

Court issued its en banc opinion in *Gilbert* in May 2011, *see Gilbert v. United

States*, 640 F.3d 1293 (11th Cir. 2011), and sua sponte appointed counsel to

represent Spencer in November 2011.  Spencer, through counsel, now has filed

a substitute opening brief.

### *Statement of the Facts*

Spencer was 21 years old at the time of his sentencing, Presentence

Investigation Report ("PSR") at 2, and he already had nine criminal history

points, PSR ¶ 39.  The district court classified him as a career offender based

on prior convictions for (1) possession of cocaine with the intent to sell it, and

(2) felony child abuse.  PSR ¶¶ 25, 29, 32.  Only the felony child abuse

conviction is at issue here.  See Doc. 22.

In 2004, when Spencer was 18 years old, a high school drop-out, and

a convicted felon, he "engaged in sexual intercourse with a 14 year old female

4

victim," and the State of Florida charged him with "lewd and lascivious assault on a child over 12 and under 16 years old," in violation of Fla. Stat. § 800.04. PSR ¶¶ 29, 32, 61. Spencer pled guilty, however, to felony child abuse, in violation of Fla. Stat. § 827.03, and he admitted during the plea colloquy that he had "engage[d] in sexual activity with a minor," and that such "action could reasonably cause physical or mental injury to that child." See Crim. Doc. 49 at 8-9. In light of Spencer's admissions during the 2004 state plea colloquy, the district court found at his federal sentencing that Spencer had been convicted under Fla. Stat. § 827.03(1)(b). See Crim. Doc. 49 at 13.

## *Standard and Scope of Review*

In a 28 U.S.C. § 2255 proceeding, this Court reviews factual findings for clear error and legal issues de novo. *Martin v. United States*, 81 F.3d 1083, 1084 (11th Cir. 1996). The scope of this Court's review is limited to the issues specified in the COA. *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).

## Summary of the Argument

I.    Spencer's arguments that his challenge to his guidelines-enhanced sentence is cognizable under 28 U.S.C. § 2255 are at odds with the Supreme Court's and this Court's precedents.  Because Spencer's 151-month sentence is within the 240-month statutory maximum, it is lawful, constitutional, and fundamentally fair.

II.    Even assuming this Court determines that  Spencer's nonconstitutional challenge to his sentence that is within the statutory maximum is cognizable on collateral review, he has not carried his burden to demonstrate that his prior conviction for felony child abuse no longer qualifies as a "crime of violence" under the residual clause of the career offender guideline.  Because this Court held in Spencer's direct appeal that Florida's felony child abuse offense presents "a serious potential risk of physical injury to another," the only question here is whether that serious potential risk is similar in degree to the risks posed by the enumerated offenses.  Because an intentional act of child abuse that "could *reasonably be expected* to result in physical . . . injury" presents a greater degree of risk than the mere *potential* for physical injury, the Florida child abuse offense qualifies as a "crime of violence."

6

## Argument and Citations of Authority

### I.  Spencer's freestanding challenge to his career offender sentence imposed under USSG §4B1.1 is not cognizable under 28 U.S.C. § 2255.

Spencer contends that his challenge to his guidelines-enhanced sentence is cognizable under 28 U.S.C. § 2255.  His arguments, however, are inconsistent with the Supreme Court's and this Court's precedents.  Because Spencer's 151-month sentence is well within the 240-month statutory maximum, it is lawful, constitutional, and fundamentally fair.  His nonconstitutional challenge to his sentence, therefore, is not cognizable under section 2255.

Section 2255 permits a court to grant relief from an imposed term of imprisonment only if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[A] claim that a sentencing guidelines provision was misapplied . . . is not a constitutional claim."  *Gilbert v. United States*, 640 F.3d 1293, 1321 (11th Cir. 2011) (en banc).  "If it were, every guidelines error would be a constitutional violation."  *Id.*; *see Burke v. United States*, 152 F.3d

7

1329, 1332 (11th Cir. 1998) ("[A] claim that the sentence imposed is contrary to a post-sentencing clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice.").

The Supreme Court has stated that a defendant may raise a nonconstitutional claim on collateral review only if the alleged error constitutes a "'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed v. Farley*, 512 U.S. 339, 348, 114 S. Ct. 2291, 2297 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962)); *United States v. Timmreck*, 441 U.S. 780, 783-84, 99 S. Ct. 2085, 2087-88 (1979) (quoting *Hill*, 368 U.S. at 428, 82 S. Ct. at 471). As a result, "certain claimed errors, even if meritorious on direct appeal, are not cognizable in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1233 & n.15 (11th Cir. 2004) (citing 10 opinions of this Court holding that various errors were not cognizable under section 2255); *accord United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982) ("an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment").

8

Apparently recognizing that a challenge to a guidelines enhancement is not a constitutional claim, Spencer suggests that his challenge falls within the category of challenges that are "otherwise subject to collateral attack" under section 2255(a) because the alleged error constitutes a fundamental defect that resulted in a complete miscarriage of justice.  Spencer's brief at 8-9. Application of the *Hill-Timmreck* standard, however, establishes that  Spencer's challenge to the district court's application of the sentencing guidelines constitutes the type of non-constitutional error that is not cognizable in a section 2255 proceeding.

## A. The Misapplication of the Career-Offender Guideline does not Involve an Omission Inconsistent with the Rudimentary Demands of Fair Procedure.

One of the prongs of the *Hill-Timmreck* standard would require Spencer to show "an omission inconsistent with the rudimentary demands of fair procedure.'"  *See Reed*, 512 U.S. at 348, 114 S. Ct. at 2297 (quoting *Hill*, 368 U.S. at 428, 82 S. Ct. at 471).  Spencer's challenge to his career-offender enhanced sentence did not assert such an error because guided sentencing discretion of the sort embodied in the federal sentencing guidelines is not an indispensable attribute of fair sentencing procedure.  For nearly a century before the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987

9

("SRA"), federal judges enjoyed "almost unfettered discretion" to sentence offenders within broad statutory limits. *See Mistretta v. United States*, 488 U.S. 361, 363-64, 109 S. Ct. 647, 650 (1989). Under that system of indeterminate sentencing, judges could impose minimal sentences or statutory maximum sentences, and in doing so, they were under no obligation to conform to any particular theory of punishment or even to explain why they had selected the sentences that they did. *See, e.g., Williams v. New York*, 337 U.S. 241, 252, 69 S. Ct. 1079, 1085 (1949) (stating that the judge could have "sentenced [the defendant] to death giving no reason at all"). Such justification was not necessary or required because the exercise of sentencing discretion was given "virtually unconditional deference on appeal." *Mistretta*, 488 U.S. at 364; *see United States v. Irey*, 612 F.3d 1160, 1228 (11th Cir. 2010) (en banc) (Tjoflat, J., concurring) ("Because sentences were not subject to appellate review, judges rarely explained the reasoning behind the sentences imposed."), *cert. denied*, 131 S. Ct. 1813 (2011). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Dorszynski v. United States*, 418 U.S. 424, 431, 94 S. Ct. 3042, 3047 (1974). Nor could a court's exercise of its sentencing discretion within statutory limits be challenged on collateral review. *See, e.g., Saylor v. Sanford*,

99 F.2d 605, 607 (5th Cir. 1938) ("[T]he sentence was within the limits allowed by statute; and its imposition was a matter within the discretion of the trial court. The propriety of this sentence is not reviewable upon a petition for the writ of habeas corpus.").[2]

In 1984, Congress enacted the SRA, which created the Sentencing Commission and authorized it to enact the sentencing guidelines. In doing so, Congress rejected indeterminate sentencing in favor of determinate sentencing aimed at channeling the exercise of sentencing discretion. *See Mistretta*, 488 U.S. at 368, 109 S. Ct. at 653. But, the SRA reflects a policy choice, not a legal mandate, because Congress could pass a law tomorrow repealing the SRA and restoring the prior indeterminate-sentencing regime. The conclusion that indeterminate sentencing is permissible shows that guided discretion, and

---

[2]Sentencing courts later were given the authority to correct sentences in narrowly-defined circumstances. In 1946, the Federal Rules of Criminal Procedure gave courts the power "to correct an illegal sentence at any time," Fed. R. Crim. P. 35 (repealed), and, in 1948, Congress gave courts the power to vacate a sentence "in excess of the maximum provided by law." 28 U.S.C. § 2255(a). In 1966, Rule 35 was amended to permit sentencing courts to correct sentences that were imposed in an "illegal manner." This narrow amendment was intended to overturn the Supreme Court's then-four-year-old decision in *Hill*, 368 U.S. at 430, 82 S. Ct. at 472, which had held that a denial of allocution was not redressable under Rule 35 because the resulting sentence was not itself "illegal." Fed. R. Crim. P. 35, adv. comm. notes (1966). Rule 35 was repealed and substantially rewritten following the enactment of the SRA.

thus the sentencing guidelines themselves, are not indispensable attributes of fair sentencing procedure.  And, because a system of unbounded sentencing discretion is entirely permissible, "errors in the administration of a system that curtails discretion cannot be 'inconsistent with the rudimentary demands of fair procedure.'"  *See Scott v. United States*, 997 F.2d 340, 342 (7th Cir. 1993).

Accordingly, Spencer's challenge to the district court's determination that he qualified as a career offender pursuant to the sentencing guidelines does not satisfy the first part of the *Hill-Timmreck* cognizability standard.

**B.    The Alleged Misapplication of the Career-Offender Guidelines does not Involve a Fundamental Miscarriage of Justice.**

The other prong of the *Hill-Timmreck* standard would require Spencer to establish that he has suffered a "fundamental miscarriage of justice."  *See Reed,* 512 U.S. at 348, 114 S. Ct. at 2297 (quoting *Hill,* 368 U.S. at 428, 82 S. Ct. at 471); *Timmreck*, 441 U.S. at 783-84, 99 S. Ct. at 2087-88 (quoting *Hill*, 368 U.S. at 428, 82 S. Ct. at 471).  Notably, collateral review of guidelines errors did not exist even when the guidelines were mandatory.  Although many courts, like this Court in *Burke*, 152 F.3d at 1332, held open the possibility that someday an exceptional case might arise in which a guidelines-misapplication error amounted to a cognizable miscarriage of justice, no court of appeals ever found that standard met.

12

*(1)    Spencer's Sentence Is Within Statutory Limits.*

As Spencer acknowledges, his sentence falls within the statutory

maximum sentence available for his crime of conviction, Spencer's brief at 21,

and the Supreme Court's sentencing cognizability decisions have long

differentiated between sentences that exceed the statutory maximum and those

that do not.  For example, in *Ex parte Lange*, 85 U.S. (18 Wall.) 163 (1873), the

Court granted habeas corpus relief to a federal prisoner who had been

sentenced to a term of imprisonment and a fine under a statute authorizing a

sentence of imprisonment or a fine, holding that the sentence was "void," *id.*

at 176, because it "obviously. . . exceeded that authorized by the legislature."

*Jones v. Thomas*, 491 U.S. 376, 383, 109 S. Ct. 2522, 2526 (1989) (discussing

*Lange*).  In contrast, *United States v. Addonizio*, 442 U.S. 178, 187, 99 S. Ct.

2235, 2241 (1979), held that a sentencing error was not cognizable under

section 2255 in part because the actual sentence imposed was "within the

statutory limits."

Although these decisions predate the guidelines, they provide the

framework within which to analyze whether guidelines sentencing errors are

cognizable on collateral review.  Decisions like *Lange* that permit collateral

attacks on a sentence that exceeds applicable statutory limits implement the

13

basic axiom that "a defendant may not receive a greater sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139, 101 S. Ct. 426, 438 (1980); *see also United States v. Bushert*, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993) ("a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute").  That axiom is rooted in the separation-of-powers principle that "the power of punishment is vested in the legislative, not in the judicial, department," and it is "the legislature, not the Court, which is to . . . ordain [the] punishment." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820).  Consequently, if a defendant has been sentenced within the confines that Congress has defined, the defendant's sentence is legal.  *See Addonizio*, 442 U.S. at 187, 99 S. Ct. at 2241 (sentence within statutory maximum "was and is a lawful one"); *Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) ("An unlawful or illegal sentence is one imposed without, or in excess of, statutory authority.").

Consistently with that principle, this Court held in *Gilbert* that the savings clause of 28 U.S.C. § 2255(e) does not authorize a federal prisoner to bring in a 28 U.S.C. § 2241 petition a claim, which section 2255(h) otherwise would bar as second or successive, that a district court misapplied the sentencing guidelines in a way that resulted in a longer sentence that did not

14

exceed the maximum punishment Congress prescribed for the crime of conviction. 640 F.3d at 1323. That situation differs significantly from cases in which a prisoner asserts a cognizable claim that his sentence exceeds the statutory maximum term applicable to his crime of conviction. That situation arises in the Armed Career Criminal Act ("ACCA") context (18 U.S.C. § 924(e)), where courts were required to impose a minimum 15-year sentence, in excess of the otherwise-applicable 10-year statutory maximum, for felons convicted of possessing a firearm with three or more prior qualifying convictions. *Cf. Hunter v. United States*, 499 F. App'x 860 (11th Cir. 2011).[3] Defendants erroneously classified and sentenced as armed career criminals would be entitled to collateral relief from those illegal sentences because Congress did not authorize the courts to impose those sentences. *Cf. United*

---

[3]Contrary to Spencer's assertions, brief at 18, 23, this Court did not "h[old] that [Hunter and Watts] were entitled to relief because their sentences exceeded the statutory maximum of 10 years." This Court remanded the cases to the respective district courts for further consideration of the defendants' claims in light of developing case law and the United States' concession of error. 499 F. App'x at 862. On remand, both district courts accepted our concession and ordered that the defendants be resentenced. *United States v. Watts*, No. 8:07-cv-665, Doc. 38 (M.D. Fla. 2012); *United States v. Hunter*, No. 1:06-cv-22555, Docs. 48, 49 (S.D. Fla. 2012). The district court in an unrelated case, *McKinney v. Warden*, Nos. 5:09-cv-163 & 5:11-cv-111, 2012 WL 1580990 (M.D. Fla. May 4, 2012)(unpublished), however, rejected our concession of error and denied the defendants' petitions for relief from their ACCA sentences through the savings clause of section 2255.

15

*States v. Bass*, 404 U.S. 336, 348, 92 S. Ct. 515, 522 (1971) (noting "the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should").  These fundamental concerns are not implicated by guidelines sentences because, even if the sentence was calculated in error, the actual sentence imposed, unlike an ACCA sentence, ultimately is within statutory limits.  *See Addonizio*, 442 U.S. at 185, 99 S. Ct. at 2240; *see also Gilbert*, 640 F.3d at 1306-07 ("statutory maximum sentence" means the punishment ceiling Congress has prescribed "beyond which no defendant convicted of committing that particular crime may be sentenced regardless of the circumstances of the crimes, regardless of the defendant's history, and regardless of the sentencing guidelines").

Indeed, in this case, the district court imposed a sentence of 151 months in prison, the lowest sentence within Spencer's guidelines range, Crim. Doc. 26, despite that the statutory maximum term was 240 months in prison, see 21 U.S.C. § 841(b)(1)(C).  A 12.6-year sentence, for a defendant with an adult criminal history beginning at age 17 and nine criminal history points by the age of 21 certainly did not constitute a complete miscarriage of justice.

Notwithstanding *Addonizio* and *Gilbert*, Spencer relies heavily on *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), in which the court held that

16

misapplication of the career offender guideline results in a miscarriage of justice because the defendant's sentence "exceeds that permitted by law." 674 F.3d at 623, 627–29. Relying to some extent on the fact that Narvaez (unlike Spencer) had been sentenced under a mandatory guidelines scheme, *id.* at 628–29, a panel of the Seventh Circuit concluded that Narvaez's challenge to his career offender sentence was cognizable, stating that a "post-conviction change in the law has rendered the sentencing court's decision unlawful," *id.* at 627, that application of the career offender guideline made Narvaez eligible "for roughly five additional years of incarceration without *any* justification in the sentencing scheme established by law," *id.* at 626 (emphasis in original), and that the defendant "was sentenced based upon the equivalent of a nonexistent offense," *id.* at 629.

*Narvaez* squarely conflicts with the Eighth Circuit's en banc opinion in *Sun Bear*, 644 F.3d 700, which held that a defendant's sentence within the statutory maximum term for the offense of conviction was not unlawful or a miscarriage of justice despite the district court's error in applying the career offender guideline. As *Sun Bear* states, "[A] miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law." 644 F.3d 706 (citing *Addonizio*, 442 U.S. at 184, 99 S. Ct. at 2240).

17

This Court stated in *Gilbert* that the maximum sentence authorized by law for any particular crime is the sentence "Congress prescribes, beyond which no defendant convicted for committing that particular crime may be sentenced regardless of the circumstances of the crime, regardless of the defendant's history, and regardless of the sentencing guidelines." 640 F.3d at 1306-07. *Gilbert* also rejected comparisons between wrongfully being sentenced as a career offender and wrongfully being convicted of a nonexistent offense. 640 F.3d at 1314–15 (relying largely on Seventh Circuit precedents with which *Narvaez* appears to be at odds). Because *Narvaez* conflicts with *Addonizio* and *Gilbert*, it does not provide persuasive reasoning as to whether a nonconstitutional guidelines error is cognizable under section 2255.

**(2)     *The District court Could Reimpose the Identical Sentence.***

The flip side of the fact that Spencer's sentence is within statutory limits is that he remains eligible to be resentenced to the identical term of imprisonment, even without the career-offender enhancement, because the guidelines are advisory (and were advisory when the district court sentenced Spencer in August 2007, Crim. Doc. 43). That conclusion confirms that Spencer's sentence does not involve a cognizable miscarriage of justice. Even if the district court resentenced Spencer today without considering the career

18

offender guidelines enhancement, it still could sentence Spencer up to the statutory maximum term (20 years in prison).  Although Spencer contends that the district court calculated his guidelines range on the basis of a misapplication of the career-offender provision, the actual sentence itself, viewed objectively, is not "illegal" or a "miscarriage of justice" because it "conform[ed] to the applicable penalty statute," *Llerena v. United States*, 508 F.2d 78, 80 (5th Cir. 1975); did not "exceed the statutory maximum," *United States v. Scott*, 664 F.2d 264 (11th Cir. 1981); *see United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005); and, unlike an analogous ACCA sentence, could be reimposed even without the career-offender enhancement (regardless whether the district court would impose the same sentence), *see Sun Bear*, 644 F.3d at 706 (because defendant "would be resentenced under an advisory guidelines regime that permits an upward variance . . . even if the district court were persuaded to determine a lower advisory range, any notion that his sentence as a career offender resulted in a miscarriage of justice because it was lacking in rudimentary fairness evaporates").

This objective approach to cognizability that asks whether the court could reimpose the same sentence accords with controlling precedent.  In *Addonizio*, for example, the Supreme Court reasoned that Addonizio's

19

sentence "was and is a lawful one" when measured against "all of the objective criteria—federal jurisdiction, the Constitution, and federal law," 442 U.S. at 187, 99 S. Ct. at 224, and it found "no basis for enlarging the grounds for collateral review to include claims based not on any objectively ascertainable error." *Id.*

Thus, Spencer cannot establish that his challenge to the district court's application of the sentencing guidelines presents a constitutional claim or a non-constitutional claim that is cognizable under the *Hill-Timmreck* standard.

Spencer nonetheless contends (brief at 23–24) that *Johnson v. United States*, 544 U.S. 295, 125 S. Ct. 1571 (2005), "bolsters the conclusion that [his] claim is cognizable under § 2255, even if it is based solely on the guidelines." *Johnson*, however, does not hold that an erroneous application of the career offender guideline is cognizable in a section 2255 proceeding.  It addressed the timeliness of a federal prisoner's section 2255 petition where he had filed a section 2255 petition after obtaining a state order vacating prior state convictions that had been used to enhance his federal sentence.  Notably, unlike the defendant in *Johnson*, Spencer's sentence was not enhanced based on now non-existent prior convictions.

20

Finally, Spencer asserts that the district court's alleged error in the application of the career offender sentencing guideline in this case resulted in the deprivation of his constitutional right to due process because his sentence was based on "inaccurate information." Spencer's brief at 24–25. The information in his PSR concerning his criminal history, however, was and is accurate; it did not become "inaccurate" simply because a subsequent clarification of a legal definition established that the court may have erred in interpreting and applying the career offender guideline.

For these reasons, Spencer's nonconstitutional challenge to his guidelines-range sentence that is below the statutory maximum is not cognizable under section 2255.

## II.  Even after *Begay*, the district court correctly classified Spencer's felony child abuse conviction under Fla. Stat. § 827.03(1) as a "crime of violence" for purposes of the career offender guideline.

Notwithstanding Spencer's arguments to the contrary, the district court properly classified Spencer as a career offender based in part on his prior state conviction for felony child abuse under Fla. Stat. § 827.03(1)(b). He, therefore, is not entitled to relief even if this Court determines that his

21

challenge to his classification as a career offender is cognizable on collateral review.

Congress directed the United States Sentencing Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for certain recidivists. 28 U.S.C. § 994(h). The Commission implemented this directive through the career offender guideline. *United States v. LaBonte*, 520 U.S. 751, 753-54, 117 S. Ct. 1673, 1675 (1997); USSG §4B1.1, comment. (backg'd). The guideline specifies an enhanced offense level and criminal history category for a defendant who has been convicted of a felony that is either a "crime of violence" or a "controlled substance offense" and has at least two prior felony convictions for either a "crime of violence" or a "controlled substance offense." USSG §4B1.1(a) and (b).

In relevant part, the career offender guideline defines a "crime of violence" to include a crime that "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[4] USSG

---

[4]We do not suggest in this appeal that the Florida felony child abuse offense meets the requirements of the "elements clause" of the career offender guideline (USSG §4B1.2(a)(1)).

§4B1.2(a)(2).  The Supreme Court has described the "otherwise," or residual,

clause as "broad."  *James v. United States*, 550 U.S. 192, 200, 127 S. Ct. 1586,

1593 (2007).  To satisfy it, an intentional offense must create a serious

potential risk of physical injury to another that is similar in degree to the risks

posed by the listed offenses.  *Sykes v. United States*, 131 S. Ct. 2267, 2275–76

(2011); *accord United States v. Schneider*, No. 10-15863, 2012 WL 1868645 *5

(11th Cir. May 24, 2012) (to be published).

Retreating from *Begay*'s "purposeful, violent, and aggressive" language

for intentional crimes, the Supreme Court explained in *Sykes* that it had used

the "purposeful, violent, and aggressive" inquiry in *Begay* because *Begay*

involved "a crime akin to strict liability, negligence, and recklessness crimes."

*Sykes*, 131 S. Ct. at 2275–76.  *Sykes*, however, involved an intentional

crime—knowingly or intentionally fleeing in a vehicle from a law enforcement

officer—for which the "purposeful, violent and aggressive inquiry" was

"redundant," and the Court concluded that "risk level provided a better

categorical standard than the purposeful, violent, and aggressive standard it

had articulated in *Begay*." *United States v. Chitwood*, 676 F.3d 971, 978 (11th

Cir. 2012).  Post-*Sykes*, the "purposeful, violent, and aggressive" analysis is

23

useful only when dealing with strict liability, negligence, or recklessness crimes. *Chitwood*, 676 F.3d at 978–79; *accord Schneider*, 2012 WL 1868645 at *5, *8. "Offenses that are not strict liability, negligence, or recklessness crimes qualify as crimes of violence under [section] 4B1.2(a)(2)'s residual clause if they categorically pose a serious potential risk of physical injury that is similar to the risk posed by one of the enumerated crimes." *Schneider*, 2012 WL 1868645 at *8; *Chitwood*, 676 F.3d at 978–79.

In determining whether an offense is a "crime of violence," the Supreme Court has directed courts to apply the "categorical approach," which "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 2160 (1990). The Florida statute under which Spencer was convicted in 2004 provided that a person who commited "[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child" commits child abuse, a third degree felony. Fla. Stat. § 827.03(1)(b). To the extent that the inclusion of "mental injury" might create an ambiguity in the statute, *i.e.*, the statute "contains statutory phrases that cover several different generic crimes," some that qualify as predicate felonies and some that do not, the modified categorical approach permits the court to look at the facts

24

underlying the conviction, *see Johnson v. United States*, 130 S. Ct. 1265, 1273

(2010); *accord United States v. Llanos-Agostadero*, 486 F.3d 1194, 1196-97 (11th

Cir. 2007), but only to "determine which statutory phrase was the basis for the

conviction" and only by examining the prior charging document, plea

agreement, plea colloquy, or some comparable judicial record of this

information, *Johnson*, 130 S. Ct. at 1273.

    As already established in Spencer's direct proceedings, he committed

felony child abuse by engaging in sexual intercourse with a 14-year-old female

victim and his action reasonably could have caused physical injury to that

child.  *See* Crim. Doc. 49 at 8-9; PSR ¶ 32; *see also* Crim. Doc. 55 (*United States*

*v. Spencer*, 271 F. App'x  977, 978 (11th Cir. 2008) (explaining that district

court  may "base its factual findings on undisputed statements in the PSI")).

In light of Spencer's admissions during his state plea colloquy and his failure

to challenge relevant facts in his federal PSR, any ambiguity was resolved.  *See*

Crim. Doc. 55 (*Spencer*, 271 F. App'x  at 978 (holding in Spencer's direct

appeal that his conduct involved "a serious potential risk of physical injury to

another")).

    This Court's holding in Spencer's direct appeal—that his Florida felony

child abuse offense presented "a serious potential risk of physical injury to

another"—remains in effect  notwithstanding that it predated *Begay*.  *See United States v. Archer*, 531 F.3d 1347, 1350 (11th Cir. 2008) ("*Begay* has not affected the analysis of that portion of the definition of a crime of violence.").[5]  Accordingly, the only question this Court must decide is whether the serious potential risk of physical injury is similar in degree to the risks posed by the enumerated offenses, *see Sykes*, 131 S. Ct. at 2275–76; *Chitwood*, 676 F.3d at 979, which it is.  Indeed, the risk is greater.

This Court determined in *Chitwood* that the Georgia crime of false imprisonment creates a risk similar to that created by burglary of a dwelling because of the *potential* for confrontation leading to physical injury.  676 F.3d at 980; *see United States v. McGill*, 450 F.3d 1276, 1281 (11th Cir. 2006) (residual clause concerns "the potential *risk* of physical injury rather than the actual *use* of force against another") (emphasis in original); *see also Sykes*, 131 S.

-----

[5] *Spencer* relied, in part, on *United States v. Ivory*, 475 F.3d 1232 (11th Cir. 2007) (examining rape statute under elements clause of "crime of violence"), which since has been abrogated by *United States v. Owens*, 672 F.3d 966 (11th Cir. 2012).  *Owens*, however, involved a rape statute that was the equivalent of statutory rape and, therefore, a strict liability crime.  672 F.3d at 972.  Because a strict liability crime still must meet the "violent, aggressive, and purposeful" *Begay* test, and *Owens* determined that statutory rape does not meet that test, it held that the rape offense at issue was not a "violent felony" under the ACCA. *Id.*  Spencer's offense of conviction, however, was felony child abuse, which is an intentional crime, as discussed above.  *Owens*, therefore, does not affect *Spencer*.

Ct. at 2273 ("Even if the criminal attempting to elude capture drives without going at full speed or going the wrong way, he creates *the possibility* that police will . . . exceed or almost match his speed or use force to bring him within their custody. A perpetrator's indifference to these collateral consequences has violent-even lethal-potential for others.") (emphasis added).

More than simply creating a *potential* for physical injury, the Florida crime of child abuse requires an "intentional act that could *reasonably be expected* to result in physical . . . injury." Fla. Stat. § 827.03(1)(b) (emphasis added). Because the risk level of "reasonable [] expectat[ion]" of physical injury is higher in degree than a "potential" for physical injury, the crime of felony child abuse under section 827.03(1)(b) qualifies as a "crime of violence."[6] *See Chitwood*, 676 F.3d at 978–79 (it is the "levels of risk" that divide qualifying intentional crimes under the residual clause from those that do not); *see also United States v. Wilson*, 568 F.3d 670, 674 (8th Cir. 2009) (Missouri child abuse statute, which proscribes inflicting cruel and inhuman punishment upon a child, constituted "violent felony" under earlier *Begay*

_____

[6]Even if the closer analog is extortion (whether under the modern-day expansion of the crime or the common law definition), the comparable degree of risk would be even less than the degree comparable to burglary. *See James*, 550 U.S. at 207–08, 127 S. Ct. 1597; *id.* at 223 n.4, 127 S. Ct. at 1606 n.4 (Scalia, J., dissenting).

standard because it "ordinarily poses a serious potential risk of physical injury and typically involves purposeful, violent and aggressive conduct").

Spencer nonetheless suggests that this Court should examine his *conduct* in determining whether his crime was "purposeful, violent, and aggressive." *See* Spencer's brief at 38–39 (citing *Begay*).  An examination of a particular defendant's conduct, however, is appropriate under the modified categorical approach only when an offense may be committed in more than one way and only to determine which statutory phrase was the basis for the defendant's conviction. *Johnson*, 130 S. Ct. at 1273.  Otherwise, courts must consider the offense of conviction as defined by the law "and not in terms of how an individual offender might have committed it on a particular occasion." *See Begay*, 553 U.S. at 141, 128 S. Ct. at 1584; *James*, 550 U.S. at 208-09, 127 S. Ct. at 1597; *Spencer*, 271 F. App'x  at 978.  As discussed above, an examination of Spencer's conduct establishes that he committed his felony child abuse offense by doing an intentional act that reasonably could be expected to result in physical injury to a child.  Therefore, in determining whether Spencer's felony child abuse offense constitutes a crime of violence, this Court must examine the statutory language of Fla. Stat. § 827.03(1)(b) rather than his particular conduct when committing the offense.

28

Moreover, as discussed above, the "purposeful, violent, and aggressive conduct" test set forth in *Begay* does not apply to intentional crimes like the crime at issue in this case. *Chitwood*, 676 F.3d at 978–79 (explaining that "purposeful, violent, and aggressive" test applies only to strict liability, negligence, or recklessness crimes). Child abuse under Florida law is an intentional crime; indeed, the statute requires an "intentional act." Fla. Stat. § 827.03(1)(b).

Therefore, Spencer has not carried his burden on collateral review to show that his prior conviction for felony child abuse no longer is a "crime of violence." Under these circumstance, the district court correctly determined that he is not entitled to relief under section 2255.

29

# Conclusion

The United States requests that this Court affirm the order of the district court.

Respectfully submitted,

Robert E. O'Neill
United States Attorney

Linda Julin McNamara
Assistant United States Attorney
Deputy Chief, Appellate Division

By:   *s/ Peggy Morris Ronca*
Assistant United States Attorney
Appellate Division
Florida Bar No. 348570
501 W. Church St., Ste. 300
Orlando, Florida  32805
(407) 648-7500
peggy.ronca@usdoj.gov

June 1, 2012

30

## Certificate of Compliance with Type-Volume Limitation

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6293 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4.

## Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was

sent by CM/ECF on June 1, 2012  to:

AGNE KRUTULES

*Counsel for Kevin Spencer*

*s/ Peggy Morris Ronca*

PEGGY MORRIS RONCA
Assistant United States Attorney
