## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### NO. 10-10676-FF

---

KEVIN SPENCER,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

---

On Appeal from the United States District Court
for the Middle District of Florida

---

### REPLY BRIEF OF KEVIN SPENCER

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Counsel for Kevin Spencer

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### NO. 10-10676-FF

---

KEVIN SPENCER,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

---

On Appeal from the United States District Court
for the Middle District of Florida

---

### REPLY BRIEF OF KEVIN SPENCER

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Counsel for Kevin Spencer

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                         i

TABLE OF CITATIONS                                                        ii

ARGUMENT AND CITATIONS OF AUTHORITY                                       1

    I.    Spencer's Challenge to a Career Offender Sentence is      1
         Cognizable under 28 U.S.C. § 2255

    II.   Spencer Was Improperly Classified as a Career Offender    10

CONCLUSION                                                               20-21

CERTIFICATE OF COMPLIANCE                                                 22

CERTIFICATE OF SERVICE                                                    23

i

# TABLE OF CITATIONS

## Cases

*Begay v. United States,* 553 U.S. 137, 128 S.Ct. 1582 (2008)                10-11, 16, 18-19

*Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298 (1974)                5

*Gilbert v. United States,* 640 F.3d 1293 (11th Cir. 2011)                1, 6, 7, 10

*Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227 (1980)                8

*Johnson v. United States,* 130 S.Ct. 1265 (2010)                12, 15

*Narvaez v. United States,* 2011 WL 6382106 (7th Cir. 2011)                5, 8

*Raford v. State,* 828 So.2d 1012 (Fla. 2002)                19, 20

*Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254 (2005)                12 n.1

*Sykes v. United States*, 131 S.Ct. 2267 (2011)                11, 19

*Unites States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235 (1979)                1-5

*United States v. Archer,* 531 F.3d 1347 (11th Cir. 2008)                16

*United States v. Chitwood,* 676 F.3d 971 (11th Cir. 2012)                10-13, 19

*United States v. Ivory,* 475 F.3d 1232 (11th Cir. 2007), *vacated by*                16
*United States v. Owens,* 672 F.3d 966 (11th Cir. 2012)

*United States v. Harris*, 586 F.3d 1283 (11th Cir. 2009)                7, 18

*United States v. Kerley,* 838 F.2d 932 (7th Cir. 1988)                9

*United States v. Levy,* 865 F.2d 551 (3d Cir. 1989)(en banc)                9

*United States v. Mansur-Ramos,* 212 F.3d 835 (3d Cir. 2000)                9

*United States v. Owens*, 672 F.3d 966 (11th Cir. 2012)    16, 18

*United States v. Wilson,* 568 F.3d 670 (8th Cir. 2009)    13, 18

**Statutes**

28 U.S.C. § 2255    1-2, 5-6, 20

Fla. Stat. § 800.04(4)    18

Fla. Stat. § 827.03    11, 15

Fla. Stat. § 827.03(1)    12, 18

Fla. Stat. § 827.03(1)(a)    11, 14

Fla. Stat. § 827.03(1)(b)    11, 14-15, 17

Fla. Stat. § 827.03(1)(c)    11, 14

Fla. Stat. § 827.03(2)    13, 18

Fla. Stat. § 827.03(2)(b)    13

Fla. Stat. § 827.03(2)(c)    13

**Rules**

Fed. R. App. P. 32(a)(7)(B)    22

Fed. R. App. P. 32(a)(7)(B)(iii)    22

**United States Sentencing Guidelines**

U.S.S.G. § 4B1.1    7

U.S.S.G. §4B1.2(a)(1)                                                                          11

U.S.S.G. § 4B1.2(a)(2)                                                                        17

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. Spencer's Challenge to a Career Offender Sentence is Cognizable under 28 U.S.C. § 2255

The Government argues that the extra punishment of nearly seven years that the district court erroneously imposed does not constitute a miscarriage of justice because: (1) Mr. Spencer was sentenced within the statutory limits; and (2) the sentencing court may re-impose the same (or even a higher) sentence on remand. *See* Government's brief (Gov.'s brief) at 16. The Government misinterprets *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235 (1979) and *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc). *See* Gov.'s Brief at 13-20.

*Addonizio* is inapposite to the situation here. In *Addonizio*, three prisoners claimed that a post-sentencing change in the United States Parole Commission's policies prolonged their actual imprisonment beyond the period the sentencing judge had anticipated. *See id.*, 442 U.S. at 179, 99 S.Ct. at 2237. The Supreme Court held that such claim could not be brought under 28 U.S.C. § 2255. *Id.*

The district court sentenced Addonizio to 10 years' imprisonment because of the seriousness of his offense. *Id.*, 442 U.S. at 180, 99 S.Ct. at 2238. At the same time, however, the sentencing judge had hoped that Addonizio would be released after serving one-third of his sentence, albeit he did not disclose these expectations at sentencing. *Id.*, 442 U.S. at 181-82, 99 S.Ct. at 2238. The district court did not

1

contemplate that the Parole Commission might rely on the seriousness of the offense for refusing to parole Addonizio. *Id.,* 442 U.S. at 181-82, 99 S.Ct. at 2238. The Parole Commission changed its policies while Addonizio was serving his sentence, and the gravity of the offense became a significant factor whether to parole a prisoner. *Id.,* 442 U.S. at 182, 99 S.Ct. at 2238. Consequently, Addonizio was denied parole because of the seriousness of his crimes. *Id.,* 442 U.S. at 182, 99 S.Ct. at 2239. The district court granted Addonizio's § 2255 motion and reduced his sentence to the time served. *Id.,* 442 U.S. at 183, 99 S.Ct. at 2239. It reasoned that when sentencing Addonizio it had anticipated he would serve about four years of his ten-year sentence but that "'sentencing expectation' was frustrated by the Parole Commission's subsequent adoption of new standards and procedures." *Id.* The Court of Appeals affirmed. *Id.*

The Supreme Court disagreed. *Id.,* 442 U.S. at 186, 99 S.Ct. at 2241. It held that the sentencing judge's incorrect assumptions about the future course of parole proceedings did not meet any of the established standards justifying collateral attack. *Id.* The Supreme Court concluded that: (1) the claim did not involve a constitutional violation; (2) the sentence imposed was within the statutory limits; and (3) the proceeding was not infected with any error of fact or law of the "fundamental" character rendering the entire proceeding irregular and invalid. *Id.,* 442 U.S. at 186, 99 S.Ct. at 2241. The Court explained that although the change in

2

the Parole Commission's policies affected the way in which the court's judgment and sentence would be performed, it did not affect the lawfulness of the judgment itself. *Id.*, 442 U.S. at 187, 99 S.Ct. at 2241. It further held that the sentencing court's decision was not based on "misinformation of constitutional magnitude," and there was "no basis for enlarging the grounds for collateral attack to include claims based not on any *objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge.*" *Id.* (emphasis added). The Court also found it significant that at sentencing the district court emphasized the severity of Addonizio's offense, thus, the sentencing record was consistent with the Parole Commission scrutinizing the gravity of the offense. *Id.*, 442 U.S. at 187-88, 99 S.Ct. at 2242. The Court noted that as "a practical matter, the subjective intent of the sentencing judge would provide a questionable basis for testing the validity of his judgment." *Id.*, 442 U.S. at 187, 99 S.Ct. at 2241-42. Finally, the Court concluded that it was the Parole Commission's decision, not the court's, as to when a lawfully sentenced defendant should be released. *Id.*, 442 U.S. at 188, 99 S.Ct. at 2242.

The Government claims that the sentencing error is not cognizable here because Mr. Spencer, like Addonizio, was sentenced within the statutory limits. *See* Gov.'s brief at 13-14, 16. The Government misses the mark, as *Addonizio* is clearly distinguishable from this case. First, in addition to Addonizio's sentence

3

being within the statutory maximum, there was no "error of fact or law" rendering the sentencing proceeding "irregular and invalid." *Addonizio*, 442 U.S. at 186, 99 S.Ct. at 2241. Here, conversely, the district court made an "objectively ascertainable error" by finding that Spencer was a career offender, and based on that finding sentencing him to the extra years of imprisonment. *Cf. id.*, 442 U.S. at 187, 99 S.Ct. at 2241 (holding that "claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge" cannot be brought under section 2255). Thus, just because the sentence imposed is within the statutory maximum is not outcome determinative.

Second, the change in the Parole Commission's guidelines in *Addonizio* only "affected the *way* in which the court's judgment and sentence would be *performed*" but not the validity of the judgment. *Id.*, 442 U.S. at 187, 99 S.Ct. at 2241 (emphasis added). Under then existing law, the sentencing courts had no say when a particular defendant should be paroled; that authority rested within the Parole Commission's discretion. *Id.*, 442 U.S. at 188-89, 99 S.Ct. at 2242. Here, however, the post-conviction change in the law rendered the district court's judgment and sentence "irregular and invalid." *Cf. id.*, 442 U.S. at 186, 99 S.Ct. at 2241. Spencer's sentencing hearing focused on only one issue - whether Spencer was a career offender. *See generally* Doc. 49; *see also id.* at 5 (the only objection is to the "scoring of Mr. Spencer as a career offender"). The district court's branding

4

Spencer as a career offender was based on "misinformation of constitutional magnitude;" the misinformation that it more than doubled his guideline sentence. *Addonizio,* 442 U.S. at 187, 99 S.Ct. at 2241. "There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and presents exceptional circumstances' that justify collateral relief under 2255." *Davis v. United States*, 417 U.S. 333, 346-47, 94 S.Ct. 2298 (1974). Forcing Mr. Spencer to spend nearly seven additional years in prison because of an error of law is a miscarriage of justice. It is a miscarriage of justice of constitutional proportion. *See Narvaez v. United States*, 674 F.3d 621, 630 (7th Cir. 2011) (such "claim goes to the fundamental legality of his sentence and asserts an error that constitutes a miscarriage of justice.").

The Government, however, claims that a "12.6-year sentence, for a defendant with an adult criminal history beginning at age 17 and *nine* criminal history points by the age of 21 *certainly* did not constitute a complete miscarriage of justice." Gov.'s brief at 16 (emphasis added). It claims that Mr. Spencer was lucky to receive a sentence of 151 months, the lowest sentence within his guidelines range, because the statutory maximum was 240 months imprisonment. *Id.* The Government's argument is circular, self-serving, and fails for the following reasons. Had the guidelines been calculated correctly, Mr. Spencer would have had seven, and not nine criminal history points. *Compare* PSR ¶ 37 *with* PSR ¶ 39.

5

And his guideline range would have been 70-87 months of imprisonment, with the lowest guideline sentence of 70, not 151 months. *See id.* ¶ 39. The Government's assertion that a 12.6-year sentence for selling $20 worth of crack cocaine to an informant is "certainly" just and deserved is simply callous. *See* Gov.'s brief at 16.

In support of its "statutory maximum rule," *i.e.*, that a sentencing claim is cognizable on collateral review only when a sentence exceeds the statutory maximum, the Government also relies on *Gilbert*, 640 F.3d 1293. Gov.'s brief at 14-16, 18. But the *Gilbert* decision does not support this proposition. The *Gilbert* court expressly declined to "decide whether a claim that the sentencing guidelines were misapplied may be brought in a first time § 2255 motion." *Id.* at 1324. In fact, the Court implied that if confronted with the question whether a sentencing claim is cognizable in a first 2255 motion, where the sentence was imposed within the statutory limits, it would decide in the affirmative. *Id.* at 1312 ("We believe that for claims of sentence error, at least where *the statutory maximum was not exceeded*, the point where finality holds its own against the error correction is reached not later than *the end of the first round of collateral review*.") (Emphasis added). Thus, *Gilbert* does not support the Government's argument that the miscarriage of justice standard is not met if the sentence is within the statutory maximum.

6

To further advance its "statutory maximum rule," the Government attempts to distinguish the career offender from the armed career criminal cases. *See* Gov.'s brief at 15-16. According to the Government, "the fundamental concerns are not implicated by the guidelines sentences because," unlike ACCA sentences, they are within the statutory limits. *Id*. at 16. This distinction is intellectually dishonest and elevates form over substance. The fact that an ACCA sentence entails a finding that increases the statutory penalty is not materially different from the same finding being made to enhance a guidelines sentence. Both findings produce the same result - an enhanced sentence for the same reason, *i.e*, prior convictions, in a criminal case. The court's role in both instances is the same – that of the fact finder concerning the existence of qualifying prior convictions. The harm of the error to the defendants is also the same – an extra undeserved deprivation of liberty. Moreover, this Court has consistently held that the definition of "violent felony" in the ACCA is "virtually identical" to "crime of violence" in § 4B1.1, "so that decisions about one apply to the other." *Gilbert*, 640 F.3d at 1309 n.16, citing *United States v. Harris,* 586 F.3d 1283, 1285 (11th Cir. 2009). In conclusion, there is no meaningful difference between the two types of cases. The standard that ought to be applied here is the harmless-error doctrine, not the rigid "statutory-maximum rule." And the error here was anything but harmless. There are no express statements in the record indicating that Mr. Spencer would have received

the same sentence absent the career offender enhancement. *See generally* Crim. Doc. 49. To the contrary, the district court unambiguously pronounced that but for a career offender designation, Mr. Spencer would have served half of the sentence that was imposed in the end. *See id.* at 20 ("had you not had that career – career offender enhancement, instead of looking at a level 32, you'd have been looking at a level 23. It's in essence, half the sentence. . .). The court's sense of injustice at this result is palpable even from a cold transcript.

The Government's claim that the district court "might" re-impose the same sentence (Gov.'s brief at 18-20) is precisely the type of "frail conjecture" that the Supreme Court criticized in *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227 (1980). The Court warned that "[s]uch an arbitrary disregard of the petitioner's right to liberty is a denial of due process of law." *Id.* While it is true that Mr. Spencer does not have an absolute right to a lower sentence, he has an absolute right not to have extra punishment imposed on the basis of an inapplicable enhancement. *See Narvaez*, 674 F.3d at 630 (the petitioner "does have an absolute right not to stand before the court as a career offender when the law does not impose that label on him.").

The Government brushes aside Mr. Spencer's argument that the district court's error violated his due process rights. *See* Gov.'s brief at 21. According to the Government, the information in Mr. Spencer's PSR "concerning his criminal

history was accurate," and at most, the district court erred in interpreting and applying the career offender guideline. *Id.* The Government is wrong and misses the point. First, the information in the PSR concerning Mr. Spencer's criminal history *was not correct*. The PSR overstated the seriousness of the criminal history by scoring it at 9 rather than 7 because it improperly branded Mr. Spencer as a career offender. *See* PSR ¶ 39. Second, sentences based on factual or legal misunderstandings involving the guidelines can also rise to the level of due process violations. *See, e.g., United States v. Mansur-Ramos*, 348 F.3d 29, 32 (1st Cir. 2003); *United States v. McDavid*, 41 F.3d 841, 843-44 (2d Cir. 1995); *United States v. Jones*, 982 F.2d 380, 385 (9th Cir. 1993). Indeed, "it is beyond dispute that a sentencing calculation may violate the due process clause of the Fifth Amendment if there is a possibility that the sentence imposed may have been based on legal and/or factual error." *United States v. Mannino*, 212 F.3d 835, 846 (3d Cir. 2000), citing *United States v. Levy*, 865 F.2d 551, 560 (3d Cir. 1989) (en banc); *see also United States v. Kerley*, 838 F.2d 932, 940-41 (7th Cir. 1988) ("Although the sentence was lawful in the sense of being within the limits set in the statute, and although the judge's discretion to impose a lawful sentence is plenary in the absence of irregularities, a sentence predicated on misinformation cannot stand.") (Internal citations omitted). In sum, these cases support the argument that

the sentencing court's misunderstanding concerning the career-offender enhancement violated Mr. Spencer's due process rights.

This case involves more than a run-of-the mill claim that the district court misapplied the sentencing guidelines. An extra punishment of nearly seven years imposed because of the error of law is not merely a technical violation. Mr. Spencer has diligently pressed his correct interpretation of the law at every available opportunity. *Begay* was decided only two weeks after this Court affirmed Mr. Spencer's sentence. Crim. Doc. 55. To deny him relief at this stage from a "fundamentally defective" sentence would constitute "noting more than a judicial 'gotcha.'" *Gilbert*, 640 F.3d at 1336. (Hill, J., dissenting).

## II. Spencer was Improperly Classified as a Career Offender

A conviction under Florida's simple child abuse statute does not qualify as a crime of violence under both categorical and modified categorical approaches.

"Offenses that are not strict liability, negligence, or recklessness crimes qualify as crimes of violence under U.S.S.G. § 4B1.2(a)(2)'s residual clause if they categorically pose a serious potential risk of physical injury that is similar to the risks posed by one of the enumerated crimes." *United States v. Chitwood*, 676 F.3d 971, 979 (11th Cir. 2012). This clause is not intended as a "catch-all" provision. Instead, "the provision's listed examples - burglary, arson, extortion, or crimes involving the use of explosives - illustrate the kinds of crimes that fall within the

10

statute's scope. Their presence indicates that the [guidelines cover] only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142, 128 S.Ct. 1581 (emphasis added).

Courts generally use a categorical approach to determine whether an offense is a violent felony. *See Sykes v. United States*, 131 S.Ct. 2267, 2272 (2011). Under the categorical approach, the court considers "whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *Id.* 131 S.Ct. at 2272. (Internal quotations omitted) (emphasis in original). Thus, "if the elements of an offense are such that *any* conviction for violating that statute will fall within the scope of the residual clause," the offense is "categorically" a crime of violence. *Chitwood*, 676 F.3d at 971 (emphasis added).

The plain reading of Fla. Stat. § 827.03 indicates that the statute can be violated without inflicting *any physical injury*, a requirement mandated by U.S.S.G. § 4B1.2(a)(1). *See* Fla. Stat. § 827.03(1)(a)-(c) (simple child abuse may be committed by inflicting mental injury); *see also* U.S.S.G. § 4B1.2(a)(1) (a crime of violence "involves conduct that presents a serious potential risk of physical injury to another."). Thus, simple child abuse is not a crime of violence under the categorical approach, and the Government seems to concede this point. *See* Gov.'s brief at 24-25.

11

Even under the modified categorical approach, Mr. Spencer's simple child abuse conviction is not a crime of violence. Modified categorical approach can be applied "where some, but not all, of the violations of a particular statute will involve the *requisite* violence." *Chitwood*, 676 F.3d at 971 (emphasis added). Stated another way, courts apply the modified categorical approach "[w]hen the law under which a defendant has been convicted contains different statutory phrases—some of which qualify as 'crimes of violence' and some of which do not." *Johnson v. United States*, 130 S.Ct. 1265, 1273 (2010). "Different statutory phrases" means different statutory elements or ways of violating the statute. *Chitwood*, 676 F.3d at 971. The modified categorical approach "permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson*, 130 S.Ct. at 1273.

There is no confusion to which section of the statute Mr. Spencer pleaded guilty to. *See* Initial Brief, Appendix 3 at 9. The *Shepard*[1] documents reveal that he was convicted of a third degree felony of child abuse, a violation of Fla. Stat.

---

[1] *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254 (2005) (providing guidance about what material sentencing courts may use to determine the nature of a defendant's prior felony convictions).

§ 827.03(1). *See* Initial brief, Appendix 2 at 1; *see also* PSR ¶ 32. In relevant part,

Fla. Stat. § 827.03(1) provides:

> (1) "Child abuse" means:
> (a) Intentional infliction of physical or mental injury upon a child;
> (b) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or
> (c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.
> A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

The second part of the statute stands in stark contrast:

> (2) "Aggravated child abuse" occurs when a person:
> (a) Commits *aggravated battery* on a child;
> (b) *Willfully tortures, maliciously punishes, or willfully and unlawfully cages a child*; or
> (c) *Knowingly or willfully abuses* a child and in so doing causes *great bodily harm, permanent disability, or permanent disfigurement* to the child.
> A person who commits aggravated child abuse commits a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 827.03(2) (emphasis added). The plain reading of the statute suggests

that aggravated child abuse and not simple child abuse is comparable to and

involves "*as much* physical injury as one of the enumerated offenses." *Chitwood*,

676 F.3d at 971 (emphasis added). The Government relies on *United States v.*

*Wilson*, 568 F.3d 670 (8th Cir. 2009) to illustrate that the risk of serious physical

injury requirement is present in the instant case. *See* Gov.'s brief at 27. *Wilson*,

13

however, involved child abuse conviction for "*knowingly inflict[ing] cruel and inhuman punishment* upon a child. . ." 568 F.3d at 673. This is precisely the type of conduct that Fla. Stat. § 827.03(2) criminalizes. *See* Fla. Stat. § 827.03(2)(b)-(c). The Government does not cite to any cases, as it cannot, to support its argument that simple child abuse is a crime of violence. *See generally* Gov.'s brief. In sum, the analysis under the modified categorical approach should stop here, since it is uncontested that Mr. Spencer was convicted of simple and not aggravated child abuse.

The Government, however, insists that the inclusion of "mental injury" in Fla. Stat. § 827.03(1)(b) creates "an ambiguity," and presses for further application of the modified categorical approach. *See* Gov.'s brief at 24. It suggests that Mr. Spencer's "direct proceedings" established that he was guilty of "an intentional act that could reasonably be expected to result in physical injury to a child." Gov.'s brief at 25, 28. The Government also implies that Mr. Spencer failed to object to the PSR's finding that he engaged in sexual intercourse with the victim. *See* Gov.'s brief at 25.

The Government is wrong, and the record belies its contentions. First, the only fact that Mr. Spencer's "direct proceedings" established is that he plead guilty to Fla. Stat. § 827.03(1)(b), as opposed to (a) or (c). At the plea hearing the prosecutor only repeated the statutory provision reflected in Fla. Stat.

14

§ 827.03(1)(b): "Well, I need to lay the child abuse. All right. As to the same defendant . . . he did engage in *sexual activity* with a minor and that action could reasonably cause *physical or mental injury* to that child, contrary to the provisions of 827.03." *See* Spencer's Initial brief, Appendix 3 at 9 (emphasis added); *see also* Fla. Stat. § 827.03(1)(b). In addition, at the federal sentencing, the Government expressly acknowledged that the state prosecutor did not specify what type of injury Mr. Spencer's actions could have caused. *See* Doc. 49 at 11 ("the state prosecutor claimed in a recitation of facts – she didn't state that [sic] was – that he could have cause mental injury, physical or mental injury. . ."). In conclusion, there are no "findings of fact and conclusions of law from a bench," "which statutory phrase [*physical or mental injury*] was the basis for the conviction." *See Johnson*, 130 S.Ct. at 1273.

Second, Mr. Spencer objected to the career offender classification in the PSR (*see* Addendum to PSR) and at sentencing raised objections to the factual accuracy of the PSR.[2] *See* Doc. 49 at 5 ("THE COURT: And when you say objections to the factual accuracy, are these the objections that you have noted with respect to paragraph – I think it's Paragraph 25?"). Further, throughout the sentencing, Mr. Spencer vehemently denied that his conduct was anything more

---

[2] It is not clear whether this Court construed Mr. Spencer's actions as having "sexual intercourse" or engaging in "sexual activity" on direct appeal. *See* Crim. Doc. 55 at 5-7.

than the "the least culpable act satisfying the count of conviction." *Id*. at 6, 13. Thus, the Government's argument that Mr. Spencer admitted to having sexual intercourse, an act that reasonably could have cause physical injury, has no support in the record.

In addition, the Government claims that this Court's finding on direct appeal that Mr. Spencer's conduct involved "a serious potential risk of physical injury" should be left undisturbed. Gov.'s brief at 25-26. This Court, relying on now abrogated *Ivory* case involving statutory rape, by default, found that Mr. Spencer's offense involved a serious potential risk of physical injury to another:

> We have emphasized that sexual offenses against minors 'always present a substantial risk that physical force will be used to ensure a child's compliance with an adult's sexual demands.' *Ivory*, 475 F.3d at 1238 (holding that statutory rape, a "nonconsensual act of sexual penetration," inherently involves some physical force and is a crime of violence).[3]

Crim. Doc. 55 at 6. This Court has recently overruled *Ivory*. *See United States v. Owens*, 672 F.3d 966, 971 (11th Cir. 2012). In *Owens*, this Court has held that convictions for second degree rape and second degree sodomy under Alabama law were not violent felonies under the residual clause. *Id.* at 972. Yet, the Government argues that *Owens* has no application here. *See* Gov.'s brief at 26 n.5.

---

[3] *United States v. Ivory*, 475 F.3d 1232 (11th Cir. 2007).

While it is true that *Begay*[4] has not affected the analysis of what crimes present "a serious potential risk of injury to another," *United States v. Archer*, 531 F.3d 1347, 1350 (11th Cir. 2008), the question whether simple child abuse presents such a risk should be re-evaluated *on this appeal* for the following reasons. First, the issue that this Court has certified is whether *the district court* erroneously determined than Mr. Spencer was a career offender, not whether this Court's holding on the direct appeal was correct. *See* Civ. Doc. 22. Second, the record reflects that the district court's finding that simple child abuse was a crime of violence was premised on strict liability:

> In this particular instance the victim was – the child was 14 years old. She *can't consent* to having sexual relations with somebody who is an adult, with somebody who is 18 years old. So I think it is appropriate to consider this a crime of violence. I think it comes within 827.03(b), an intentional act that could reasonably be expected to result in *physical or mental injury to a child*.

Crim. Doc. 49 at 13-14 (emphasis added). It is obvious that the court's conclusion was driven by the victim's inability to consent, not because the conduct involved "a serious potential risk of physical injury to another," as the residual clause demands. *See* U.S.S.G. § 4B1.2(a)(2); *see also* Crim. Doc. 59 at 4-5 ("victim's consent and initiation of the sexual contact would be irrelevant. There would have been no difference in the outcome of the case if counsel had called the child to testify as to her consent, as *consent had no bearing on the prior state conviction*.")

---

[4] *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1582 (2008).

17

(Emphasis added). The district court's finding does not even squarely address what type of injury, if any, was inflicted, and whether the offense constituted a crime of violence under the residual clause. There is no doubt that the district court evaluated Mr. Spencer's child abuse conviction through the strict liability lens, and its findings are in conflict with *Begay*. This is not a typical child abuse case. Mr. Spencer pleaded guilty to a lesser offense of child abuse from the original charge of lewd and lascivious assault, a violation of Fla. Stat. § 800.04(4). *See* Initial brief, Appendix 1. Thus, as argued in the Initial brief, the recent decisions from this court addressing the identical criminal conduct cannot be ignored. *See* Initial Brief at 36-39; *see also Owens,* 672 F.3d 966 (second degree rape is not a crime of violence); *see also United States v. Harris*, 608 F.3d 1222, 1233 (11th Cir. 2010) (sexual battery of a child under age of sixteen is not a crime of violence).

Finally, assuming *arguendo* but without conceding that child abuse poses a serious potential risk of physical injury, that risk is not "roughly similar, in kind as well as in degree of risk posed" by burglary, arson, extortion, and crimes involving the use of explosives. *Begay*, 553 U.S. at 143, 128 S.Ct. at 1585. The Government avoids discussing the purpose behind Florida's simple child abuse. It is also silent on how the crime of simple child abuse is usually committed. *See generally* Gov.'s brief. The Government, instead, relies on *Wilson*, where the Eight Circuit Court held inflicting cruel and inhuman punishment upon a child constituted a violent

18

felony under the residual clause. *Wilson*, 568 F.3d at 674. However, as argued above, *Wilson* is clearly distinguishable because it involved conduct identical to the actions criminalized by Fla. Stat. Fla. § 827.03(2) and not 827.03(1).

It seems that the Government forgets the rule spelled out in *Begay* – only crimes that are similar to the enumerated offense, "rather than *every* crime that presents a serious potential risk of physical injury to another" are crimes of violence. *Begay*, 553 U.S. at 142, 128 S.Ct. 1581 (emphasis added). Also, not only the possibility of the physical injury, but also the *seriousness* of the injury must be similar to the injury inflicted by burglary, arson, extortion, or use of explosives. *See Chitwood*, 676 F.3d 971 ("we compare the risk of *serious* physical injury that violations of Georgia's false imprisonment statute pose to that posed by the closest analog among the enumerated offenses...") (emphasis added). The Government completely ignores this requirement. *See generally* Gov.'s brief.

Neither the level of risk of injury nor the seriousness of the injury in simple child abuses cases are similar to those encountered in the enumerated offenses. A typical child abuse case involving physical injury is parental disciplining gone "too far." *Raford v. State*, 828 So.2d 1012, 1020 (Fla. 2002). The enumerated offenses, on another hand, usually involve "the risk of *violent* confrontation between the perpetrator and the . . . victim" or with the police. *Chitwood*, 676 F.3d at 980 (emphasis added); *see also Sykes*, 131 S.Ct. at 2274. In addition, simple child

19

abuse is also distinguishable from the enumerated offenses since parents may "assert as an affirmative defense his or her parental right to administer 'reasonable' or 'nonexcessive' corporal punishment, *i.e.*, a *typical spanking*, in a prosecution for simple child abuse." *Raford*, 828 So.2d at 1020 (emphasis added). No such defense is available for the enumerated offenses. Without a doubt "a typical spanking" does inflict a physical injury, however, not every crime that presents a risk of physical injury is a crime of violence. *Begay*, 553 U.S. at 142, 128 S.Ct. 1581.

Finally, the Supreme Court of Florida has acknowledged that simple child abuse cases present "the difficulty in delineating a precise line between permissible corporal punishment and prohibited child abuse." *Id.* at 1020-21. The purpose behind Florida's simple child abuse statute is to warn "parents and others alike, who quickly turn to corporal punishment as a solution to child discipline problems," and not to brand them as violent felons. *Id.* at 1021. This Court should reject the Government's invitation to classify simple child abuse as a crime of violence.

## CONCLUSION

For the reasons set out in Issue I, Spencer's challenge to the career offender sentence is cognizable in his first § 2255 motion. For the reasons set out in Issue II, Spencer is entitled to relief pursuant to section § 2255. This Court should vacate

Spencer's sentence and remand for resentencing without the career offender enhancement.

This 25th day of June, 2012.

Respectfully submitted,

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Fax: 404.875.8757
krutules@mjplawyers.com

## CERTIFICATE OF COMPLIANCE

Counsel certifies that this Brief of Appellant complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because the brief contains 5500 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Fax: 404.875.8757
krutules@mjplawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Reply Brief of

Appellant via electronic filing to:

Peggy Morris Ronca
Assistant United States Attorney
Appellate Division

This 25th day of June, 2012.

AGNE KRUTULES
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
Telephone: 404.875.2700
Fax: 404.875.8757
krutules@mjplawyers.com