No. 10-10676-FF

IN THE

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT

---

KEVIN SPENCER,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

---

On Appeal from the United States District Court
for the Middle District of Florida

---

**PETITION FOR REHEARING EN BANC**

---

A. LEE BENTLEY III
*Acting United States Attorney*

DAVID P. RHODES
PEGGY M. RONCA
 *Assistant United States Attorneys*
 *Middle District of Florida*

MYTHILI RAMAN
 *Acting Assistant Attorney General*

DENIS J. MCINERNEY
 *Acting Deputy Assistant Attorney General*

MICHAEL A. ROTKER
 *Attorney, Appellate Section*

 *United States Department of Justice*
 *Criminal Division*
 *950 Pennsylvania Avenue, NW, Suite 1264*
 *Washington, D.C. 20530*
 *(202) 514-3308*

No. 10-10676-FF

*Spencer* v. *United States*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1, undersigned counsel for the United States certifies that the following persons and parties have an interest in the outcome of this case:

Bentley III, A. Lee, Acting United States Attorney;

Corsemeier, Arnold B., Assistant United States Attorney;

Covington, Virginia M., United States District Judge;

Krutules, Agne, appellate counsel for Petitioner-Appellant;

McNamara, Linda Julin, Assistant United States Attorney, Deputy Chief, Appellate Division;

O'Neill, Robert, former United States Attorney;

Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

Ronca, Peggy Morris, Assistant United States Attorney;

Rotker, Michael A., Attorney, United States Department of Justice;

Savell, Julie Hackenberry, Assistant United States Attorney; and

Spencer, Kevin, Petitioner-Appellant.

_Michael A. Rotker_

MICHAEL A. ROTKER
 *Attorney*
 *United States Department of Justice*

# RULE 35 STATEMENT OF COUNSEL

Pursuant to Fed. R. App. P. 35 and 11th Cir. R. 35-5(c), I, the undersigned, express the belief, based on a reasoned and studied professional judgment, that the panel decision presents the following question of exceptional importance:

> Whether a misapplication of the advisory career-offender guideline results in a complete miscarriage of justice and thereby states a cognizable claim for collateral relief under 28 U.S.C. § 2255(a).

As the panel acknowledged, its holding – that a misapplication of the advisory career-offender guideline was a complete miscarriage of justice and that a defendant so situated had a cognizable claim for Section 2255 relief – conflicts with "the authoritative decisions of every other United States Court of Appeals that has addressed the issue," Fed. R. App. P. 35(b)(1)(B), *i.e.*, *Hawkins* v. *United States*, 706 F.3d 820 (7th Cir. 2013), and *Sun Bear* v. *United States*, 644 F.3d 700 (8th Cir. 2011) (en banc).  And the reasoning of this decision is in serious tension with *Gilbert* v. *United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc), insofar as it implies that advisory guidelines errors merit successive collateral relief under the savings clause.

*Michael A. Rotker*
_____
MICHAEL A. ROTKER
*Attorney*
*United States Department of Justice*

-i-

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . C1-of-2

RULE 35 STATEMENT OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

COURSE OF PROCEEDINGS AND
DISPOSITION BELOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

REASONS FOR GRANTING THE PETITION . . . . . . . . . . . . . . . . . . . . .  6

I.    THE DECISION IS ERRONEOUS  . . . . . . . . . . . . . . . . . . . . . . . . .  6

II.   THE PANEL'S HOLDING CREATES AN
      INTER-CIRCUIT CONFLICT AND ITS REASONING
      IS IN SERIOUS TENSION WITH *GILBERT*. . . . . . . . . . . . . . . . .  10

III.  THE ISSUE IS OF PROSPECTIVE AND
      RECURRING IMPORTANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

IV.   THIS CASE SQUARELY PRESENTS THE
      COGNIZABILITY ISSUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Pages**

## **Cases**

*Begay* v. *United States*,
553 U.S. 137 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 12, 15

*Brown* v. *Caraway*,
719 F.3d 583 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chambers* v. *United States*,
555 U.S. 122 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Davis* v. *United States*,
417 U.S. 333 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 12

*Descamps* v. *United States*,
133 S. Ct. 2276 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gall* v. *United States*,
552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gilbert* v. *United States*,
640 F.3d 1293 (11th Cir. 2011) (en banc) . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hawkins* v. *United States*,
706 F.3d 820, amended,
724 F.3d 915 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 10, 11

*Hill* v. *United States*,
368 U.S. 424 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Johnson* v. *United States*,
544 U.S. 295 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

**Pages**

*Meirovitz* v. *United States*,
    688 F.3d 369 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Narvaez* v. *United States*,
    674 F.3d 621 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Peugh* v. *United States*,
    133 S. Ct. 2072 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stewart* v. *United States*,
    646 F.3d 856 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Sun Bear* v. *United States*,
    644 F.3d 700 (8th Cir. 2011) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sykes* v. *United States*,
    131 S. Ct. 2267 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States* v. *Addonizio*,
    442 U.S. 178 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*United States* v. *Alexander*,
    609 F.3d 1250 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States* v. *Frady*,
    456 U.S. 152 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States* v. *Pantle*,
    637 F.3d 1172 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States* v. *Spencer*,
    271 F. App'x 977 (11th Cir. 2008) (per curiam) (unpub.) . . . . . . . . . . . . 3

**Pages**

*United States* v. *Vazquez*,
   558 F.3d 1224 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Wofford* v. *Scott*,
   177 F.3d 1236 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## Statutes, Rules and Guidelines

18 U.S.C. § 924(e)(2)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

21 U.S.C. § 841(a)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

21 U.S.C. § 841(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

28 U.S.C. § 994(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

28 U.S.C. § 2255(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S.S.G. § 2B1.1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

U.S.S.G. § 2L1.2(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

U.S.S.G. § 4B1.1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

Fed. R. App. P. 35(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

Fed. R. App. P. 35(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

11th Cir. R. 35-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

IN THE

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT

No. 10-10676-FF

KEVIN SPENCER,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

PETITION FOR REHEARING EN BANC

## PRELIMINARY STATEMENT

The panel held that a sentencing court's erroneous reliance on the career offender guideline when sentencing a defendant under the *advisory* Sentencing Guidelines constituted "a complete miscarriage of justice," and that a defendant so sentenced had a cognizable claim for initial collateral relief under 28 U.S.C. § 2255(a). That ruling is incorrect, conflicts with the decisions of the only two other circuits to consider the issue, and produces tension with existing circuit precedent concerning collateral relief for guidelines errors. The issue is also of significant and recurring importance and is squarely presented in this case. As with another case involving collateral review of guidelines errors, see *Gilbert* v. *United States*, 625 F.3d 716 (11th Cir. 2010) (order granting rehearing en banc),

rehearing by the full Court is warranted.

## STATEMENT OF THE ISSUE

Whether a misapplication of the advisory career-offender guideline results in a complete miscarriage of justice, thereby permitting a defendant so sentenced to assert a cognizable claim for initial collateral relief under 28 U.S.C. § 2255(a).

## COURSE OF PROCEEDINGS AND DISPOSITION BELOW

1.  On June 21, 2006, a confidential informant purchased two rocks of cocaine base from Kevin Spencer.  Two days later, Clay County Sheriff's Office deputies stopped a vehicle in which Spencer was riding.  Spencer fled from the car but was immediately apprehended.  During a search incident to Spencer's arrest, officers discovered a pill bottle in his pants pocket containing rocks that tested positive for crack cocaine.  A federal grand jury in the Middle District of Florida later indicted Spencer for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1).  In 2007, Spencer pleaded guilty.

2.  The probation office recommended that Spencer be sentenced as a career offender based on its determination that Spencer's 2004 Florida state court convictions for possession with intent to sell cocaine (PSR ¶ 29) and third-degree felony abuse of a minor (PSR ¶ 32) were career offender predicate offenses.  See U.S.S.G. § 4B1.1(a).  As a career offender, Spencer's advisory guidelines range

-2-

was 151 to 188 months' imprisonment.  PSR ¶ 66.  Absent the career-offender

enhancement, Spencer's advisory range would have been 70 to 87 months'

imprisonment.  Spencer conceded that his drug conviction was a career-offender

predicate, but argued that his felony child abuse conviction was not a crime of

violence.  Sent. Tr. 5.  The district court overruled Spencer's objection, *id*. at 13-

14, 16, and sentenced Spencer as a career offender to 151 months' imprisonment.

*Id*. at 21.   On appeal, this Court affirmed Spencer's sentence, rejecting his

argument that felony child abuse was not a crime of violence.  See *United States*

v. *Spencer*, 271 F. App'x 977 (11th Cir. 2008) (per curiam) (unpub.).

      3.  Two weeks later, the Supreme Court decided *Begay* v. *United States*, 553

U.S. 137, 128 S. Ct. 1581 (2008).  In *Begay*, the Court held that the residual clause

of the definition of "violent felony" in the Armed Career Criminal Act of 1984

(ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), covers only crimes that typically involve

"purposeful, violent, and aggressive" conduct.  The Court further stated in *Begay*

that the residual clause extends only to "crimes that are roughly similar, in kind

as well as in degree of risk posed," to the listed offenses.  *Id*. at 143-145; see also

*United States* v. *Alexander*, 609 F.3d 1250, 1253 (11th Cir. 2010) (applying *Begay* to

career offender guideline).  Soon after *Begay*, Spencer timely filed a *pro se* motion

to vacate his sentence under 28 U.S.C. § 2255(a), arguing that *Begay* established

that his felony child abuse conviction was not a crime of violence, and that he was "actually innocent" of being a career offender.  The district court denied the motion, and declined to issue Spencer a certificate of appealability (COA); however, this Court granted Spencer a COA on "[w]hether, in light of *Begay* v. *United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008), and later cases in this court, Spencer's freestanding challenge to a career offender sentence is cognizable under 28 U.S.C. § 2255," and "[i]f so, whether the district court, in light of *Begay*, erroneously determined that Spencer was a career offender."

4. This Court vacated the order denying Spencer's Section 2255 motion and remanded the case with instructions to resentence Spencer "without treating his Florida conviction for third degree felony child abuse as a crime of violence." Add. A, *infra*, 45.  The Court concluded that Spencer's felony child abuse conviction was not a crime of violence under *Begay* and *Sykes* v. *United States*, 131 S. Ct. 2267 (2011).  Turning to the cognizability question, the Court noted that Section 2255 permits collateral relief for non-constitutional errors, such as a misapplication of the Sentencing Guidelines, only if the error amounts to "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. at 11 (quoting *Davis* v. *United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305 (1974)); accord *Hill* v. *United States*, 368 U.S. 424, 429, 82 S. Ct. 468, 472 (1962).

-4-

The panel's decision recognized that "other circuit courts have said that Guideline error is *not* cognizable under Section 2255," *id*. at 13, and acknowledged that the Seventh Circuit had recently held that a misapplication of the advisory career-offender guideline – the same error at issue here – did not amount to a complete miscarriage of justice. *Id*. at 14 (discussing *Hawkins* v. *United States*, 706 F.3d 820, 822 (7th Cir. 2013)).   The panel further recognized that the Eighth Circuit's holding that a misapplication of the mandatory career-offender guideline was not a miscarriage of justice necessarily meant that the same error, under advisory guidelines, would not be cognizable.   Add. A, *infra*, 13 (discussing *Sun Bear* v. *United States*, 644 F.3d 700 (8th Cir. 2011) (en banc)).   The panel nonetheless "reach[ed] a conclusion that differs from both the Seventh and Eighth Circuits," Add. A, *infra*, 17, and held that an advisory guidelines error can "inherently create[] a complete miscarriage of justice," *id*. at 19.   The panel interpreted *Johnson* v. *United States*, 544 U.S. 295, 125 S. Ct. 1571 (2005), and *Stewart* v. *United States*, 646 F.3d 856 (11th Cir. 2011), both of which involved the "then-mandatory [career offender] Guideline[]," Add. A, *infra*, 19, to have "implicitly found" the complete miscarriage of justice standard satisfied, *id*. at 12.   Lastly, the panel dismissed concerns that allowing collateral relief for "properly preserved and timely filed career offender sentence challenges under Section 2255" would spawn

a large number of collateral petitions. *Id*. at 25-26.

## REASONS FOR GRANTING THE PETITION

The panel's holding that a misapplication of the advisory guidelines results in a complete miscarriage of justice, and thereby gives rise to a cognizable claim for initial Section 2255 relief, involves a "precedent-setting error of exceptional importance," 11th Cir. R. 35-3.   That holding is erroneous, conflicts with decisions of the only two other circuits to squarely address the issue on an issue of prospective and recurring importance, and employs reasoning that is in serious tension with *Gilbert* v. *United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc).  Full Court review thus is warranted.

## I.    THE PANEL'S COGNIZABILITY HOLDING IS ERRONEOUS.

The panel's holding that an advisory-guidelines error produces a complete miscarriage of justice, cognizable on collateral review, is erroneous and should be reconsidered.

A.  An error in calculating the advisory range that the sentencing court uses as its starting point for determining an appropriate sentence is just that – an error. Congress, however, has not made Section 2255 relief available for all claimed errors of law.  Cf. *Felker* v. *Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 2340 (1996) ("Judgments about the proper scope of the writ are normally for Congress to

make."). As the panel noted, non-jurisdictional, non-constitutional claims of error are not cognizable grounds for a collateral attack on a final judgment under Section 2255 unless the error "inherently results in a complete miscarriage of justice." Add. A, *infra*, 11 (quoting *Davis*, 417 U.S. at 346, 94 S .Ct. at 2305).

Contrary to the panel's analysis, an advisory guidelines calculation error does not "inherently result in a complete miscarriage of justice." The sentencing court's error may have resulted in the imposition of a longer sentence than would be suggested by the application of the correct advisory guidelines range. But this calculation error does not affect the statutory boundaries within which the court exercises its post-*Booker* sentencing discretion. In this respect, this type of error is unlike either an erroneously imposed mandatory minimum term, which deprives a sentencing court of virtually all its discretion to impose a lower sentence, or even a mandatory guidelines error, which limits the district court's discretion. Here, the sentencing court possessed both the statutory authority and the discretion to impose the sentence it imposed: Spencer's 151-month sentence was within the authorized 20-year statutory maximum for his crime and the court had discretion to sentence him outside of the career offender range. See 21 U.S.C. § 841(b)(1)(C); cf. *United States* v. *Addonizio*, 442 U.S. 178, 186, 99 S. Ct. 2235, 2241 (1979) (sentencing error was not cognizable under Section 2255 where

the sentence imposed was "within statutory limits").

And the determination that Spencer was incorrectly classified as a career offender does not affect Spencer's eligibility to receive the identical sentence today.  If the sentencing court had known at the time of sentencing, as we now know, that Spencer was not a career offender, the court still could have validly imposed the identical 151-month sentence without relying on the career offender enhancement – precisely because the guidelines are advisory.  Cf. *United States* v. *Pantle*, 637 F.3d 1172, 1177-1178 (11th Cir. 2011) (error in calculating advisory offense level not prejudicial because the court could have reimposed "the same 120-month sentence because Section 3553(a) would permit the court to vary upward to that sentence").  Whether or not the sentencing judge would have imposed the same sentence is beside the point: the inquiry is an objective one that asks whether the court exercising discretion within the same statutory range *could* have reimposed the same sentence, not whether a particular judge *would* have done so.  An advisory guidelines calculation error, therefore, does not "inherently result[] in a complete miscarriage of justice."  *Hawkins,* 706 F.3d at 824-827.[1]

_____

[1] This case involves a misapplication of the advisory guidelines, and the government's cognizability analysis is limited to that context.  The question whether other types of sentencing errors are cognizable on collateral review (such as erroneous statutory mandatory minimum sentences) is not presented by this case, and may present distinct issues as to cognizability on collateral review.

B.  Contrary to the panel's view, the Supreme Court's decision in *Johnson* and this Court's decision in *Stewart* do not support the conclusion that advisory guidelines errors are cognizable on collateral review.  As the panel admitted, those cases arose under the formerly-mandatory guidelines, and thus are not controlling on *advisory* guidelines error.  Beyond that, however, neither decision addressed the cognizability on collateral review of a guidelines error of any sort.  In *Johnson*, the Court held that the defendant's Section 2255 motion was time-barred, so it had no occasion to address the cognizability of his career-offender challenge.  544 U.S. at 311, 125 S. Ct. at 1582.  Although language in the opinion implies that such a mandatory guidelines error claim could be brought, the discussion was not necessary to the decision and notably omits any mention of the extensive appellate court precedent holding that guidelines claims are not cognizable on collateral review.  In *Stewart*, the question was whether the defendant's second-in-time Section 2255 motion was "second or successive," when the claim was that the defendant's career-offender status depended on a state court predicate conviction that had subsequently been vacated.  This Court held the motion was not second or successive, and remanded for further consideration; it did not address the cognizability of the underlying claim.  646 F.3d at 866.  Furthermore, the fact that *Gilbert* reserved the issue that the panel believed dictated by *Johnson*

-9-

and *Stewart*, 640 F.3d at 1306, further suggests that the panel overread those decisions.[2/]

## II. THE PANEL'S HOLDING CREATES AN INTER-CIRCUIT CONFLICT AND ITS REASONING IS IN SERIOUS TENSION WITH *GILBERT*.

Rehearing en banc is warranted, not just because the panel's holding is wrong and unprecedented, but also because it creates an avowed circuit conflict. See Fed. R. App. P. 35(b)(1)(B); *id*. adv. comm. notes (1998) (rehearing en banc is warranted when it can eliminate a newly-minted circuit conflict). In addition, the panel's reasoning is logically at odds with *Gilbert*, which further supports full Court review. Fed. R. App. P. 35(b)(1)(A).

A. In *Narvaez* v. *United States*, 674 F.3d 621 (7th Cir. 2011), the Seventh Circuit held that a misapplication of the mandatory career-offender guideline was a miscarriage of justice remediable under Section 2255, *id*. at 624. Subsequently, in *Hawkins* v. *United States*, 706 F.3d 820 (7th Cir. 2013), the Seventh Circuit

_____

[2/] Contrary to the panel's conclusion, *Peugh* v. *United States*, 133 S. Ct. 2072 (2013), does not declare otherwise. *Peugh* found an ex post facto violation in applying the advisory guidelines range in effect at the time of sentencing when the range in effect when the defendant committed the crime was lower. But *Peugh*'s holding that a constitutional error in calculating a advisory guidelines range can invalidate a sentence on direct review does not imply that a nonconstitutional error in calculating the advisory guidelines range is cognizable on collateral review. See, *e.g.*, *Hawkins* v. *United States*, 724 F.3d 915, 916-917 (7th Cir. 2013) (supplemental opinion).

limited *Narvaez* to mandatory guidelines errors and held that a misapplication of

the post-*Booker* advisory career-offender guideline was *not* a miscarriage of justice,

and thus was not redressable under Section 2255. The panel acknowledged

*Hawkins* but expressly declined to follow it. Add. A, *infra*, 16-17. And in *Sun Bear*

v. *United States*, 644 F.3d 700 (8th Cir. 2011) (en banc), the court held (contrary

to *Narvaez*) that misapplications of the mandatory career offender guideline were

not redressable under Section 2255. *Id*. at 705-706; see also *Meirovitz* v. *United*

*States*, 688 F.3d 369, 370-371 (8th Cir. 2012) (following *Sun Bear*). *Sun Bear*

involved mandatory career offender errors, but it follows *a fortiori* that advisory

career offender errors would not be cognizable either. Again, the panel

acknowledged as much but, as with *Hawkins*, declined to follow *Sun Bear.*

B. The panel's reasoning is also in serious tension with *Gilbert*. In *Gilbert*,

the Court held that a prisoner cannot challenge a mandatory guidelines career-

offender error in a successive collateral attack under the savings clause. *Gilbert* left

the door open to savings-clause relief for a sentencing errors, however, if the error

constituted a "fundamental defect," which *Gilbert* interpreted to mean that the

defendant was "sentenced to a term of imprisonment that exceeded what would

have been the statutory maximum without the error." 640 F.3d at 1319 n.20

(discussing *Wofford* v. *Scott*, 177 F.3d 1236, 1244 (11th Cir. 1999)). *Gilbert* thus did

not regard an error even under mandatory guidelines to constitute a "fundamental defect." Yet here, the panel regarded the misapplication of the advisory career offender guideline as a "'fundamental defect that inherently results in a complete miscarriage of justice.'" Add. A, *infra*, 45 (quoting *Davis*, 417 U.S. at 346, 94 S. Ct. at 2305). The implication of that reasoning is that, insofar as the "fundamental defect" standard governs sentencing claims in the savings-clause context, cf. *Wofford*, 177 F.3d at 1244-1245 (dictum reserving the issue), an advisory guidelines error would satisfy that standard. See *Brown* v. *Caraway*, 719 F.3d 583, 587 (7th Cir. 2013) (agreeing that a sentencing error that justified initial Section 2255 relief qualified as a "fundamental sentencing defect" meriting savings clause relief). But that conclusion cannot be reconciled with *Gilbert*'s holding that mandatory career offender sentences do not merit savings clause relief. So, although this case involves an initial collateral attack under Section 2255, not a successive collateral attack under the savings clause, the tension between the approach in *Gilbert* and the approach here provides an additional justification, if one were needed, for rehearing this case en banc.

## III.    THE ISSUE IS OF RECURRING IMPORTANCE.

Whether sentencing errors are redressable on federal collateral review is an issue of prospective and recurring importance. In the aftermath of *Begay* v. *United*

*States* and *Chambers* v. *United States*, 555 U.S. 122, 129 S. Ct. 687 (2009), federal prisoners filed a large number of applications for collateral relief asserting both statutory errors and mandatory guidelines errors. That number will likely be dwarfed, however, if this Court's jurisprudence permits similar challenges for advisory guidelines errors – especially in the wake of *Descamps* v. *United States*, 133 S. Ct. 2276 (2013). Indeed, between 2006 (the first year after *Booker*) and 2012, district courts in this circuit found that approximately 1,975 defendants were career offenders, Add. B, *infra*, and the decision in this case will, at the very least, precipitate a substantial number of collateral challenges in such cases.

And, although the panel asserted that its holding was limited to "career offender sentence challenges," Add. A, *infra* 25, based on its view that this was "not ordinary Guideline error," *id.* at 26, the panel offered no stable rationale for that limitation. Perhaps the panel meant that its holding was limited to guidelines errors that have a significant effect on the guidelines range, but numerous guidelines enhancements have dramatic effects. See, *e.g.*, U.S.S.G. § 2B1.1(b)(1) (amount of loss in fraud cases can up to 30 levels); U.S.S.G. § 2L1.2(b)(1)(A) (16-level increase for certain illegal reentry offenses). And *Gilbert* rejected an effort to carve-out career-offender errors from other guidelines errors in the successive-review context, explaining that "[i]f the savings clause operates to allow attacks

-13-

on old sentences that were lengthened by enhancements that later decisions have called into doubt, there is no reason it would not also operate to do the same with any other guidelines calculation error." 640 F.3d at 1310. The fact that "career offender status stems from a congressional requirement," Add. A, *infra* 21; 21 U.S.C. § 994(h), does not provide a principled basis for limiting the reach of this decision either. Cf. *United States* v. *Vazquez*, 558 F.3d 1224, 1227-1228 (11th Cir. 2009) (holding that sentencing courts were not free to vary downward based on a disagreement with the career-offender guideline because that guideline, unlike other guidelines, was the product of direct congressional expression), *vacated*, 558 U.S. 1144 (2010). And the panel's assertion that its holding is limited to properly preserved claims in timely filed motions does not diminish the significant practical impact of its decision: procedural default principles and the statute of limitations may screen some cases, but not all. And the critical legal question remains whether advisory guidelines claims, which could be raised in a wide range of cases, are cognizable at all.

Finally, the panel's reasoning blurs the distinction between ordinary error and a complete miscarriage of justice by treating a procedurally unreasonable sentence – *i.e.*, a sentence selected from an erroneous guidelines range, see *Gall* v. *United States*, 552 U.S. 38, 51 (2007) – as equivalent to a complete miscarriage of

-14-

justice.  But while a guidelines calculation error might justify relief on direct review, collateral review demands more.  See *Addonizio*, 442 U.S. at 185, 99 S. Ct. at 2241 ("[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."); see also *United States* v. *Frady*, 456 U.S. 152, 165, 102 S. Ct. 1582, 1593 (1982) (faulting court for treating "collateral attack and direct review [as] interchangeable").

## IV.   THIS CASE SQUARELY PRESENTS THE COGNIZABILITY ISSUE.

This case is a perfect vehicle to reconsider the panel's cognizability holding. The government is not seeking further review of the determination that Spencer's felony child abuse conviction is non-qualifying, so as the case now stands, Spencer was improperly classified and sentenced as a career offender.  And no other procedural barriers are in play: Spencer's Section 2255 motion was timely filed; he preserved his claim by objecting at sentencing and raising the issue on direct appeal; and his claim is based on *Begay*, which announced a substantive rule that is retroactive on collateral review.  Add. A, *infra* 35.  Accordingly, the question whether Spencer's challenge to the calculation of his advisory guidelines range is cognizable under Section 2255 is determinative of this case.

## CONCLUSION

The petition for rehearing en banc should be granted.

-15-

Respectfully submitted,

A. LEE BENTLEY III
  *United States Attorney*

MYTHILI RAMAN
  *Acting Assistant Attorney General*

DAVID P. RHODES
PEGGY M. RONCA
  *Assistant United States Attorneys*
  *Appellate Division*
  *Middle District of Florida*

DENIS J. MCINERNEY
  *Acting Deputy Assistant Attorney General*

*Michael A. Rotker*

By: _____
     MICHAEL A. ROTKER
     *Attorney, Appellate Section*

     *Criminal Division*
     *United States Department of Justice*
     *950 Pennsylvania Ave NW, Suite 1264*
     *Washington, D.C.  20530*
     *(202) 514-3308*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused two (2) true and correct copies of the

foregoing Petition for Rehearing En Banc to be served this 27th day of September

2013, by the Court's ECF system and first class mail, postage prepaid, on:

Agne Krutules, Esq.
Maloy Jenkins Parker
25th Floor
75 Fourteenth Street N.W.
Atlanta, Georgia 30309
(404) 875-2700
krutules@mjplawyers.com
   Counsel for Kevin Spencer


*Michael A. Rotker*
_____
MICHAEL A. ROTKER
  *Attorney*
  *United States Department of Justice*

# ADDENDUM A

*Spencer* v. *United States*,
— F.3d —, 2013 WL 4106367
(11th Cir. Aug. 15, 2013)

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10676
_____

D.C. Docket Nos. 3:08-cv-00914-VMC-MCR,
3:06-cr-00349-VMC-MCR-1

KEVIN SPENCER,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 15, 2013)

Before JORDAN and KRAVITCH, Circuit Judges, and HORNBY,[*] District Judge.

_____
[*]Honorable D. Brock Hornby, United States District Judge for the District of Maine, sitting by designation.

HORNBY, District Judge:

We hold that a defendant who unsuccessfully raised a career offender issue at both sentencing and on direct appeal can use a timely-filed first motion under 28 U.S.C. § 2255 to pursue the same issue when an intervening case from the Supreme Court validates his argument and applies retroactively. Under that intervening case, this defendant's third degree Florida felony child abuse conviction no longer qualifies as a predicate crime of violence. He therefore is not properly treated as a career offender. We vacate the district court's denial of his section 2255 motion and remand for resentencing.

## **Procedural History**

In 2007, Kevin Spencer, age 21, received a 151-month federal sentence for distributing 5.5 grams of crack cocaine. The sentencing judge determined that Spencer was a career offender and sentenced him at the bottom of the career offender Guideline range. The judge told Spencer that without career offender status, "instead of looking at a level 32, you'd have been looking at a level 23. It's, in essence, half the sentence, in essence." Sentencing Tr. at 20 (Record No. 49). (Without career offender status, Spencer's Guideline range was 70 to 87 months. Presentence Investigation Report ¶¶ 24, 37.)

To be a career offender, a defendant must have two previous felony convictions for enumerated drug trafficking crimes and/or crimes of violence. 28

2

U.S.C. § 994(h). Spencer certainly had one such previous conviction. In 2004 at age 18, he was convicted of possession with intent to sell cocaine while he was 17. But at his 2007 federal sentencing, Spencer argued that the second predicate felony—a 2004 Florida conviction on the same date as the other predicate conviction—was not a qualifying crime of violence.

Spencer argued then and now that this Florida conviction—third degree felony abuse of a minor—did not require intent to cause physical injury or even a reasonable likelihood of physical injury, that intent to cause mental injury (or a reasonable likelihood of mental injury) alone was sufficient for conviction, and therefore that the conviction did not satisfy the federal crime-of-violence definition.

Spencer lost that argument before the federal sentencing judge. He appealed his sentence, making the same arguments on appeal. This court rejected those arguments in 2008 and affirmed Spencer's career offender sentence in an unpublished per curiam opinion on the basis that the conduct that resulted in the prior conviction created a serious potential risk of physical injury. United States v. Spencer (Spencer I), 271 F. App'x 977, 979 (11th Cir. 2008).

Two weeks later, the United States Supreme Court decided Begay v. United States, 553 U.S. 137, 143, 128 S. Ct. 1581, 1585 (2008), a case that narrowed one portion of the crime-of-violence definition to "crimes that are roughly similar, in

3

kind as well as in degree of risk posed," to examples specifically listed in the statute (the listed crimes are burglary, arson, extortion, and use of explosives).[1] Spencer then moved that same year under 28 U.S.C. § 2255 (his first such motion) to vacate, set aside, or correct his sentence. The district court denied his motion in 2010. Order and Judgment in Civil Case (Record Nos. 17 & 18). We then granted a certificate of appealability[2] on the following two issues:

1.    Whether in light of <u>Begay v. United States</u>, 553 U.S. 137, 128 S. Ct. 1581 (2008), and later cases in this court, Spencer's freestanding challenge to a career offender sentence is cognizable under 28 U.S.C. § 2255.

2.    If so, whether the district court, in light of <u>Begay</u>, erroneously determined that Spencer was a career offender based upon a predicate state conviction for felony child abuse under Fla. Stat. § 827.03(1).[3]

---

[1] <u>Begay</u> involved the Armed Career Criminal Act, not the career offender statute and Guideline, but courts treat them the same in defining what is a crime of violence. <u>See</u> <u>infra</u> note 5.

[2] In light of <u>Gonzalez v. Thaler</u>, 132 S. Ct. 641 (2012), and the government's failure to argue the issue, we do not re-examine whether the certificate of appealability properly issued under 28 U.S.C. § 2253(c)(2)-(3).

[3] The certificate of appealability reads in its entirety:

Whether in light of <u>Begay v. United States</u>, 553 U.S. 137, 128 S. Ct. 1581, 170 L. Ed. 2d 490 (2008), <u>Gilbert v. United States</u>, No. 09-12513 (11th Cir. June 21, 2010), and <u>United States v. Hunter</u>, 559 F.3d 1188 (11th Cir. 2009), the movant's freestanding challenge to a career offender sentence imposed under U.S.S.G. § 4B1.1 is cognizable under 28 U.S.C. § 2255? If so, whether the district court, in light of <u>Begay v. United States</u>, 553 U.S. 137, 128 S. Ct. 1581, 170 L. Ed. 2d 490 (2008), erroneously determined that the movant was properly classified as a career offender where he had a prior state conviction for felony child abuse under Fla. Stat. § 827.03(1)?

4

On appeal from a district court's denial of a section 2255 motion, "we review legal issues *de novo* and factual findings under a clear error standard." Thomas v. United States, 572 F.3d 1300, 1303 (11th Cir. 2009) (citation omitted). We also "review *de novo* whether a prior conviction qualifies as a 'crime of violence' under the Sentencing Guidelines." United States v. Lockley, 632 F.3d 1238, 1240 (11th Cir. 2011) (citation omitted).

## **Analysis**

## **I.**

### **The Applicable Statutes and Guideline**

The United States Sentencing Commission created career offender sentences as a result of a specific directive from Congress. In the Sentencing Reform Act of 1984, Congress instructed:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—
> (1)    has been convicted of a felony that is [a crime of violence or an enumerated drug trafficking offense]; and
> (2)    has previously been convicted of two or more prior felonies, each of which is—

---

Certificate of Appealability at 2 (Record No. 22). There was a delay in hearing the appeal pending the disposition of other cases that might have affected it. The government and Spencer (proceeding pro se) fully briefed the case in January 2011. In November 2011, the court appointed an attorney for Spencer. In June 2012 the case was fully briefed again. In December 2012, we heard oral argument.

(A) a crime of violence; or

(B) [an enumerated drug trafficking offense].

28 U.S.C. § 994(h).  Accordingly, the Commission devised a separate Guideline

4B1.1 for calculating the sentences of these "career offenders."  As Congress

directed, they generally receive a significantly higher offense level and a higher

criminal history score, with a resulting significantly higher sentencing range.

Since 1989,[4] the Sentencing Commission has used the statutory definition of

"violent felony" from the Armed Career Criminal Act to define "crime of

violence" for career offenders:[5]

> The term "crime of violence" means any offense under federal
> or state law, punishable by imprisonment for a term exceeding one
> year, that—

---

[4] Amy Baron-Evans, Jennifer Coffin & Sara Silva, Deconstructing the Career Offender Guideline, 2 Charlotte L. Rev. 39, 58-66 (2010), provide a detailed history.

[5] The Commission made a single substantive modification, listing "burglary of a dwelling" rather than the undifferentiated "burglary" of the statutory definition, 18 U.S.C. § 924(e)(2)(B).  In Comment 1, the Commission added further elaboration:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.  Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S. Sentencing Guidelines Manual § 4B1.2 cmt. 1.  Although the Commission says that the definitions are "not identical," id. § 4B1.4 cmt. 1, we follow the precedents that treat the definition of crime of violence as virtually identical in the career offender and armed career criminal cases.  See, e.g., United States v. James, 550 U.S. 192, 206, 127 S. Ct. 1586, 1596 (2007) ("closely tracks"); United States v. Chitwood, 676 F.3d 971, 975 n.2 (11th Cir. 2012) ("substantially the same").

(1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)     is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S. Sentencing Guidelines Manual § 4B1.2(a).

The Florida statute under which Spencer was convicted of third degree felony child abuse provided:  "A person who knowingly or willfully abuses a child *without* causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree . . . ."  Fla. Stat. § 827.03(1) (2003) (emphasis added).[6]  It defined child abuse as:

(a) Intentional infliction of physical *or mental injury*[7] upon a child;

(b) An intentional act that could reasonably be expected to result in physical *or mental injury* to a child; or

(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical *or mental injury* to a child.

Id. (emphases added).  Spencer argued at his federal sentencing that the records that the federal sentencing judge could consult did not show that he pleaded guilty

---

[6] The child abuse statute has been substantially altered and renumbered since Spencer was convicted.  In this opinion, we cite the version of the statute in effect when Spencer was convicted.

[7] At the time Spencer was convicted, mental injury was defined in a related chapter entitled "Proceedings Relating to Children" as: "injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in the ability to function within the normal range of performance and behavior."  Fla. Stat. § 39.01(43) (2002); see also DuFresne v. State, 826 So. 2d 272, 278-79 (Fla. 2002) (concluding that the child abuse statute "is not unconstitutionally vague because the term 'mental injury' is adequately defined in another related statute," namely, chapter 39).

to the physical injury element of the statute at his Florida conviction, and thus that his Florida conviction could not be counted as a crime of violence.

The government agrees that Spencer's Florida conviction for third degree felony child abuse does not satisfy subsection (1) of the federal crime-of-violence definition requiring that physical force be an element of the crime. Appellee's Br. at 22 n.4. The government's concession is appropriate because the Florida statute can result in conviction without the use or threat of physical force. The Florida crime also is not one of the enumerated crimes in subsection (2) (burglary of a dwelling, arson, extortion, use of explosives).

Instead, to be counted as a crime of violence, Spencer's Florida conviction must qualify under the so-called residual clause of subsection (2) as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." The sentencing judge in 2007 and this court in 2008 both ruled against Spencer on the basis of that language.

We turn then to the initial issue on which we granted the certificate of appealability.

## II.

**Can section 2255 be used to challenge a career offender sentence where the challenge is based upon a later Supreme Court case and later cases from this court?**

Spencer seeks to challenge his career offender sentence under that portion of section 2255 that allows a prisoner serving federal time to "move the court which imposed the sentence to vacate, set aside or correct the sentence" when his claim is "that the sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).[8]  This is Spencer's first such motion. Spencer claims that, because of the Supreme Court's new definition of crime of violence in Begay, he had only one prior drug trafficking offense or crime of violence at the time of his federal sentence, while the career offender statute and Guideline both require two, and that his career offender sentence therefore was "in violation of the . . . laws of the United States."  Section 2255(f)(3) provides a one-year limitation period for filing such a motion.  The period runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."[9]  As we discuss in Part IV, we and other

_____

[8] In Gilbert v. United States, 640 F.3d 1293, 1306 (11th Cir. 2011) (en banc), the government argued that a Guideline error could not be raised in *any* collateral attack, not even a first one.  The en banc court refused to decide that issue and dealt only with second or successive motions.  Id.  As a result, the en banc court saw no reason to deal with decisions like Davis v. United States, 417 U.S. 333, 94 S. Ct. 2298 (1974), and Hill v. United States, 368 U.S. 424, 82 S. Ct. 468 (1962), see Gilbert, 640 F.3d at 1306 n.13, cases we discuss below.

[9] We have treated Begay as creating such a "new right."  Zack v. Tucker, 704 F.3d 917, 925-26 (11th Cir. 2013) (en banc).

circuit courts have stated that <u>Begay</u> applies retroactively.  Here, Spencer filed his motion in a timely fashion, <u>i.e.</u>, within one year of the 2008 <u>Begay</u> decision.

In <u>Davis v. United States</u>, 417 U.S. 333, 343-46, 94 S. Ct. 2298, 2303-05 (1974) (not a sentencing case), the Supreme Court ruled explicitly that section 2255's language "laws of the United States" includes more than constitutional challenges.[10]  With particular relevance to Spencer's section 2255 motion here based upon <u>Begay</u>, <u>Davis</u> held that section 2255 could be used for a challenge based upon a change in the applicable circuit law that occurred *after* the defendant was convicted and sentenced the first time, even though the defendant had raised and lost that very issue in the trial court and on appeal.  <u>Id.</u> at 342, 346, 94 S. Ct. at 2303, 2305.  Thus, both section 2255(f)(3) and <u>Davis</u> contemplate a section 2255 motion based upon a change in the law.

But the Supreme Court in <u>Davis</u> added this qualification:  "'[C]ollateral relief is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error."  <u>Id.</u> at 346, 94 S. Ct. at 2305.  For this proposition, <u>Davis</u> quoted <u>Hill v. United States</u>, 368 U.S. 424,

---

[10] Earlier, in <u>United States v. Behrens</u>, 375 U.S. 162, 84 S. Ct. 295 (1963), the Supreme Court allowed a convicted defendant to use section 2255 to attack a sentence that the judge imposed in the absence of the defendant and his lawyer, on the basis that the process violated the Federal Rules of Criminal Procedure.  That Criminal Rules violation appears to have qualified as a violation of the "laws of the United States" under section 2255.

429, 82 S. Ct. 468, 472 (1962), where the sentencing judge failed to inform the

defendant that he had the right to speak at sentencing, characterized as a "failure to

comply with the formal requirements of the Rule."[11]  Quoting Hill, Davis said that

"the appropriate inquiry was whether the claimed error of law was 'a fundamental

defect which inherently results in a complete miscarriage of justice,' and whether

'(i)t . . . present(s) exceptional circumstances where the need for the remedy

afforded by the writ of habeas corpus is apparent.'"  417 U.S. at 346, 94 S. Ct. at

2305 (quoting Hill, 368 U.S. at 428, 82 S. Ct. at 471).  Davis did meet the

complete-miscarriage-of-justice standard because the intervening change in the law

arguably made the defendant's conduct no longer criminal, and "[t]here can be no

room for doubt that such a circumstance 'inherently results in a complete

miscarriage of justice' and 'present(s) exceptional circumstances' that justify

collateral relief under § 2255."  Id. at 346-47, 94 S. Ct. at 2305.

Later, the Supreme Court recognized a section 2255 challenge to a career

offender sentence in Johnson v. United States, 544 U.S. 295, 125 S. Ct. 1571

(2005).  After being sentenced, Johnson persuaded a state court to invalidate one of

the convictions that had made him a federal career offender.  He then requested the

---

[11] Other cases like Hill (failure to comply with the formal requirements of a rule of criminal procedure) are Peguero v. United States, 526 U.S. 23, 119 S. Ct. 961 (1999) (failure to inform defendant of the right to appeal where defendant knew of the right), and United States v. Timmreck, 441 U.S. 780, 99 S. Ct. 2085 (1979) (judge's failure to mention a special parole term at the Rule 11 guilty plea).

federal sentencing court to reduce his sentence under section 2255.  The Supreme

Court stated that "[t]he Government shares Johnson's preliminary assumption that

if he filed his § 2255 motion in time, he is entitled to federal resentencing now that

the State has vacated one of the judgments supporting his enhanced sentence."  Id.

at 302-03, 125 S. Ct. at 1577.  The Supreme Court then supported that assumption,

summarizing two of its earlier cases that countenanced the challenge of career

offender sentences under section 2255 if a state court later declared the predicate

convictions invalid.[12]  Johnson stated:  "This case presents the distinct issue of *how*

*soon* a prisoner, successful in his state proceeding, must challenge the federal

sentence under § 2255."[13]  Id. at 304, 125 S. Ct. at 1578 (emphasis added).  Thus,

Johnson acknowledged that section 2255 could provide relief in a career offender

sentencing case if the motion were timely.  It did so without referring to the

fundamental-defect/complete-miscarriage-of-justice standard.  But since Johnson

did not remove that requirement, we construe the decision as having implicitly

found it satisfied.

In Stewart v. United States, 646 F.3d 856, 858-59 (11th Cir. 2011), this

court recognized Johnson's import and likewise allowed a convicted defendant to

---

[12] The cases were Daniels v. United States, 532 U.S. 374, 381-82, 121 S. Ct. 1578, 1582-83 (2001), and Custis v. United States, 511 U.S. 485, 497, 114 S. Ct. 1732, 1739 (1994).

[13] For reasons not relevant to this case, Johnson held that the defendant there proceeded too late and that the statute of limitations barred his section 2255 claim.

use section 2255 to attack a career offender sentence after predicate state

convictions were vacated following his federal sentence and appeal.  Like Johnson,

Stewart also did not refer to the fundamental-defect/complete-miscarriage-of-

justice standard, and we construe the decision as having implicitly found it

satisfied.

Johnson and Stewart are the career offender/collateral review cases that

guide us.[14]  On the other hand, other circuit courts have said that Guideline error is

*not* cognizable under section 2255.[15]  But except for the Eighth and Seventh

---

[14] We recognize that before Johnson and Stewart, in Burke v. United States, 152 F.3d 1329, 1332 (11th Cir. 1998), this court said that a prisoner could not collaterally attack his Guideline sentence based solely upon the fact that the Sentencing Commission later adopted a "clarifying" amendment.  But since a clarifying amendment makes no change in the substantive Guideline law, and since Burke could have made an argument for the proper interpretation at sentencing (he did not) or on appeal (he withdrew his appeal), we concluded that the alleged Guideline misapplication was not a fundamental defect/complete miscarriage of justice.

In Hunter v. United States, 559 F.3d 1188, 1191 (11th Cir. 2009), vacated, 558 U.S. 1143, 130 S. Ct. 1135 (2010), an armed career criminal case, we said that "sentencing errors 'are generally not cognizable in a collateral attack,'" citing a Seventh Circuit case, but we did not elaborate.  Hunter involved the separate question whether a certificate of appealability should properly issue, which requires a "substantial showing of the denial of a *constitutional* right," 28 U.S.C. § 2253(c)(2) (emphasis added), and concluded that the defendant's allegedly erroneous sentence did not violate any constitutional right.  In this case, by contrast, we address the distinct question whether Guideline error as defined by a later Supreme Court decision is a violation of the non-constitutional "laws of the United States" within the ambit of § 2255(a).  Moreover, Hunter no longer has precedential effect, because the Supreme Court vacated the decision and the district court ultimately vacated the defendant's armed career criminal sentence under section 2255.  See Cnty. of L.A. v. Davis, 440 U.S. 625, 634 n.6, 99 S. Ct. 1379, 1384 n.6 (1979) ("Of necessity our decision 'vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect . . . .'" (citations omitted)).

[15] See, e.g., Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011); United States v. Peterman, 249 F.3d 458, 462 (6th Cir. 2001); United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999); United States v. Pregent, 190 F.3d 279, 284 (4th Cir. 1999); Scott v. United States, 997 F.2d 340, 342 (7th Cir. 1993).

13

Circuit cases described below, we have found none that dealt with a section 2255(f)(3) new "right" recognized by the Supreme Court that affects the determination of career offender status.  Moreover, most of these cases were procedurally barred in any event for failure to raise the issue on appeal,[16] or as second or successive motions.[17]

Two years ago, however, the Eighth Circuit used the "Guideline error" characterization to prevent section 2255 challenges to career offender sentences based upon Begay.  In Sun Bear v. United States, 644 F.3d 700 (8th Cir. 2011), a deeply divided (6/5) en banc court held that under section 2255, errors of law other than jurisdictional and constitutional errors do "not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  Id. at 704 (citations and quotation marks omitted).  According to Sun Bear, erroneous career offender status is not "a fundamental defect which inherently results in a complete miscarriage of justice." Id.  Instead, the Eighth Circuit treated it as within the category of cases holding "that ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim."  Id. (citations and quotation marks omitted).  But there was a peculiarity about Sun Bear: the

_____

[16] E.g., Williamson; Pregent; Scott.
[17] E.g., Peterman.  We too prohibited review on a second or successive motion in Gilbert v. United States, 640 F.3d 1293 (11th Cir. 2011) (en banc).

14

sentence imposed was within the same Guideline range *even in the absence of career offender status*.  Id. at 705, 706.  That unusual overlap weakened considerably any fundamental-defect/complete-miscarriage-of-justice assertion.  A later Eighth Circuit decision reaching the same result had the same peculiarity.  Meirovitz v. United States, 688 F.3d 369, 371 (8th Cir. 2012).

The Seventh Circuit reached a different conclusion in Narvaez v. United States, 674 F.3d 621 (7th Cir. 2011).  It said that because of changes in the law under Begay and Chambers v. United States, 555 U.S. 122, 129 S. Ct. 687 (2009), Narvaez "never should have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive *and* violent offenders."  Narvaez, 674 F.3d at 627.  Narvaez relied on Seventh Circuit precedents allowing armed career criminals to challenge their sentences under section 2255 when later changes in the caselaw made them no longer armed career criminals.  Even though the career offender sentence in Narvaez fell below the applicable statutory maximum sentence (unlike the armed career criminal cases[18]), the Seventh Circuit found that a miscarriage of justice had occurred:

---

[18] Armed career criminal sentences often receive section 2255 collateral review without the "complete miscarriage of justice" showing, because those sentences are above the statutory maximum in the absence of armed career criminal status and section 2255 allows review for sentences "in excess of the maximum authorized by law."  See, e.g., Welch v. United States, 604 F.3d 408, 412-13 (7th Cir. 2010); United States v. Shipp, 589 F.3d 1084, 1090 (10th Cir. 2009).

15

> The imposition of the career offender status branded Mr. Narvaez as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense.  It created a legal presumption that he was to be treated differently from other offenders because he belonged in a special category reserved for the violent and incorrigible.  No amount of evidence in mitigation or extenuation could erase that branding or its effect on his sentence.  His designation as a career offender simply took as unchallenged a premise that was not true and gave him no way of avoiding the consequences of that designation.

Id. at 629.  But Narvaez, unlike Spencer, was sentenced when the Guidelines were *mandatory* and the sentencing judge was bound by the career offender range.  Over a dissent, a three-judge panel of the Seventh Circuit recently limited the Narvaez holding to mandatory Guidelines.  In Hawkins v. United States, 706 F.3d 820, 822 (7th Cir. 2013), the majority reasoned that erroneous imposition of mandatory Guidelines could result in a sentence exceeding that "authorized by 'law'" under the language of section 2255.  But according to the Seventh Circuit, Guidelines now are "merely advisory" and a mistake is thus "less serious."[19]  Id. at 824; see also Brown v. Caraway, 719 F.3d 583, 588 (7th Cir. 2013) (career offender Guideline error can amount to a miscarriage of justice "at least where (as here) the

---

[19] After Peugh v. United States, 133 S. Ct. 2072 (2013), discussed infra, the panel in Hawkins denied rehearing and both the majority and dissent filed supplemental opinions.  See 2013 WL 3942324 (7th Cir. July 31, 2013).  In denying rehearing en banc that same date, see 2013 WL 3984518 (7th Cir. July 31, 2013), the Seventh Circuit was as deeply divided (5/4) as the Eighth in Sun Bear.

defendant was sentenced in the pre-[United States v.] Booker [543 U.S. 220, 125 S. Ct. 738 (2005)] era").

On this first certified question of the availability of section 2255 review for a career offender sentence rendered erroneous by a later Supreme Court decision, we reach a conclusion that differs from both the Seventh and Eighth Circuits. We do recognize that the Supreme Court has found no fundamental error/complete miscarriage of justice in cases where only a formal requirement of a criminal procedural rule has been overlooked. See, e.g., Peguero v. United States, 526 U.S. 23, 119 S. Ct. 961 (1999); United States v. Timmreck, 441 U.S. 780, 99 S. Ct. 2085 (1979); Hill, 368 U.S. 424, 82 S. Ct. 468. But categorization as a career offender is not merely a formal requirement of a criminal procedural rule. The Guidelines are the heart of the substantive law of federal sentencing. The Seventh Circuit may think that mistakenly categorizing a defendant as a career offender became not very serious once Booker made the Guidelines advisory, Hawkins, 706 F.3d at 824, but the Supreme Court told us in June (several months after the panel decision in Hawkins but before the Seventh Circuit denied en banc review) that that the Guidelines are still "the lodestone of sentencing." Peugh v. United States, 133 S. Ct. 2072, 2084 (2013). The Supreme Court requires that "'district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'" Id. at 2083 (quoting Gall v. United States,

17

552 U.S. 38, 50 n.6, 128 S. Ct. 586, 596 n.6 (2007)). There would be no reason to require that exercise if they had no impact.[20] In fact, as the Supreme Court observed in Peugh, the Sentencing Commission data show that four out of five sentences are within the Guidelines or prompted by a government motion under the Guidelines to depart for cooperation. 133 S. Ct. at 2084; see also News Release, U.S. Sentencing Commission, Sentencing Commission Issues Comprehensive Report on the Continuing Impact of United States v. Booker on Federal Sentencing (Jan. 30, 2013). We cannot pretend that, because of Booker, career offender status no longer matters to sentence length.

Thus, Guideline sentencing error can be serious. But, as Sun Bear observed, 644 F.3d at 705, it is not exactly an error of the sort that the Supreme Court recognized in Davis. According to the Supreme Court in Davis:

> If [Davis's] contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance "inherently results in a complete miscarriage of justice" and "present(s) exceptional circumstances" that justify collateral relief under § 2255.

---

[20] This court also recognized the Guidelines' anchoring effect in United States v. Wetherald, 636 F.3d 1315, 1321 (11th Cir. 2011) ("It is true that the Guidelines are no longer mandatory, but neither are they without force. The simple reality of sentencing is that a 'sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines.'" (quoting Rita v. United States, 551 U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007))).

417 U.S. at 346-47, 94 S. Ct. at 2305.  Unlike Davis, Spencer was properly

convicted; the only issue is the proper length of his sentence.

Nevertheless, we conclude that a sentencing error like the one here can

amount to a fundamental defect that inherently creates a complete miscarriage of

justice.[21]  We have, first, the Supreme Court decision in <u>Johnson</u> and our opinion

in <u>Stewart</u> allowing collateral review of a career offender sentence where one or

more of the predicate convictions is later invalidated.[22]  If that circumstance

deserves later collateral review, we can think of no principled reason to deny

collateral review based upon a change in the law having the same effect on career

offender status.  We recognize that both <u>Johnson</u> and <u>Stewart</u> involved then-

mandatory Guidelines.  But the Supreme Court has said that "[t]he post-<u>Booker</u>

federal sentencing scheme aims to achieve uniformity by ensuring that sentencing

---

[21] Unlike armed career criminal sentences, career offender sentences are still within the statutory maximum and thus must confront the fundamental-defect/complete-miscarriage-of-justice threshold.  Nevertheless, the availability of review for similarly onerous armed career criminal sentences certainly contributes to the perception that refusing to review career offender sentences creates a complete miscarriage of justice.

[22] We take the permitted collateral review in those cases as recognizing that the Guidelines are "laws of the United States" for section 2255 purposes.  The Seventh Circuit said years ago that "[w]hether the Guidelines are 'laws' is a fascinating question.  Congress did not enact them, and only the legislative branch makes 'laws' under the Constitution.  But they have legal effect—that is, the 'force of law'—in the same way as many rules promulgated by administrative agencies under delegated authority."  <u>Scott v. United States</u>, 997 F.2d 340, 341 (7th Cir. 1993).  That was before <u>Booker</u> made the Guidelines advisory, and the <u>Hawkins</u> decision discounted their significance in the miscarriage-of-justice calculus as a result of <u>Booker</u>.  But the Supreme Court later reaffirmed their significance and held that their influence "creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation" when they are applied retroactively.  <u>Peugh</u>, 133 S. Ct. at 2084.  Here, moreover, it is a statute, 28 U.S.C. § 994(h), that initially defines career offender status.

decisions are *anchored* by the Guidelines and that they remain a *meaningful benchmark*," and that federal judges must bear them in mind "*throughout* the sentencing process."  <u>Peugh</u>, 133 S. Ct. at 2083 (emphases added) (citations and quotation marks omitted).  An erroneous career offender Guideline calculation, even though advisory, therefore can amount to a fundamental defect in the sentencing analysis.[23]

Here the sentencing judge told Spencer that career offender designation essentially doubled his sentence to 151 months.  Sentencing Tr. at 20.  The Sentencing Commission's statistics show that this effect is not atypical.  In 2012 the mean sentence for a criminal history VI *non*-career offender was 84 months, and the median sentence was 60 months.[24]  For career offenders, the mean sentence nearly doubled to 163 months, and the 151-month median was greater by a factor of 2.5.  Measured against all criminal history categories (<u>i.e.</u>, not just VI), career offender sentences were still harsher, relative to the mean (53 months) and median

---

[23] We note that an erroneous Guideline calculation is generally grounds for remand when raised on direct appeal.  <u>See</u> <u>United States v. Crawford</u>, 407 F.3d 1174, 1178 (11th Cir. 2005) ("<u>Booker</u> did not affect 18 U.S.C. section 3742(f), which mandates remand of any case in which the sentence 'was imposed as a result of an incorrect application of the sentencing guidelines . . . .'" (citation omitted)).

[24] Table 14 of the 2012 Sentencing Commission <u>Sourcebook of Federal Sentencing Statistics</u> sets forth the mean and median lengths of imprisonment for offenders in each criminal history category for fiscal year 2012.

(30 months) sentences.[25]  Not surprisingly, the Supreme Court has recognized that

career offender status creates "a category of offender subject to particularly severe

punishment."  Buford v. United States, 532 U.S. 59, 60, 121 S. Ct. 1276, 1278

(2001).  Thus, erroneous career offender categorization is not "ordinary" or

"garden-variety" Guideline error.  Instead, it is a fundamental defect that inherently

results in a complete miscarriage of justice and presents exceptional circumstances

where the need for a post-conviction remedy is apparent.  See Davis, 417 U.S. at

346, 94 S. Ct. at 2305.

Moreover, unlike most of the Guidelines, career offender status is not merely

a vanilla-flavored application of Guideline calculations based solely upon U.S.

Sentencing Commission policy, reasoning, and statistics.  Like armed career

criminal status, criminal livelihood, and repeat-and-dangerous-sex-offender-

against-minors status,[26] career offender status stems from a congressional

requirement.  Congress provided: "The Commission shall assure that the guidelines

specify a sentence to a term of imprisonment at or near the maximum term

_____

[25] "Drugs – Trafficking" (Spencer's crime here) was the most common category of crime among career offenders according to the Table (1,627 out of a total of 2,215 for fiscal year 2012; there were also 27 sentences in the category "Drugs – Communication Facility").  Among drug trafficking offenders across all criminal history categories, the mean sentence was 72 months and the median 57 months, and among category VI *non*-career offenders, the mean was 115 months and the median 96 months; but for career offenders, those figures jumped to 154 months and 144 months respectively.

[26] The Commission includes all of these in Chapter Four Part B of the Guidelines Manual.

authorized" for those who meet the statutory qualifications created by Congress.

28 U.S.C. § 994(h). For most other Guidelines, the Commission itself is the source

of the Guideline range for imprisonment. See 28 U.S.C. § 994(a)-(d). But for

career offenders, it was Congress that determined that two prior felony convictions

for drug trafficking or a crime of violence demand this special punishment at or

near the statutory maximum. See 28 U.S.C. § 994(h). The Supreme Court has

recognized the distinctiveness of the career offender category in invalidating one of

the Sentencing Commission's amendments to the career offender Guideline. The

Court observed that in general Congress delegated to the Commission "'significant

discretion in formulating guidelines'" but that the discretion "must bow to the

specific directives of Congress" as in section 994(h). United States v. LaBonte,

520 U.S. 751, 757, 117 S. Ct. 1673, 1677 (1997) (citation omitted).[27]

_____

[27] Similarly, the Fourth Circuit has distinguished between career offender and non-career offender challenges for purposes of the "actual innocence" exception to the procedural default bar. In United States v. Maybeck, 23 F.3d 888, 892-94 (4th Cir. 1994), the Fourth Circuit held that the defendant's improper designation as a career offender was a "fundamental miscarriage of justice" excusing his procedural default because he was actually innocent of one of the predicate crimes. The Fourth Circuit later cabined that holding to "the context of eligibility for application of a career offender or other habitual offender guideline provision" in United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999).

(Confusingly, the phrase "miscarriage of justice" is used in determining both whether a claim is cognizable under § 2255 and whether a claim can be reviewed in spite of procedural default. See, e.g., Schlup v. Delo, 513 U.S. 298, 314-15, 115 S. Ct. 851, 861 (1995) (petitioner unable to show cause and prejudice for procedural default can obtain collateral review "only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice'" (citation omitted)). Miscarriage of justice is defined more narrowly in the context of procedural default, where it is limited to claims of actual innocence. See, e.g., Bousley v. United States, 523

Finally on this issue, we acknowledge the perennial concern about the justice system's need for finality so that defendants accept their punishments and move forward, and so that justice system resources can be husbanded.[28]  Although there is room for debate over how much weight should be afforded this factor in a circuit court's interpretation of a statute and Supreme Court decisions,[29] we have looked at it in the past and we do so here.[30]

---

U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998) (absent a showing of cause and prejudice for procedural default, "[p]etitioner's claim may still be reviewed in this collateral proceeding if he can establish that the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent'" (citation omitted)); see also Lynn v. United States, 365 F.3d 1225, 1232-35 (11th Cir. 2004) (applying the "complete miscarriage" standard to determine the cognizability of a claim under § 2255 and the "actual innocence" standard as an exception to the procedural default rule).)

[28] In United States v. Addonizio, 442 U.S. 178, 184 & n.11, 99 S. Ct. 2235, 2240 & n.11 (1979), the Supreme Court identified the following "reasons for narrowly limiting the grounds for collateral attack on final judgments":  the effect of undermining confidence in the integrity of court procedures, the increased volume of judicial work and, with greatly delayed collateral attacks, the difficulty of conducting evidentiary hearings that are conclusive and the impossibility of conducting retrials.  (Addonizio, a sentencing case, held that section 2255 could not be used to attack a sentence on the basis that the Parole Commission later changed its criteria for parole.  The Court said that the change "affected the way in which the court's judgment and sentence would be performed but it did not affect the lawfulness of the judgment itself—then or now."  442 U.S. at 187, 99 S. Ct. at 2241.  "[T]he sentence was and is a lawful one."  Id.  Here, Spencer is attacking the lawfulness of his sentence, not the manner in which it will be carried out.)

[29] Professor Russell suggests that finality concerns should be less pressing in the context of sentencing errors given, inter alia, the relative ease of reviewing evidence and determining errors.  See Sarah French Russell, Reluctance to Resentence: Courts, Congress, and Collateral Review, 91 N.C. L. Rev. 79, 139-62 (2012).

[30] We described finality interests in Gilbert v. United States, 640 F.3d 1293, 1309-12 (11th Cir. 2011) (en banc), in enforcing the second or successive motions bar under section 2255(h).  But there we were explicit that we were not deciding whether a first section 2255 motion could collaterally attack a Guideline error.  Id. at 1306.

We conclude that allowing a *first*, timely-filed motion under section 2255 where a new Supreme Court decision has been given retroactive effect, and where the prisoner has preserved the issue of career offender categorization at both original sentencing and appeal, will not create an unmanageable problem. Sentences that are affected by an argument newly recognized by the Supreme Court, see 28 U.S.C. § 2255(f)(3), are not a huge category to start with. The motion must be filed within one year of the date of the new Supreme Court decision, and review is available only if the new decision is retroactive. Id.; see also Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989). Review is not available for second and subsequent motions. Gilbert v. United States, 640 F.3d 1293, 1323 (11th Cir. 2011) (en banc). In addition to the Rozier v. United States, 701 F.3d 681 (11th Cir. 2012), limitation we discuss at the end of this opinion, section 2255 generally cannot be used to challenge an issue that the defendant could have raised on direct appeal but failed to. See United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982) ("[A] collateral challenge may not do service for an appeal." (citations omitted)); see also McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011); Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004). And as for manageability, as commentators have observed,

collateral reviews of sentencing cases deal generally only with paper records,[31] and they usually return to the same judge who sentenced the defendant initially.  No trial or sentencing judge likes to repeat what he or she has done before, but those factors assuage the burden.

And on the other side of the ledger, there is the annual cost to the taxpayers of keeping people in prison who should no longer be there.  According to the Bureau of Prisons, that annual cost is $28,893.40 per prisoner.  Annual Determination of Average Cost of Incarceration, 78 Fed. Reg. 16711-02 (Mar. 18, 2013).[32]  In Spencer's case, according to the sentencing judge he was facing roughly half the sentence in the absence of career offender status.  Sentencing Tr. at 20.  Thus, erroneously labeling him a career offender results in an annual taxpayer outlay of $28,893.40 for an extra 6 ¼ years.  We do not know how many instances there are of defendants like him.

Our holding here is limited to properly preserved and timely filed career offender sentence challenges under section 2255 where an intervening and retroactive change in the controlling Supreme Court caselaw has made the career

---

[31] See Russell, supra note 29, at 147-48, 153.

[32] That figure represents only the direct costs of incarceration.  See Douglas J. Bench, Jr., Collateral Review of Career Offender Sentences: The Case for Coram Nobis, 45 U. Mich. J.L. Reform 155, 167 (2011) (pointing to other indirect costs).

offender status erroneous.[33]  That is not ordinary Guideline error.  The floodgates

will hold.[34]

    We turn then to the second issue on which we granted a certificate of

appealability.

## III.

**Did the District Court erroneously determine that Spencer's Florida**

**third degree felony child abuse conviction was a crime of violence?**

    As we said at the outset, if Spencer's Florida conviction is to qualify as a

crime of violence, it must be under the residual clause of subsection (2).  The

government agrees.

    Here is how this court has described the proper approach to the residual

clause analysis:

> There are two ways in which a crime can fall within the residual
> clause of § 4B1.2(a)(2).  The first way is the categorical approach,
> under which "'we consider whether the *elements of the offense* are of
> the type that would justify its inclusion within the residual provision,
> without inquiring into the specific conduct of this particular
> offender.'"  If the elements of an offense are such that *any* conviction
> for violating that statute will fall within the scope of the residual
> clause, then we can say categorically that the offense is a crime of
> violence under the residual clause.

---

[33] We do not address whether a change in this Circuit's caselaw alone would suffice.

[34] Because we conclude that there was a fundamental defect/complete miscarriage of
justice, we do not address Spencer's secondary argument that the sentencing error was of
constitutional magnitude because it violated his due process right to be sentenced on the basis of
accurate information.

<u>United States v. Chitwood</u>, 676 F.3d 971, 975-76 (11th Cir. 2012) (second

emphasis added) (citations omitted).

In identifying the elements of the offense, the language of the Florida statute

refers to "physical *or mental* injury to a child." Fla. Stat. § 827.03(1) (2003)

(emphasis added). The Florida Supreme Court has said that "as defined under

section 827.[03],[35] 'child abuse' includes intentional infliction of mental injury

upon a child, as well as an intentional act that could reasonably be expected to

result in mental injury to a child." <u>DuFresne v. State</u>, 826 So. 2d 272, 278 (Fla.

2002). Knowing or willful action that reasonably could be expected to result in

*mental* injury to a child, however abhorrent it may be, does not meet the risk-of-

physical-injury standard from the federal crime-of-violence definition. Since we

therefore cannot say that the elements of the Florida crime mean that "any

conviction" under this statute will meet the physical injury risk standard, we cannot

"say categorically that the offense is a crime of violence under the residual clause."

<u>Chitwood</u>, 676 F.3d at 976.

When that is the case, we proceed to another stage:

---

[35] The <u>DuFresne</u> court actually cited section 827.01, which defined only the terms "caregiver," "child," and "placement." Fla. Stat. § 827.01 (1996). Elsewhere throughout the opinion, the <u>DuFresne</u> court cited section 827.03, which did define child abuse, not section 827.01. Thus, we assume that <u>DuFresne</u>'s quoted reference to 827.01 here, rather than 827.03, was inadvertent.

The second way that a crime can come within the residual clause is the modified categorical approach, which can be applied where, but not all, of the violations of a particular statute will involve the requisite violence.  Stated another way, courts apply the modified categorical approach "when the law under which a defendant has been convicted contains different statutory phrases— some of which qualify as 'crimes of violence' and some of which do not . . . ."  In that statement, "different statutory phrases" means different statutory elements or ways of violating the statute.

Id. (quoting United States v. Pantle, 637 F.3d 1172, 1175 (11th Cir. 2011)); see also Descamps v. United States, 133 S. Ct. 2276, 2281-82 (2013).  This part of the analysis applies to Florida's felony child abuse statute.  One statutory element— physical injury—qualifies for crime of violence, while another—mental injury— does not.  Under the modified categorical approach, we ask whether we can determine which category was the basis for the conviction:

Using [the modified categorical] approach to "determine  which statutory phrase was the basis for the conviction" involves consulting "a narrow universe of 'Shepard [v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005)] documents' that includes any charging documents, the written plea agreement, the transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."

Chitwood, 676 F.3d at 976 (quoting Pantle, 637 F.3d at 1175).  Here, the "Shepard documents" are an inapplicable charging document, a transcript of the Florida guilty plea proceeding, a written 2-page "plea of guilty and negotiated sentence" that says nothing about the criminal conduct, the judgment papers, and any

concessions that Spencer made at his federal sentencing.  Id.; see also United States v. Palomino Garcia, 606 F.3d 1317, 1328 (11th Cir. 2010).[36]

That record reveals that Spencer's Florida conviction involved a plea bargain for one year in the county jail (with credit for 114 days' time served) that would resolve three charges, including *both* charges that led to Spencer's career offender status.[37]  On the third degree felony child abuse charge with which we are concerned, there was no charging document.  The only charging document was with respect to a lewd or lascivious battery charge under Fla. Stat. § 800.04(4),[38] a more serious *second* degree felony to which Spencer did *not* plead guilty.  It accused him of engaging in sexual activity with a minor between 12 and 16 "by placing his penis in or upon the vagina of" the minor.  That charge was a strict liability crime.  See Fla. Stat. § 800.04(2) & (3) (2000) (victim's consent or

---

[36] Spencer attached the Florida information, judgment and conviction, plea agreement, and change of plea hearing transcript as "appendices" to his brief, but we do not believe that alone makes them properly part of the record.  So far as we can tell, they were not introduced in the district court on this motion and we no longer have the record of the original appeal to determine if they were part of that record.  We nevertheless treat the transcript of Spencer's Florida change of plea hearing as part of the record for the reasons set forth infra in note 40.  We also discuss the other documents, because the government has not objected to their inclusion, but excluding them from consideration would not affect our holding in any event.

[37] The third charge was cocaine possession, not distribution.  Presentence Investigation Report ¶ 30.

[38] The federal presentence report says that it was a lewd and lascivious assault charge.  At Spencer's federal sentencing, the Assistant United States Attorney stated only that Spencer was initially "charged with lewd and lascivious."  Sentencing Tr. at 8.  Later in the sentencing hearing, Spencer's lawyer stated that Spencer had been "originally charged with . . . . lewd battery," and the sentencing judge responded, "Correct."  Id. at 14.  The Florida information attached as Appendix 1 to Spencer's brief charges lewd and lascivious battery.  We treat the charge as lewd and lascivious battery, but the distinction is ultimately immaterial.

ignorance of age or misrepresentation of age no defense); <u>see also</u> <u>United States v. Harris</u>, 608 F.3d 1222, 1232 (11th Cir. 2010) ("It is true that . . . Fla. Stat. § 800.04(3) 'impose[s] strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all.'" (quoting <u>Begay</u>, 553 U.S. at 145, 128 S. Ct. at 1586-87)); <u>State v. Snyder</u>, 807 So. 2d 117, 120 (Fla. Dist. Ct. App. 2002) ("'lewd and lascivious' conduct in violation of Section 800.04 carries with it the same concept of 'strict liability' that has traditionally characterized 'statutory rape'"). According to that Florida statute (lewd or lascivious battery), the victim's consent was not a defense, and neither was the defendant's ignorance of the victim's age or the victim's misrepresentation of her age.

But instead of pleading guilty to that offense, Spencer pleaded guilty to a lesser offense, a *third* degree child abuse felony.[39] At the Florida change of plea hearing for that third degree felony, the prosecutor did not repeat the sexual battery charge description. Instead he stated: "I need to lay the [basis for] the child abuse. All right. As to the same defendant, in case number 2004-1079, he did engage in sexual activity with a minor and that action could reasonably cause physical or

---

[39] The presentence report incorrectly describes the child abuse felony as a "lesser include[d]" offense. Presentence Investigation Report at 5. Although it is a lesser offense (third rather than second degree), it is not a lesser included offense.

mental injury to that child, contrary to the provisions of 827.03." Change of Plea

Hr'g Tr., Appellant's Br., App. 3 at 9.[40]

That was it. There was no description of what the sexual activity with a

minor was, no reference to Spencer's state of mind (mens rea), and no distinction

drawn between physical and mental injury. The plea agreement provided no more

information, and there were no other Shepard documents for the federal sentencing

judge to consult. That record does not permit us to determine which element in the

Florida child abuse statute—risk of physical injury or risk of mental injury—was

the basis for Spencer's conviction.

The government essentially skips that problem and invites us to jump to

Spencer's underlying conduct, which the government says is sexual intercourse

with a minor, and to conclude that such activity necessarily carries a serious

---

[40] The transcript of Spencer's Florida change of plea hearing, attached as "Appendix 3" to Spencer's brief, does not appear to have been introduced in the lower court on this motion. But at Spencer's federal sentencing hearing, his lawyer stated that probation and the government both had copies of the Florida transcript, and proceeded to quote the same statement from the Florida prosecutor cited in the accompanying text. Sentencing Tr. at 8. The government did not object, and later referred to the same statement by the Florida prosecutor. Id. at 11. Spencer also appears to have included and cited this document as a "record excerpt" (we no longer have that document) on his direct appeal, see, e.g., Spencer I Appellant's Br. at 12 (Appeal No. 07-14116-JJ) (quoting the same statement from the Florida prosecutor), and the government acknowledged that document, see Spencer I Appellee's Br. at 2 n.1 (Appeal No. 07-14116-JJ) ("Spencer has included in his record excerpts (#4) a copy of the colloquy of his plea of guilty to the felony child abuse."). Given the government's earlier acknowledgment of the document and the quotation from it at Spencer's federal sentencing, we accept the Florida plea transcript as part of the record.

potential risk of physical injury regardless, and thus that Spencer necessarily

pleaded guilty to the risk-of-physical-injury element of the Florida statute.

At this stage of the case, we will accept the assertion that sexual intercourse

with a minor is the appropriate description of Spencer's underlying conduct that

generated the Florida conviction.[41]  Although the Florida prosecutor did not offer

that as the factual basis for Spencer's guilty plea, that is what the federal

presentence report said.  Spencer objected to the presentence report's

characterization of what he did, but the federal sentencing judge accepted the

presentence report's characterization.  On the first appeal, we expressed no

disagreement with what the presentence report disclosed and what the sentencing

judge did.

---

[41] At the federal sentencing, the presentence report stated:  "This offense was originally charged as lewd and lascivious assault [the charge actually appears to have been lewd or lascivious battery, see supra note 38] on a child over 12 and under 16 years old.  The defendant pled to a lesser include[d] offense [actually, although it is a lesser offense, third degree felony child abuse is not a lesser *included* offense of second degree lewd or lascivious battery] of felony child abuse.  On June 20, 2004, the defendant engaged in sexual intercourse with a 14 year old female victim."  Presentence Investigation Report at 5.  Spencer's lawyer objected both in writing to the probation officer and orally at sentencing that the record did not establish sexual intercourse.  The sentencing judge stated that as to controverted facts, she accepted the probation officer's position in the addendum to the presentence report.  See Sentencing Tr. at 16.  There were no factual findings in the addendum, only the probation officer's analysis of why this Circuit's caselaw justified treating statutory rape as a crime of violence.  Nevertheless, the sentencing judge certainly treated Spencer as convicted of sexual intercourse with a minor, and in Spencer I we treated Spencer as having waived objection to the presentence report's description of his conduct.  We do not revisit that waiver determination.  Moreover, we note that in this 2255 motion Spencer supplies an affidavit from the then 14-year-old, now an adult, saying that it was sexual intercourse.  (She also says that she initiated it.)  See Sworn Declaration and Affidavit (Record No. 14).

But the conclusion that Spencer pleaded guilty to the physical injury phrase in the statute still does not follow under Florida law.  And as the government acknowledges, the determinative issue is *which Florida statutory phrase Spencer pleaded to*.  Appellee's Br. at 28.  Contrary to the government's argument, we cannot resolve that issue from the <u>Shepard</u> documents or any concessions at sentencing.  Even in admitting sexual activity with a minor, Spencer could well have pleaded guilty to the mental injury element alone, and thus we cannot answer the question under the modified categorical approach.  We must therefore treat the conviction as the least culpable crime under the statute.  <u>Johnson v. United States</u>, 559 U.S. 133, 137, 130 S. Ct. 1265, 1269 (2010) (analyzing whether a prior conviction for battery was a "violent felony" within the meaning of the ACCA by considering "the least of" three disjunctive means of committing the offense under a state statute and concluding that "nothing in the record of . . . conviction permitted the District Court to conclude that it rested upon anything more than the least of these acts" (citation omitted)).  Here, that least culpable crime is *intentional conduct* (sexual intercourse) with a minor (whether or not Spencer knew her age)[42] where it *reasonably could be expected* that *mental* (not physical)

---

[42] Florida caselaw holds that knowledge of the victim's age is not an element of aggravated child abuse.  <u>Witt v. State</u>, 780 So. 2d 946, 947 (Fla. Dist. Ct. App. 2001) ("[T]he state has a compelling interest in protecting underage persons from being sexually abused or exploited. . . .  Accordingly, . . . ignorance of the age of the victim is not a defense.").  <u>Witt</u>'s

injury might result.  That is not a predicate crime of violence for career offender

purposes.

Nevertheless, in <u>Spencer I</u> we affirmed the sentencing court and held that

Spencer's Florida child abuse conviction was a crime of violence.  We did so

because we concluded that Spencer's conduct inherently caused a serious potential

risk of physical injury, without evaluating whether it was similar in kind to the

crimes specifically listed as crimes of violence in the career offender statute and

Guideline.  That is the conclusion that the <u>Begay</u> standard invites us to revisit.  In

doing so, we address an issue that was not briefed, but that the government raised

by letter after this court's recent decision in <u>Rozier v. United States</u>, 701 F.3d 681

(11th Cir. 2012).

# IV.

## Does this court's 2008 decision in <u>Spencer I</u> preclude the relief that Spencer seeks now?

"[W]here there has been no intervening change in controlling law, a claim or

issue that was decided against a defendant on direct appeal may not be the basis for

relief in a § 2255 proceeding."  <u>Rozier</u>, 701 F.3d at 684; <u>see also</u> 3 Charles Alan

Wright & Sarah N. Welling, <u>Federal Practice and Procedure</u> § 628 (4th ed. 2011).

---

reasoning that knowledge that the victim is a minor is not an element applies equally to child
abuse that is not aggravated.  Here, moreover, the sentencing judge concluded that consent was
irrelevant.

This court decided the crime-of-violence issue against Spencer on his direct appeal in 2008.  Spencer therefore must show that a change in controlling law occurred after Spencer I in order to proceed on this later collateral challenge to his sentence.

We have stated that Begay applies retroactively, see Zack v. Tucker, 704 F.3d 917, 925-26 (11th Cir. 2013) (en banc), and so have some other circuits, see Jones v. United States, 689 F.3d 621, 624 (6th Cir. 2012); Lindsey v. United States, 615 F.3d 998, 1000 (8th Cir. 2010).  But see In re Bradford, 660 F.3d 226, 231 (5th Cir. 2011).  The government agreed at oral argument that Begay applies retroactively, as it has in other cases.  Narvaez, 674 F.3d at 625; Welch v. United States, 604 F.3d 408, 414-15 & n.8 (7th Cir. 2010).  Given that concession, we apply Begay here.  See Caspari v. Bohlen, 510 U.S. 383, 389, 114 S. Ct. 948, 953 (1994) ("[A] federal court may, but need not, decline to apply Teague['s non-retroactivity analysis] if the [government] does not argue it.").

But the government argues that after this court granted the certificate of appealability on account of Begay, the Supreme Court limited the effect of Begay in Sykes v. United States, 131 S. Ct. 2267 (2011).  In Chitwood, 676 F.3d at 978, this court concluded that following Sykes, Begay's narrower definition of crimes of violence now applies only to crimes that are "akin to strict liability, negligence, and recklessness crimes" (quoting Sykes, 131 S. Ct. at 2276).  The government maintains that because the Florida child abuse statute refers to "knowingly or

35

willfully" abusing a child, Spencer's Florida conviction for third degree felony child abuse does not fit the narrow category to which <u>Begay</u>'s requirement (that the crime be similar in kind as well as in degree of risk) still applies, and therefore that there has been no "intervening change in controlling law" since <u>Spencer I</u>. Consequently, we examine Spencer's Florida conviction in light of <u>Begay</u>, <u>Sykes</u>, and <u>Chitwood</u>.

According to the federal judge at Spencer's pre-<u>Begay</u> sentencing: "In this particular instance the victim was—the child was 14 years old. She can't consent to having sexual relations with somebody who is an adult, with somebody who is 18 years old. So I think it is appropriate to consider this a crime of violence." Sentencing Tr. at 13. In other words, the lack of legal consent was the operative element for the crime-of-violence determination. The federal prosecutor stated: "I would say that a review of the case law shows that attempted lewd assault, lewd acts, sexual encounters with minors that are charged *where there's not an element even of physical violence in that particular statute*, has been found nonetheless to be considered a crime of violence, taking into account that it—*it is inherently one person doing something with someone else without their consent*." <u>Id.</u> at 15 (emphases added). The federal sentencing judge immediately responded: "Particularly when you have a child who can't consent, somebody who is not old enough to be able to give their own consent." <u>Id.</u> at 15-16. Our certificate of

appealability stated that the issue on this appeal is whether the district court erroneously characterized Spencer as a career offender. Undeniably, the sentencing court's determination of physical violence was predicated upon the minor's age and lack of legal capacity to consent, essentially making it a strict liability crime.[43]

This characterization of Spencer's conduct continued on the first appeal. There, the government argued that Spencer had not objected to the factual accuracy of the description of the crime in the presentence report, and that

> the district court was free to rely on those facts to determine that the sexual "activity" was, in fact, sexual intercourse with a minor. The district court, therefore, correctly determined that Spencer's prior conviction for felony child abuse qualified as a crime of violence for purposes of the career offender guideline.

Spencer I Appellee's Br. at 2-3 (Appeal No. 07-14116-JJ). (That still is the government's position. Appellee's Br. at 25.) At sentencing, the district court had found that the conduct was sexual intercourse with a minor where consent was irrelevant, and we did nothing to cast doubt on that finding as the basis for the crime-of-violence determination. We did recognize that Spencer's challenge was

_____

[43] In denying Spencer's 2255 motion in 2010, the sentencing judge reiterated that the 14-year-old's consent and initiation of sexual intercourse were irrelevant to the crime-of-violence conclusion. Order of January 7, 2010, at 4-5 (Record No. 17) ("[C]ounsel was correct in advising Spencer that the victim's consent and initiation of the sexual contact would be irrelevant. There would have been no difference in the outcome of the case if counsel had called the child to testify as to her consent, as consent had no bearing on the prior state conviction.").

"that the district court should not have relied on the predicate offense description

from the PSI, but rather could only rely on the state's factual proffer of the offense

from the sentencing transcript" (a factual proffer that did not describe the sexual

conduct).  Spencer I, 271 F. App'x at 977.  But we said:

> For purposes of sentencing, the district court may also base its factual
> findings on undisputed statements in the PSI.  Facts contained in a PSI
> are considered undisputed unless the defendant makes a challenge to
> those facts "with specificity and clarity."

Id. at 978 (internal citation omitted).  Thus, we seem to have concluded that

Spencer's objections lacked "specificity and clarity."  Nothing in our opinion in

Spencer I discussed mens rea, or the possibility of conviction solely for mental

injury or its risk, or knowledge of age, or factual (not legal) consent, or that

anything other than undifferentiated sexual intercourse with a minor was involved.

In affirming Spencer's career offender sentence we focused on the fact that it was a

minor who was involved:

> We have emphasized that sexual offenses against minors "*always
> present a substantial risk that physical force will be used* to ensure a
> child's compliance with an adult's sexual demands."  [United States
> v.] Ivory, 475 F.3d [1232, 1238 (11th Cir. 2007)] (holding that
> statutory rape, a "nonconsensual act of sexual penetration," inherently
> involves some physical force and is a crime of violence) (internal
> quotations and citations omitted).  Using this reasoning, we have held
> that § 4B1.2(a)(2)'s definition of a crime of violence includes lewd
> assault on a minor, United States v. Rutherford, 175 F.3d 899, 905
> (11th Cir. 1999), and persuading, inducing, enticing, or coercing a
> minor to engage in unlawful sexual activity, [United States v.] Searcy
> [418 F.3d 1193, 1197 (11th Cir. 2005)] (noting that the offense
> "presents the possibility of an encounter that could result" in serious

38

risk of physical injury and that "physical injury need not be [certain] for a crime to pose a serious risk of physical injury") (citation omitted).

. . . .

Because we conclude that Spencer's predicate conviction for felony child abuse involved a serious potential risk of physical injury to another, we agree with the district court's classification of that predicate offense as a crime of violence . . . .

Id. at 978-79 (emphasis added). The involvement of a minor was the fact that made the crime violent.

But later, Begay held that not all crimes that involve a serious potential risk of physical injury automatically satisfy the crime-of-violence definition. Instead, Begay limited the category to crimes that are "*roughly similar, in kind* as well as in degree of risk posed," to the enumerated crimes in the statute and that involve "purposeful, 'violent,' and 'aggressive' conduct." Begay, 553 U.S. at 143, 144-45, 128 S. Ct. at 1585, 1586 (emphasis added) (citation omitted). Sexual intercourse with a minor where neither knowledge of age nor factual consent is relevant does not involve purposeful, violent, and aggressive conduct that is similar "in kind" to burglary, arson, extortion, and use of explosives. United States v. Owens, 672 F.3d 966, 971-72 (11th Cir. 2012).

Nevertheless, as the government argues, Begay was not the end of the matter. Following Begay, the Supreme Court once again revisited the definition of crime of violence in Sykes. Sykes resuscitated the serious-potential-risk-of-physical-injury test and limited Begay's requirement of purposeful, violent, and

aggressive conduct to crimes that are "akin to strict liability, negligence, and recklessness crimes." <u>Sykes</u>, 131 S. Ct. at 2276.  We recognized that narrowing in <u>Chitwood</u>, 676 F.3d at 978.  The government now tries to salvage the crime-of-violence determination in Spencer's federal sentence on the basis that the "knowingly or willfully" statutory language that appears in the Florida lesser offense provision disqualifies Spencer from relief because of the <u>Sykes</u> narrowing of <u>Begay</u> to strict liability, negligence, and recklessness crimes.

"The meaning of 'physical force' is a question of federal law, not state law.  But, in determining whether a conviction [under Florida law] is a 'crime of violence' for sentencing enhancement purposes, we are bound by Florida courts' determination and construction of the substantive elements of that state offense." <u>United States v. Rosales-Bruno</u>, 676 F.3d 1017, 1021 (11th Cir. 2012) (citations omitted).  We have studied the Florida cases and we disagree with the government's reading of Florida law.  It is true that generally speaking in Florida statutes, the phrase "knowingly or willfully" is the mark of a "general intent" crime, <u>Frey v. State</u>, 708 So. 2d 918, 920 (Fla. 1998), as distinguished from a specific intent crime.  In a Florida general intent crime a defendant must intend to commit the act, not the consequences, but the consequences must nevertheless be

"substantially certain to result."  Reynolds v. State, 784 So. 2d 509, 511 (Fla. Dist. Ct. App. 2001) (citation omitted).[44]

"Substantially certain to result," however, is *not* the standard for felony child abuse, by either the plain language of the Florida statute (an "act that could *reasonably be expected* to result in . . .," Fla. Stat. § 827.03(1) (2003) (emphasis added)) or the Florida Supreme Court's interpretation.  The Florida Supreme Court explained in DuFresne, 826 So. 2d at 278, that under the Florida child abuse statute only the *act* (here the intercourse) needs to be intentional, and that it is sufficient for conviction if that act *reasonably could be expected* to result in mental (not physical) injury.  Id. at 278 ("'[C]hild abuse' includes intentional infliction of mental injury upon a child, as well as *an intentional act that could reasonably be expected to result in mental injury* to a child." (emphasis added)).[45]  Florida does not require that the defendant have intended or even foreseen that consequence. Moreover, a Florida court of appeal has held that under the child abuse statute a defendant need not know that the victim was a minor.  Witt v. State, 780 So. 2d

---

[44] The Florida courts still use that "substantially certain to result" standard.  See, e.g., Pinkney v. State, 74 So. 3d 572, 576 (Fla. Dist. Ct. App. 2011).

[45] In Witt v. State, 780 So. 2d 946, 947 (Fla. Dist. Ct. App. 2001), the Florida District Court of Appeal stated that "[t]he word 'knowingly' is used in [the child abuse statute] to insure that the abuse referred to in [the aggravated child abuse] subsection is knowing and not merely negligent."  In light of the later Florida Supreme Court pronouncement in DuFresne, any ambiguity in Witt's reference to "abuse" must be read to mean that the *act* must be done knowingly, not that the *consequences* of the act must be foreseen.

41

946, 947 (Fla. Dist. Ct. App. 2001).  The irrelevance of knowledge that the victim

is a minor and the foreseeability standard—"reasonably could be expected to result

in . . . injury"—combine strict liability and negligence in the mens rea requirement

for this crime.  See also Munao v. State, 939 So. 2d 125, 129 (Fla. Dist. Ct. App.

2006) ("[I]t appears that the child abuse statute actually outlaws a result derived

from any act, making the statute applicable to a wide range of acts that cause a

'physical or mental injury upon a child.'").[46]

Thus, what "knowingly or willfully" adds to the mens rea of Spencer's

conviction is that Spencer had to intend the sexual intercourse, but *not* that Spencer

intended or foresaw injury of any kind or knew that the victim was a minor.  This

very limited mens rea makes Spencer's third degree felony child abuse conviction

directly "akin to" a strict liability or negligence crime in the language of Sykes and

Chitwood.[47]  After Begay and Sykes, for that crime to be a crime of violence it

must involve purposeful, violent, and aggressive conduct similar in kind to

burglary, arson, extortion, and use of explosives.  Although sexual activity with a

minor may still meet the requirement of a serious potential risk of physical injury,

---

[46] And the federal sentencing judge found consent to be irrelevant (legally impossible because of age).

[47] For statutory rape, age is considered "the critical element of the offense."  2 Model Penal Code and Commentaries § 213.1 cmt. 6, at 326 (1980).  It is the disallowance of the defense of reasonable mistake about the critical element of age that results in statutory rape being considered a strict liability crime.  Id.; see also id. § 213.6 cmt. 2, at 413.

it does not meet this <u>Begay</u> requirement even as <u>Chitwood</u> has construed its narrowed scope after <u>Sykes</u>.

This conclusion is consistent with our conclusion in <u>Owens</u>, 672 F.3d at 971-72, that Alabama statutory rape and second degree sodomy do not satisfy the residual clause for a crime of violence.  In <u>Owens</u>, we adhered to our earlier precedent that those crimes still meet the test of posing "a serious potential risk of physical injury to the victim."  <u>Id.</u> at 972.  But we observed that statutory rape and second degree sodomy have no mens rea requirement and do not allow consent as a defense, that they therefore impose strict liability and that under <u>Begay</u> (even after <u>Sykes</u>) they cannot be said to involve "purposeful, violent and aggressive conduct."  <u>Id.</u>  Likewise in <u>Harris</u>, 608 F.3d at 1230, 1233, we concluded that Florida "sexual battery of a child under sixteen . . . is a crime that presents a serious potential risk of physical injury," but that viewed generically or categorically, it "imposes strict liability and covers such a broad range of conduct, we cannot say that a violation of it typically involves 'purposeful, "violent," and "aggressive" conduct'" (quoting <u>Begay</u>, 553 U.S. at 144-45, 128 S. Ct. at 1586). Consequently, we concluded in <u>Harris</u> that although there was a serious risk of physical injury in a Florida sexual battery conviction involving a minor, it was not a crime of violence under the residual clause after <u>Begay</u>.  (The Florida statute under which Harris was convicted, lewd or lascivious sexual battery of a child

43

under the age of 16, was an earlier version of the statute under which Spencer was charged.  But as we have recounted, Spencer ultimately pleaded guilty to the lesser offense of third degree felony child abuse.)

Thus, the "knowingly and willfully" phrase in the statute does not salvage the crime-of-violence determination, and Sykes does not alter Begay's change in the controlling law that, contrary to Spencer I, this conviction does not qualify as a crime of violence.  Rozier does not prevent our review.

### Conclusion

At age 18 in 2004, Kevin Spencer received one year in the county jail from the Florida court for three crimes, including a 2003 drug trafficking offense committed when he was 17 and sexual intercourse with a 14-year-old when he was 18.  As a result of that single disposition of the two enumerated crimes he was categorized as a federal career offender at his 2007 federal sentencing for distributing 5.5 grams of crack, and he then received 151 months in federal prison, double the sentence otherwise applicable.  At the time, this court's precedents treated any sexual offense against a minor as automatically a crime of violence.  But as a result of the intervening Supreme Court cases of Begay and Sykes, that is no longer the controlling law.  Under controlling law, the record does not permit the conclusion that Spencer's Florida conviction for third degree felony child abuse was a crime of violence.  Spencer challenged the crime-of-violence determination

44

at sentencing, on appeal, and in this timely-filed first section 2255 motion.  Under these circumstances, we conclude that categorizing Spencer as a career offender amounts to a violation of the laws of the United States in a way that is a fundamental defect that "inherently results in a complete miscarriage of justice" and "present(s) exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  Davis, 417 U.S. at 346, 94 S. Ct. at 2305 (citation omitted).  We therefore VACATE the district court's order that denied relief under section 2255.  We REMAND with instructions to resentence the defendant without treating his Florida conviction for third degree felony child abuse as a crime of violence.

# ADDENDUM B

Table of Career Offender Status
Determinations By District Courts In The
Eleventh Circuit Between 2006 and 2012
(Compiled Based On Data Provided By the
United States Sentencing Commission)

**DEFENDANTS WHO RECEIVED CAREER OFFENDER STATUS UNDER 4B1.1 IN THE 11TH CIRCUIT BY DISTRICT AND FISCAL YEAR**

| | | 2006 | | 2007 | | 2008 | | 2009 | | 2010 | | 2011 | | 2012 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Count | % | Count | % | Count | % | Count | % | Count | % | Count | % | Count | % |
| Eleventh Circuit | Alabama, Middle | 6 | 1.9% | 1 | .3% | 5 | 1.7% | 3 | 1.0% | 6 | 2.2% | 1 | .4% | 3 | 1.2% |
| | Alabama, Northern | 14 | 4.5% | 12 | 3.7% | 12 | 4.1% | 16 | 5.5% | 13 | 4.7% | 10 | 4.2% | 15 | 6.2% |
| | Alabama, Southern | 6 | 1.9% | 6 | 1.9% | 7 | 2.4% | 10 | 3.4% | 12 | 4.3% | 7 | 2.9% | 9 | 3.7% |
| | Florida, Middle | 102 | 32.7% | 97 | 30.2% | 79 | 27.1% | 85 | 29.3% | 74 | 26.5% | 65 | 27.1% | 67 | 27.7% |
| | Florida, Northern | 29 | 9.3% | 39 | 12.1% | 29 | 10.0% | 32 | 11.0% | 23 | 8.2% | 23 | 9.6% | 26 | 10.7% |
| | Florida, Southern | 88 | 28.2% | 114 | 35.5% | 90 | 30.9% | 85 | 29.3% | 74 | 26.5% | 68 | 28.3% | 71 | 29.3% |
| | Georgia, Middle | 28 | 9.0% | 26 | 8.1% | 30 | 10.3% | 12 | 4.1% | 19 | 6.8% | 19 | 7.9% | 15 | 6.2% |
| | Georgia, Northern | 23 | 7.4% | 14 | 4.4% | 12 | 4.1% | 21 | 7.2% | 25 | 9.0% | 23 | 9.6% | 18 | 7.4% |
| | Georgia, Southern | 16 | 5.1% | 12 | 3.7% | 27 | 9.3% | 26 | 9.0% | 33 | 11.8% | 24 | 10.0% | 18 | 7.4% |
| | Total | 312 | 100.0% | 321 | 100.0% | 291 | 100.0% | 290 | 100.0% | 279 | 100.0% | 240 | 100.0% | 242 | 100.0% |

Source: Table prepared by the Office of Policy and Legislation, Criminal Division, from data provided by the U.S. Sentencing Commission.