No. 10-10676

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————

KEVIN SPENCER,
*Petitioner-Appellant,*

— v. —

UNITED STATES OF AMERICA,
*Respondent-Appellee.*

————————————

On Appeal from a Final Judgment of the
United States District Court for the Middle District of Florida
Case No. 3:08-cv-00914

BRIEF OF THE NATIONAL ASSOCIATION
OF CRIMINAL DEFENSE LAWYERS
AS *AMICUS CURIAE* IN SUPPORT OF
PETITIONER-APPELLANT KEVIN SPENCER

Eugene R. Fidell
  *Yale Law School*
  *Supreme Court Clinic*
  *127 Wall Street*
  *New Haven, CT 06511*
  *(203) 432-4992*

Andrew J. Pincus
Charles A. Rothfeld
Michael B. Kimberly*
Paul W. Hughes
  *Mayer Brown LLP*
  *1999 K Street NW*
  *Washington, DC 20006*
  *(202) 263-3127*
  *mkimberly@mayerbrown.com*

  * *lead counsel*

*Counsel for The National Association
of Criminal Defense Lawyers*

**No. 10-10676**

**SPENCER v. UNITED STATES**

_____

**CORPORATE DISCLOSURE STATEMENT**

The National Association of Criminal Defense Lawyers is a non-profit corporation that does not issue stock or have a parent corporation.

**CERTIFICATE OF INTERESTED PERSONS**

In addition to the persons previously identified as having an interest in the outcome of this appeal, the National Association of Criminal Defense Lawyers identifies the following individuals:

Eugene R. Fidell

Paul W. Hughes

Michael B. Kimberly

Andrew J. Pincus

Charles A. Rothfeld

Donald F. Samuel

# TABLE OF CONTENTS

Table of Citations ...................................................................................... ii

Interest of the *Amici* ...............................................................................1

Introduction & Statement of the Issues ...................................................1

Summary of the Argument ........................................................................6

Argument ...................................................................................................9

I.  Erroneous application of a career offender enhancement is
    a fundamental defect cognizable under Section 2255 ..................... 10

    A.  Mistaken application of a career offender enhancement
        results in a miscarriage of justice .............................................. 10

    B.  Practical considerations favor the panel's opinion ................... 16

II. *Begay* applies retroactively to a Section 2255 petition
    alleging an erroneous career offender enhancement ...................... 23

Conclusion ............................................................................................ 29

## TABLE OF CITATIONS

### Cases

*Barber v. Thomas,*
  560 U.S. 474 (2010)..........................................................................22

*United States v. Barrington,*
  648 F.3d 1178 (11th Cir. 2011) ......................................................24

*Begay v. United States,*
  553 U.S. 137 (2008)..................................................................*passim*

*United States v. Booker,*
  543 U.S. 220 (2005)............................................................................7

*Bryant v. Warden, FCC Coleman-Medium,*
  738 F.3d 1253 (11th Cir. 2013) ....................................23, 24, 27, 29

*Buford v. United States,*
  532 U.S. 59 (2001)............................................................................14

*Chaidez v. United States,*
  133 S. Ct. 1103 (2013) .....................................................................23

*United States v. Chitwood,*
  676 F.3d 971 (11th Cir. 2012) ...........................................................5

*Davis v. United States,*
  417 U.S. 333 (1974)............................................................................2

*United States v. Ellisor,*
  522 F.3d 1255 (11th Cir. 2008) .......................................................24

*Freeman v. United States,*
  131 S. Ct. 2685 (2011) .....................................................................11

*Gall v. United States,*
  552 U.S. 38 (2007)............................................................................10

*Gilbert v. United States,*
  609 F.3d 1159 (11th Cir. 2010) .......................................................28

# Cases—continued

*Gilbert v. United States,*
  640 F.3d 1293 (11th Cir. 2011) (en banc) .......................... 16, 21, 22

*Hawkins v. United States,*
  706 F.3d 820 (7th Cir. 2013) ...................................................... 6, 17

*Hawkins v. United States,*
  724 F.3d 915 (7th Cir. 2013) ........................................ 13, 18, 25, 27

*Hawkins v. United States,*
  725 F.3d 680 (7th Cir. 2013) ............................................................ 6

*United States v. Hill,*
  643 F.3d 807 (11th Cir. 2011) ...................................................... 15

*United States v. Hunt,*
  459 F.3d 1180 (11th Cir. 2006) .................................................... 15

*United States v. Irey,*
  612 F.3d 1160 (11th Cir. 2010) (en banc) ................................ 12, 15

*United States v. Ivory,*
  475 F.3d 1232 (11th Cir. 2007) ...................................................... 4

*Johnson v. United States,*
  544 U.S. 295 (2005) ...................................................................... 16

*Kimbrough v. United States,*
  552 U.S. 85 (2007) ........................................................................ 21

*United States v. LaBonte,*
  520 U.S. 751 (1997) ...................................................................... 13

*Landgraf v. USI Film Prods.,*
  511 U.S. 244 (1994) ................................................................ 26, 27

*United States v. McQueen,*
  727 F.3d 1144 (11th Cir. 2013) ................................................ 11, 21

*In re Morgan,*
  717 F.3d 1186 (11th Cir. 2013) ............................................ 24, 25, 28

**Cases—continued**

*Narvaez v. United States,*
674 F.3d 621 (7th Cir. 2011) .......................................................14, 29

*United States v. Palomino Garcia,*
606 F.3d 1317 (11th Cir. 2010) .......................................................25

*Pataki v. N.Y. State Assembly,*
824 N.E.2d 898 (N.Y. 2004)............................................................18

*Perodeau v. City of Hartford,*
792 A.2d 752 (Conn. 2002) .............................................................18

*Peugh v. United States,*
133 S. Ct. 2072, 2084 (2013) ...................................................*passim*

*Sanders v. United States,*
373 U.S. 1 (1963)............................................................................2

*Schriro v. Summerlin,*
542 U.S. 348 (2004)..........................................................23, 26, 28

*Shepard v. United States,*
544 U.S. 13 (2005)...........................................................................20

*United States v. Spencer,*
271 F. App'x 977 (11th Cir. 2008)....................................................4

*Spencer v. United States,*
2010 WL 107686 (M.D. Fla. 2010) ...................................................5

*Spencer v. United States,*
727 F.3d 1076 (11th Cir. 2013) ...............................................*passim*

*Sun Bear v. United States,*
644 F.3d 700 (8th Cir. 2011) (en banc) .............................................6

*Sun Oil Co. v. Wortman,*
486 U.S. 717 (1988)........................................................................24

*Teague v. Lane,*
489 U.S. 288 (1989).......................................................................23

## Cases—continued

*Whiteside v. United States,*
   2014 WL 1364019 (4th Cir. 2014)...........................................*passim*

*Whorton v. Bockting,*
   549 U.S. 406 (2007).......................................................................29

## Statutes

18 U.S.C. § 924(e)(2)(B).................................................................. 4, 16

21 U.S.C. § 841(a) ...............................................................................3

21 U.S.C. § 841(b)(1)(C)......................................................................3

28 U.S.C. § 994(h)..........................................................................2, 13

28 U.S.C. § 2254 ...............................................................................19

28 U.S.C. § 2255 .......................................................................*passim*

28 U.S.C. § 2255(a) ..........................................................................2, 5

Fla. Stat. § 800.04(4) ..........................................................................3

Fla. Stat. § 827.03.................................................................................3

## U.S. Sentencing Guidelines

U.S.S.G. § 1B1.1(a) ...........................................................................25

U.S.S.G. § 1B1.3 ................................................................................25

U.S.S.G. § 2B1.1(b)(1)........................................................................17

U.S.S.G. § 2K1.3(a)(5) .......................................................................26

U.S.S.G. § 2X2.1 ................................................................................26

U.S.S.G. § 4B1.1 .......................................................................*passim*

U.S.S.G. § 4B1.2 ..................................................................................5

## U.S. Sentencing Guidelines—continued

U.S.S.G. § 5K1.1 ................................................................... 7, 11

U.S.S.G. § 5K3.1 ................................................................... 7, 11

U.S.S.G. § 6A1.1 ..................................................................... 25

U.S.S.G. § 6A1.4 ..................................................................... 25

## Other Authorities

*2013 Sourcebook of Federal Sentencing Statistics,*
    Table 14 (http://perma.cc/7DM2-8FG3) ..................................... 3, 14

*2013 Sourcebook of Federal Sentencing Statistics,*
    Fig. G (http://perma.cc/G8DX-LZ4H) .............................................. 11

Sarah French Russell, *Reluctance to Resentence:*
    *Courts, Congress, and Collateral Review,*
    91 N.C. L. Rev. 79 (2012) ............................................................ 19-21

## INTEREST OF THE *AMICI*

The National Association of Criminal Defense Lawyers (NACDL) is nonprofit professional bar association that represents the Nation's criminal defense attorneys. Its mission is to promote the proper and fair administration of criminal justice and to ensure justice and due process for those accused of crime or misconduct.[1]

## INTRODUCTION & STATEMENT OF THE ISSUES

Do the federal courts have the power to grant habeas corpus relief to a man sentenced to almost *thirteen* years in prison, when we now know, in light of an intervening change in Supreme Court case law, that a substantively reasonable sentence would have been just *six* years? The answer to that question turns, in this case, on two subsidiary questions: (1) whether erroneous application of a career offender Guideline enhancement is a "fundamental defect" cognizable under Section 2255; and (2) whether the Supreme Court's holding in *Begay v. United States*, 553 U.S. 137 (2008), applies retroactively to a Section 2255 petition alleging an erroneous career offender Guideline enhancement. The panel answered both questions affirmatively; that decision should be upheld.

---

[1]   The source of NACDL's authority to file this brief is the accompanying unopposed motion for leave. No party's counsel authored this brief in whole or in part. No party, party's counsel, or other person contributed money to fund the preparation or submission of this brief.

1. Section 2255 permits a federal prisoner to petition for release "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Although all constitutional errors are cognizable under Section 2255, not all non-constitutional errors are. Instead, only those amounting to "a fundamental defect which inherently results in a complete miscarriage of justice" will do, "where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis v. United States*, 417 U.S. 333, 346 (1974). Under the law-of-the-case doctrine, moreover, a Section 2255 petitioner may raise a legal issue previously decided against him in a direct appeal from his conviction only when there has been "an intervening change in the law" with retroactive application to collateral attacks. *Id*. at 342 (quoting *Sanders v. United States*, 373 U.S. 1, 17 (1963)).

2. Congress has directed the United States Sentencing Commission to "assure" that the federal Sentencing Guidelines recommend a sentence "at or near the maximum term authorized" for any offender over the age of eighteen convicted of a drug trafficking offense or a crime of violence, who has two prior felony convictions for drug trafficking offenses or crimes of violence. 28 U.S.C. § 994(h).

Pursuant to that directive, the Commission promulgated U.S.S.G. § 4B1.1, known as the career offender enhancement. Anyone to whom

Section 4B1.1 applies is automatically placed in the highest of six criminal history categories and is subject to a substantially enhanced offense level. The net result is that a "career offender" typically receives double the sentence of a defendant who commits the same crime under the same circumstances, but is not subject to the "career offender" enhancement. *See 2013 Sourcebook of Federal Sentencing Statistics*, Table 14 (http://-perma.cc/7DM2-8FG3).

3. When Kevin Spencer was seventeen, he was charged and convicted of possession with intent to sell cocaine. PSR ¶ 25, 29, 32. Less than a year later, at the age of eighteen, Spencer had consensual sex with a fourteen-year-old girl; the girl initiated the encounter and told Spencer that she was eighteen. *See* Dist. Ct. Dkt. 14, at ¶¶ 2, 3. (Feb. 4, 2009) (Decl. of Olivia Fosmire). Spencer was nevertheless charged with lewd and lascivious assault on a child (Fla. Stat. § 800.04(4)), a strict liability crime. He later pleaded guilty to the lesser offence of felony child abuse (Fla. Stat. § 827.03)) for "engag[ing] in sexual activity with a minor." Spencer Initial Br., App. 3, at 9 (hearing transcript). He served one year in county jail, concurrently for both convictions. *Id*. App. 2, at 4.

Some time later, Spencer sold 5.5 grams of crack cocaine to a police informant for $20. PSR ¶ 8. He was indicted for and pleaded guilty to distributing a controlled substance, in violation of 21 U.S.C. § 841(a), for

which the statutory maximum term of imprisonment is 20 years. *See* 21 U.S.C. § 841(b)(1)(C). All else being equal, Spencer would have been sentenced in reference to a Guidelines range of 70-87 months. PSR ¶¶ 24, 37, 39. But he was deemed to be a career offender because his conviction at age 18 for "sexual activity with a minor" was then classified by this Court as a "crime of violence." *See United States v. Ivory*, 475 F.3d 1232, 1238 (11th Cir. 2007) (per curiam). The career offender enhancement more than doubled his Guidelines range, to 151-188 months. PSR ¶ 66. The judge sentenced him at the bottom of that range, to 151 months.

3. Spencer contested the classification of his child abuse conviction as a "crime of violence" both at sentencing and on appeal, but the district court rejected the argument, and this Court affirmed the sentence on April 1, 2008. *United States v. Spencer*, 271  F. App'x 977 (11th Cir. 2008).

Just two weeks later, the Supreme Court decided *Begay v. United States*, 553 U.S. 137 (2008). There, the Court held that the words "violent felony" appearing in the Armed Career Criminal Act (18 U.S.C. § 924-(e)(2)(B)) refer only to crimes committed in "a purposeful, violent, and aggressive manner." 553 U.S. at 145. They do *not* cover, according to the Supreme Court, "crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." *Id*. Crucially, because the "definition of 'crime of violence'" under the

4

Guidelines and the "ACCA's definition of 'violent felony'" are "substantially the same," this and all other federal courts "rely on cases interpreting the . . . Armed Career Criminal Act" "[i]n determining whether a conviction is a crime of violence under U.S.S.G. § 4B1.2." *United States v. Chitwood*, 676 F.3d 971, 975 n.2 (11th Cir. 2012).

Spencer accordingly filed a timely petition for habeas corpus, arguing that his enhanced sentence "was imposed in violation of the . . . laws of the United States" (28 U.S.C. § 2255(a)) insofar as the record does not permit the conclusion that his Florida conviction for felony child abuse was a crime of violence. Misconstruing the petition as raising claims exclusively of ineffective assistance of counsel, the district court denied the petition. *Spencer v. United States*, 2010 WL 107686 (M.D. Fla. 2010).

This Court granted a certificate of appealability, vacated the order denying relief, and remanded for resentencing. *Spencer v. United States*, 727 F.3d 1076 (11th Cir. 2013). In explaining its decision, the panel held that an erroneous application of the career offender enhancement is a "fundamental defect" resulting in "a complete miscarriage of justice," cognizable in a Section 2255 petition for habeas corpus. *Id.* at 1087-1091. It also held that *Begay* constitutes a new substantive rule that applies retroactively to habeas petitions asserting unjustified career offender enhancements. *Id.* at 1096.

In the interim, the Fourth Circuit decided *Whiteside v. United States*, 2014 WL 1364019 (4th Cir. 2014), in which it reached the same conclusions as the panel here. Nevertheless, *Whiteside* and the panel's decision arguably conflict with binding decisions of the Seventh and Eighth Circuits. *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013); *Sun Bear v. United States*, 644 F.3d 700 (8th Cir. 2011) (en banc).

Fourteen judges have written or joined published appellate opinions calling for relief for habeas petitioners like Spencer,[2] while nine others have written or joined opinions reaching the opposite conclusion.[3] At bottom, this judicial schism reflects differing views concerning the oft-competing demands of finality and fairness. With due respect to finality, fairness should prevail here.

## SUMMARY OF THE ARGUMENT

The panel was correct to hold that an erroneous application of the career offender enhancement is a fundamental defect resulting in a

---

[2]  *See Whiteside*, 2014 WL 1364019 (Gregory, J., joined by Davis, J.); *Spencer*, 727 F.3d at 1081-1100 (Hornby, J., joined by Jordan & Kravitch, J.J.); *Hawkins v. United States*, 725 F.3d 680, 680 (7th Cir. 2013) (Rovner, J., joined by Wood, Williams, & Hamilton, JJ., dissenting from denial of rehearing en banc); *Sun Bear*, 644 F.3d at 707-712 (Melloy, J., joined by Murphy, Bye, Smith, & Shepherd, JJ., dissenting).

[3]  *See Whiteside*, 2014 WL 1364019, at *12-27 (Wilkinson, J., dissenting); *Hawkins*, 706 F.3d at 286 (Posner, J., joined by Kanne, J.); *Sun Bear*, 644 F.3d at 701-706 (Loken, J., joined by Riley, C.J., and Wollman, Colloton, Gruender, & Benton, JJ.).

complete miscarriage of justice, and that *Begay* applies retroactively to Guidelines cases like this one. Its decision should be upheld in full.

**I.**  A non-constitutional error is cognizable in a Section 2255 petition for habeas corpus when it amounts to a fundamental defect resulting in a complete miscarriage of justice, where the need for habeas relief is apparent. Incorrect application of the criminal offender enhancement is just such an error.

**A.** Because the Guidelines are the lodestone of sentencing, district courts almost always impose a sentence within the Guidelines range. This observation is borne out by the government's own data: In every year following *United States v. Booker*, 543 U.S. 220 (2005), more than 80 percent of federal sentences have fallen either within their Guidelines ranges or below their ranges based upon government-sponsored departures under Sections 5K1.1 or 5K3.1.

And as the Supreme Court confirmed in *Peugh v. United States*, 133 S. Ct. 2072 (2013), the Guidelines are so significant in the federal sentencing scheme that a sentence predicated upon the *incorrect* Guidelines range can violate fundamental fairness. That is so even though the Guidelines are only advisory, and even though a Guidelines error does not increase the statutory maximum sentence for which a defendant is eligible.

7

**B.** Concern for finality provides no basis for concluding otherwise. For one thing, the government is wrong that there is no principled basis for distinguishing erroneous application of Section 4B1.1 from the mine run of Guidelines errors. The career criminal enhancement is unique in its reference—as the congressionally mandated starting point—to the maximum sentence authorized by statute. It also is unique in its invariably potency. No other Guidelines rules share these characteristics.

Beyond that, the traditional rationales that underlie judicial concern for finality simply are not applicable here. Even if they were, finality must be weighed in this case not only against general concerns for fairness, but also against Congress's express objective in the Sentencing Reform Act to achieve uniformity in sentencing for similarly situated prisoners.

**II.** A Section 2255 petitioner may raise a legal issue previously decided against him in a direct appeal from his conviction when there has been an intervening change in the substantive law, with retroactive application to collateral attacks.

*Begay* marks a change in substantive law, even as applied to Guidelines cases. That is because proper application of the *Begay* rule to sentences not otherwise subject to the career offender enhancement directly "alters" the Guidelines range, which is the benchmark in the federal sentencing scheme. The substantive nature of the career offender

8

enhancement is once again confirmed by the Supreme Court's decision in *Peugh*. Only *substantive* rules are limited by the *Ex Post Facto* Clause; in holding that retroactive application of the Guidelines violates the Clause, therefore, the Court necessarily held that the elements of the Guidelines rules that dictate sentencing ranges are *substantive*. That an error in the Guidelines calculation renders a sentence "procedurally unreasonable" on direct appeal changes nothing—it means only that an error in the Guidelines calculation is a *per se* reversible procedural error, regardless whether the it is *also* is substantive error.

Beyond that, declining to apply *Begay* retroactively creates a class of prisoners who are excluded from the benefit of sentence reductions under Amendment 706 to the Guidelines, concerning crack cocaine. Rules that necessarily affect the fairness of sentencing proceedings and that create whole classes of prisoners unjustly subject to continued imprisonment, is the exact definition of a substantive rule.

## ARGUMENT

The question presented here is whether the district court's erroneous application of the Guidelines' career offender enhancement was a "fundamental defect" resulting in "a complete miscarriage of justice," as established by a retroactively-applicable intervening decision of the Supreme Court. As we demonstrate below, *it was*.

9

I. **ERRONEOUS APPLICATION OF A CAREER OFFENDER ENHANCEMENT IS A FUNDAMENTAL DEFECT COGNIZABLE UNDER SECTION 2255**

A. **Mistaken application of a career offender enhancement results in a miscarriage of justice**

In the government's view, the erroneous application of a career offender enhancement under U.S.S.G. § 4B1.1 is a typical "advisory guidelines calculation error." Gov't Petn. 7. Such errors cannot constitute a miscarriage of justice, according to the government, because they do not "limit[] the district court's discretion" to sentence a prisoner to a lesser term of imprisonment. *Id*. Conversely, the government explains, correction of the district court's error in this particular case would not "affect Spencer's eligibility to receive [an] identical sentence today" to the one he received in 2007. *Id*. at 8.

That may be so, but it misses the point: Because "the Guidelines [are] the lodestone of sentencing," their misapplication can (and in cases like this one, *do*) violate the "basic principles of fairness." *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013).

1. "The post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Peugh*, 133 S. Ct. at 2083. Accordingly, "district courts *must* begin their analysis with the Guidelines and remain cognizant

10

of them throughout the sentencing process." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007)). In this way, "the Guidelines are in a real sense the basis for [a federal] sentence." *Id.* (emphasis omitted) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011)).

As an empirical matter, the Guidelines have achieved the uniformity that Congress set out to create. It is now well-documented that district courts "usual[ly] . . . impose a sentence within the [Guidelines] range." *Peugh*, 133 S. Ct. at 2083 (quoting *Freeman*, 131 S.Ct. at 2692). In fact, in every year post-*Booker*, more than 80 percent of federal sentences have fallen either within their Guidelines ranges or below their ranges based upon government-sponsored departures under Sections 5K1.1 or 5K3.1. *See 2013 Sourcebook of Federal Sentencing Statistics*, Fig. G (http://-perma.cc/G8DX-LZ4H).

That district courts so often comply with the Guidelines ranges is unsurprising—not only because "the Guidelines range [is] the [mandatory] starting point in the [sentencing] analysis," but because "the post-*Booker* sentencing regime puts in place procedural 'hurdles' that" discourage district courts from deviating from Guidelines ranges and, "in practice, make the imposition of a non-Guidelines sentence less likely." *Peugh*, 133 S. Ct. at 2083-2084. Thus, "[w]hile the Guidelines range is advisory, 'consideration of the advisory guidelines range is,'" to say the least, "'impor-

tant.'" *United States v. McQueen*, 727 F.3d 1144, 1159 (11th Cir. 2013) (quoting *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc)). As the panel put it, "[t]he Guidelines are," in fact, at "the heart of the substantive law of federal sentencing." *Spencer*, 727 F.3d at 1087.

It was against this backdrop that the Supreme Court recently held in *Peugh* that, to apply a harsher version of the Guidelines than prevailed at the time a prisoner committed his crime, violates the "basic principles of fairness that animate the *Ex Post Facto* Clause." 133 S. Ct. at 2084. The government dismisses *Peugh* in a footnote, asserting simply that its holding "does not imply that a nonconstitutional error in calculating the advisory guidelines range is cognizable on collateral review." Gov't Petn. 10 n.2. That is manifestly incorrect.

*Peugh*'s relevance to the question presented here is undeniable: The Guidelines are so central to the federal sentencing scheme, the Supreme Court reasoned, that a sentence predicated upon the wrong Guidelines range *can* violate "fundamental fairness." *Peugh*, 133 S. Ct. at 2085. That is so even though the sentencing judge "exercises some measure of discretion" in deciding the sentence imposed, and even though the Guidelines error does not "increase the maximum sentence for which a defendant is eligible." *Id. See also Whiteside*, 2014 WL 1364019, at *10 ("[t]he mere fact that [a] sentence [is] beneath the statutory maximum

does not" mean that Guidelines error cannot work a "fundamental unfairness"). *See generally Hawkins v. United States*, 724 F.3d 915, 919-921 (Rovner, J., dissenting from denial of rehearing) (discussing *Peugh*'s relevant to the question presented). *Peugh* thus rejected the premises on which the government relies here.

2. In light of the central importance of the Guidelines to the federal sentencing scheme, there can be little doubt that a mistaken application of the career offender enhancement is a fundamental error resulting in a complete miscarriage of justice.

Among Guidelines enhancements, the career offender rule has no equal. For starters, "Congress directed the Commission to 'assure' that for adult offenders who commit their third felony drug offense or crime of violence, the Guidelines prescribe a sentence of imprisonment 'at or near the maximum term authorized.'" *United States v. LaBonte*, 520 U.S. 751, 757 (1997) (quoting 28 U.S.C. § 994(h)). Thus it is Congress itself that directed the Commission (and through the Commission, the district courts) to begin the sentencing analysis for career offenders at or near the highest possible term allowed by law. While it may be true, therefore, that an "ordinary misapplication of the guidelines does not amount to a miscarriage of justice," an erroneous application of the career offender enhancement is "something more fundamental." *Whiteside*, 2014 WL 1364019, at *6.

13

The special status of the career offender enhancement is no mere formalism. It "brand[s]" a prisoner "a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who ha[s] committed the same offense," and it "create[s] a legal presumption that [the prisoner should] be treated differently from other offenders because he belong[s] in a special category reserved for the violent and incorrigible." *Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011). Thus, it imposes a "particularly severe punishment" (*Buford v. United States*, 532 U.S. 59, 60 (2001)) that is "far from ordinary" (*Whiteside*, 2014 WL 1364019, at *9).

The resulting impact is real and measurable. According to the Commission, prisoners sentenced as career offenders receive sentences that, on average, are nearly *double* the sentences of prisoners with the *same* criminal history category but not subject to the enhancement. *See 2013 Sourcebook of Federal Sentencing Statistics*, Table 14.

This case is no exception. "[T]he sentencing judge told Spencer that [his] career offender designation essentially doubled his sentence to 151 months" from a non-enhanced range of 70 to 87 months. *Spencer*, 727 F.3d at 1089. There is therefore no serious question that that Spencer and others like him, erroneously subject to the career offender enhancement, are serving substantially longer sentences and are subject to far greater

14

stigma, than the law contemplates they should be. It is hard to imagine a "clear[er] injustice." *Whiteside*, 2014 WL 1364019, at *11.

3. In response, the government asserts that the question "[w]hether or not the sentencing judge would have imposed the same sentence [absent the erroneous enhancement] is beside the point" because the "inquiry is an objective one that asks whether the court exercising discretion within the same statutory range *could* have reimposed the same sentence, not whether a particular judge *would* have done so." Gov't Petn. 8. But the government tellingly fails to cite a single case for its "objective" inquiry approach—and that is because it cannot.

The fact is, even a sentence that is beneath the statutory maximum can be unlawful. Because *any* sentence may yet reflect "a clear error of judgment," for example, "an appellate court may still overturn" a sentence on the basis that is "substantively unreasonable," even when it is below the statutory maximum—and, indeed, even when it is within the Guidelines range. *Irey*, 612 F.3d at 1188. And apart from substantive unreasonableness, "[a] sentence may be unreasonable if it is the product of a procedure that does not follow *Booker*'s requirements, *regardless of the actual sentence*." *United States v. Hill*, 643 F.3d 807, 880 (11th Cir. 2011) (emphasis added) (quoting *United States v. Hunt*, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006)).

15

That is just as true under Section 2255's "miscarriage of justice" standard of as it is under the standard of review on direct appeal. Again, as *Peugh* makes clear, a sentence predicated upon a miscalculated Guidelines range can violate "fundamental fairness" even when the violation does not "increase the maximum sentence for which a defendant is eligible." *Peugh*, 133 S. Ct. at 2081, 2085. The Supreme Court thought this proposition so obvious that, in *Johnson*, it took for granted that "a defendant given a sentence enhanced [under U.S.S.G. § 4B1.1] for a prior conviction" could "challenge the federal sentence under § 2255" in circumstances similar to those presented here. *Johnson v. United States*, 544 U.S. 295, 303 (2005). The government has no persuasive response to these essential points.[4]

## B.    Practical considerations favor the panel's opinion

As a fallback, the government asserts that there is "no principled basis" for distinguishing between fundamental defects like misapplied

---

[4]   The government is wrong to assert (Gov't Petn. 11) that our argument on this score is "in serious tension" with *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc). In *Gilbert*, this Court commented unremarkably—in dictum in a footnote—that the cognizability of "pure *Begay* errors" in Section 2255 petitions *in Armed Career Criminal Act cases* would turn on whether the defendant was "sentenced to a term of imprisonment that exceeded what would have been the statutory maximum without the error." *Id.* at 1319 n.20 (citing 18 U.S.C. § 924(e)(2)(B)). *Gilbert* did not address the applicability of *Begay* in the very different context of a Guidelines-based career criminal enhancement.

career criminal enhancements, on the one hand; and run-of-the-mill Guidelines errors, on the other. *See* Gov't Petn. 13-14. This perceived inability to draw a "stable" line, the government worries, inevitably will open the floodgates to thousands of new habeas petitions, upending the finality of criminal judgments throughout the circuit. *See, e.g.*, *Hawkins*, 706 F.3d at 823-824. The government's concerns are vastly overblown.

1. As an initial matter, the career criminal enhancement has a clear, defining characteristic that sets it cleanly apart from other enhancements: It is the *only* Guidelines provision that (consistent with Congress's directive) uses the statutory *maximum* as the jumping-off point for the sentencing analysis. It is therefore unique not only in its starting point, but also in its near certainty of producing a far greater sentence than any that could reasonably be imposed absent the enhancement. While it may be true that other "guidelines enhancements have dramatic effects" on sentences (Gov't Petn. 13), none shares these characteristics.[5]

---

[5]   The amount-of-loss enhancement is particularly weak basis for concern about line-drawing problems in future cases. *See* Gov't Petn. 13. The amount-of-loss enhancement is not a binary rule like the career criminal rule, but a graduated enhancement that uses a 15-stage scale. U.S.S.G. § 2B1.1(b)(1). Although it is theoretically conceivable that a prisoner could be erroneously subjected to a 30-level enhancement, it is not especially practical to think that a defendant would be found by a jury to have caused a loss of "[m]ore than $400,000,000," while later showing in a Section 2255 habeas petition that the loss was actually "$5,000 or less." *Id.*

Even if the government were right that drawing a line in this case would necessarily require drawing lines in other cases, that is no basis for rejecting the rule that we advocate. Courts are "in the business of drawing lines; that is what [they] do in [deciding cases]." *Pataki v. N.Y. State Assembly*, 824 N.E.2d 898, 913 (N.Y. 2004) (Rosenblatt, J., concurring). The question is simply whether the Court can "draw lines based on reason and principle." *Perodeau v. City of Hartford*, 792 A.2d 752, 773 (Conn. 2002). As we have shown in *this* case, it can. Particularly given the narrow circumstances in which Section 2255 challenges can be brought, there is little doubt that "[t]he floodgates will hold." *Spencer*, 727 F.3d 1091.

2. More general finality concerns provide no basis for alternative concern. True, "[r]ectifying errors [on habeas review] does indeed cause some amount of delay" in the final resolution of criminal cases. *Hawkins*, 724 F.3d at 923 (Rovner, J., dissenting from denial of rehearing). But questions concerning the scope of habeas corpus *always* implicate "balance between correcting unjust error and finality." *Id*. It does no good to invoke finality in vague terms, as though it were an absolute trump card, without explaining how and why the particular rationales that underlie finality *outweigh* basic concern for fairness and justice in the particular circum-stances presented. The absence of such explanation with respect to the

question presented here comes as no surprise, however, because in this case, finality is a singularly unpersuasive concern.

Courts "often cite concerns about comity and federalism," for example, "when emphasizing the importance of finality of criminal judgments." Sarah French Russell, *Reluctance to Resentence: Courts, Congress, and Collateral Review*, 91 N.C. L. Rev. 79, 146 (2012). But, unlike in Section 2254 cases applicable to state-court convictions, "[c]oncerns about comity and federalism are entirely absent when a federal court reviews its own judgment in a § 2255 proceeding." *Id*.

Proponents of finality also often "point to a concern about preservation of judicial and other resources."  Russel, *supra*, at 146. But on that score, too, "a habeas petition seek[ing] merely a correction of a sentence" presents far "less of a concern about draining resources" because "a court can correct a sentence [relatively] efficiently," and "shortening a sentence means saving money that would otherwise have been spent on incarceration." *Id*.; *see also generally id*. at 146-152 (fuller discussion).

Staleness of evidence, another factor often cited in favor of respecting finality, likewise is of limited relevance here: Section 2255 proceedings "tend to occur [relatively] close[] in time to the original conviction."  Russel, *supra*, at 152. And, in any event, "[w]ith *Begay*-type claims, staleness of evidence is of minimal concern" because a sentencing court

19

may look only to *Shepard*-type "records from a prior court proceeding," which are "set in stone." *Id.*; *cf. Shepard v. United States*, 544 U.S. 13 (2005). Stones don't go stale.

Similarly, concern that lack of finality will "undermine[] . . . deterrence" is "particularly weak in the context of the correction of sentencing errors" because "[s]hortening a sentence will not tell would-be criminals that they might get off scott-free from their criminal act[s]."  Russel, *supra*, at 154.

"[H]arm to victims from a lack of finality" is also "less concerning" with respect to collateral sentencing challenges because, even when they succeed, "the conviction [itself] will still stand," and very often, "the defendant will . . . not be immediately released."  Russel, *supra*, at 155. In any event—with respect to Section 2255—a majority of federal convictions are for victimless crimes like drug and immigration offenses. *Id.*

Nor is the "psychological benefit to society" from finality a compelling consideration here. The dissenting judge in *Whiteside* worried, for example, that permitting challenges like Spencer's here will "reduce[] public confidence in our criminal-justice system" by "keep[ing] convictions and sentences in [perpetual] legal limbo." 2014 WL 1364019, at *25 (Wilkinson, J., dissenting). The precise opposite is true: It does nothing to "build[] confidence in our criminal justice system" to "tell a man he must

20

sit in the penitentiary for years beyond the sentence that a proper application of the law would have imposed." *Gilbert v. United States*, 640 F.3d 1293, 1334 (11th Cir. 2011) (en banc) (Martin, J., dissenting). Simply put, "[m]aking people serve unjust sentences is unlikely to promote [society's] respect for the law." Russel, *supra*, at 154.

Perhaps it is true, at the most general level, "that without finality there can be no justice." *Gilbert*, 640 F.3d at 1337 (Hill, J., dissenting). "But it is equally true that, without justice, finality is nothing more than a bureaucratic achievement." *Id.* In a case like this one, an unexplained resort to ambiguous notions of finality simply "[cannot] outweigh the plain injustice that would result from denying the petitioner what he seeks, which is only a chance to be sentenced according to the factors that everyone agrees should apply." *Whiteside*, 2014 WL 1364019, at *11.

3. One final point bears emphasis. Putting aside finality and fairness for the moment, "it is unquestioned that uniformity remains an important goal of sentencing" and that the courts should strive "to avoid excessive sentencing disparities." *Kimbrough v. United States*, 552 U.S. 85, 107 (2007). It is equally unquestioned that "avoid[ing] unwarranted sentencing disparity" means sentencing "criminal defendants in other cases who were convicted of similar crimes" to *similar sentences. McQueen*, 727 F.3d at 1160.

21

After *Begay*, defendants who committed the same crime as Spencer, under the same circumstances as he, generally would be sentenced to about *half* the term of imprisonment as Spencer received. Allowing Spencer's improperly-enhanced sentence to stand in the name of finality would therefore undermine not only fairness, but also Congress's goal "[w]ith the Sentencing Reform Act . . . to achieve both increased sentencing uniformity and greater honesty by 'mak[ing] all sentences basically determinate.'" *Barber v. Thomas*, 560 U.S. 474, 482 (2010). That alone is as equally compelling a consideration as AEDPA's purpose "to ensure greater finality of state and federal court judgments in criminal cases." *Gilbert*, 640 F.3d at 1311.

In sum, the career offender enhancement is special. It is mandated by statute, refers as a starting point to the statutory maximum, and is uniquely severe in consequence. Indeed, it typically leads to a *doubling* of a prisoner's sentence. Its erroneous application therefore works a complete miscarriage of justice cognizable in a Section 2255 petition for habeas corpus. Recognizing as much does little to offend the animating principles underlying finality, while doing much to protect against fundamental unfairness. The panel was therefore correct to hold that a misapplied career offender enhancement "presents [an] exceptional circumstance[]

where the need for the remedy afforded by the writ of habeas corpus is apparent." *Spencer*, 727 F.3d at 1100.

## II.    *BEGAY* APPLIES RETROACTIVELY TO A SECTION 2255 PETITION ALLEGING AN ERRONEOUS CAREER OFFENDER ENHANCEMENT

The question remains whether *Begay* is retroactively applicable to collateral attacks on mistaken career criminal sentencing enhancements. There are "two exceptions" to the general rule that, when the Supreme Court announces a new rule, "'a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding.'" *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1277 (11th Cir. 2013) (quoting *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013)). *First*, "'[n]ew *substantive* rules generally apply retroactively' on collateral review, including 'decisions that narrow the scope of a criminal statute by interpreting its terms.'" *Bryant*, 738 F.3d at 1277 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (emphasis added)). *Second*, the courts must give "give retroactive effect to . . . watershed rules of criminal *procedure* implicating the fundamental fairness and accuracy of the criminal proceeding." *Schriro*, 542 U.S. at 352 (emphasis in *Schriro*) (quoting *Teague v. Lane*, 489 U.S. 288, 311 (1989)).

What "the terms 'substance' and 'procedure' . . . mean in a particular context is largely determined by the purposes for which the dichotomy is

23

drawn." *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988). In the context of the retroactive applicability of changes in the law to habeas petitions, that purpose is to differentiate those rules that "necessarily carry a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him" (*Bryant*, 738 F.3d at 1277 (emphasis omitted)) from those that regulate "only the manner of determining a defendant's sentence" and thus have only a "speculative connection . . . to the receipt of a lesser sentence" (*In re Morgan*, 717 F.3d 1186, 1189-1190 (11th Cir. 2013) (opinion of Pryor, J.)). Whereas collateral review in light of new *substantive* rules is certain to serve the interests of justice, "it makes sense *not* to require the [courts] to expend resources on . . . new sentencing proceedings every time that the Supreme Court announces a new procedural rule." *Morgan*, 717 F.3d at 1190 (emphasis added).

1. Before explaining why *Begay* in particular represents a substantive change in the law, a point of clarification is warranted. The substantive-procedural distinction in this case is complicated by the framework applicable on direct appellate review of a federal sentence. According to that framework, "a sentence may be reviewed for procedural *or* substantive unreasonableness." *United States v. Barrington*, 648 F.3d 1178, 1194 (11th Cir. 2011) (emphasis added) (quoting *United States v. Ellisor*, 522 F.3d 1255, 1273 (11th Cir. 2008)). And ordinarily, "an error in the Guide-

24

lines calculation renders a sentence *procedurally* unreasonable." *United States v. Palomino Garcia*, 606 F.3d 1317, 1337 (11th Cir. 2010) (emphasis added). *See also Peugh*, 133 S. Ct. at 2080 ("Failure to calculate the correct Guidelines range constitutes procedural error."). That general rule has lead some courts to conclude that any change in the law concerning the Guidelines is necessarily procedural for purposes of Section 2255 retroactivity, as well. *See Hawkins*, 724 F.3d at 917 (opinion of Posner, J.). That is manifestly incorrect.

The Guidelines, which govern every aspect of federal sentencing proceedings, comprise both substantive *and* procedural rules. The procedural elements of the Guidelines are those that, as we have said, regulate "the *manner* of determining a defendant's sentence" (*Morgan*, 717 F.3d at 1196 (emphasis added))—for example, by regulating the order in which sentencing courts must consider the relevant factors (§ 1B1.1(a)), the methods by which they calculate criminal history categories and offense levels (§ 1B1.3)), the minimum contents of presentencing reports (§ 6A1.1), and the type and timing of notice required for departures from the Guidelines range (§ 6A1.4). Judicial decisions construing these provisions, which affect only the *process* by which the Guideline's are applied, constitute procedural rules.

The *substantive* Guidelines rules, by contrast, are those that actually "alter" the Guidelines range to which a particular prisoner is subject. *Schriro*, 542 U.S. at 353. They include, for example, rules setting base offense levels for particular crimes—like the rule that the offense level for unlawful transportation of explosives is twelve (§ 2K1.3(a)(5)) and the level for aiding and abetting is the same as that for the underlying offense (§ 2X2.1). They also include the career criminal enhancement (§ 4B1.1), which increases the offense level and criminal history category for those who have committed two or more drug trafficking offenses or crimes of violence. True, the sentencing ranges that these substantive rules produce are not binding; but they *are* "the lodestone," "anchor," and "benchmark" for all federal sentencing decisions. *Peugh*, 133 S. Ct. at 2083-2084, 2087. To say they are merely procedural is to close one's eyes to reality.

That certain elements of the Guidelines are substantive—and that judicial decisions construing them likewise are substantive—is proven beyond a doubt by *Peugh* itself. It is settled that mere procedural rules do not raise *ex post facto* concerns; only substantive rules do. "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule [is] instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 (1994). Thus "the *Ex Post Facto*

26

Clause" does not prohibit application of "intervening procedural changes even if application of the new rule operate[s] to a defendant's disadvantage in the particular case." *Id.* at 275 n.28. The upshot is clear: Because the Supreme Court held in *Peugh* that retroactive application of the Guidelines *can* violate the *Ex Post Facto* Clause, it necessarily also held that the particular provisions of the Guidelines that dictate sentencing ranges are *substantive*. Their retroactive application would not otherwise violate the Constitution.

Nothing in the standard by which sentences are reviewed on direct appeal suggests otherwise. That an error in the Guidelines calculation renders a sentence "procedurally unreasonable" on direct appeal means only that an error in the Guidelines calculation is a *per se* reversible procedural error, *regardless* whether the resulting sentence *also* is substantively unreasonable. Thus, no matter that "the first *procedural* step any sentencing court must take is to correctly calculate the proper Guidelines range," an incorrect Guideline calculation can *also* lead to a "subsequent substantive error" that is "redressable retroactively." *Hawkins*, 724 F.3d at 922 (Rovner, J., dissenting from denial of rehearing) (emphasis added).

2. This Court already has held that *Begay* announced a retroactively applicable substantive rule, as applied to prisoners convicted under the Armed Career Criminal Act. *See Bryant*, 738 F.3d at 1276-1278. For the

same reasons, *Begay* is a substantive rule retroactively applicable to career offender enhancements under the Guidelines: Proper application of the *Begay* rule to sentences that otherwise would not be subject to the career offender enhancement directly "alters" the presumptively reasonable (*Peugh*, 133 S. Ct. at 2081) Guidelines range.

As we have said, moreover, sentences erroneously enhanced by the career offender rule depart by definition so far from the correct Guidelines range, it virtually *always* will amount to a substantively unreasonable sentence that would be reversed on appeal *as a violation of the law*. That is a "necessar[y]" connection, not a "speculative" one. *Morgan*, 717 F.3d at 1190 (opinion of Pryor, J.). Declining to apply *Begay* retroactively in Guidelines cases thus "necessarily carr[ies] a significant risk that a defendant [will] . . . face[] a punishment that the law cannot impose" (*id.* (quoting *Schriro*, 542 U.S. at 352)), which is the precise definition of a substantive rule.

There is yet further evidence that the error corrected by *Begay* is a substantive one. A prisoner convicted of a cocaine base offense and sentenced as a *non*-career criminal offender "might now be entitled to a two level reduction in his offense level" "under Amendment 706" to the Guidelines. *Gilbert v. United States*, 609 F.3d 1159, 1163, *vacated on grant of rehearing en banc*, 625 F.3d 716 (11th Cir. 2010). But a prisoner convicted

28

of the same crime and erroneously sentenced as a career offender is not. *Id*. Thus, sentences improperly enhanced by the career offender rule create a "class of persons" (*Bryant*, 738 F.3d at 1277) who not only have been unlawfully branded "malefactor[s] deserving of far greater punishment," and wrongfully placed in "a special category reserved for the violent and incorrigible" (*Narvaez*, 674 F.3d at 629), but also are categorically excepted from entitlement to the benefit of changes to the Guidelines like Amendment 706. That, too, indicates that *Begay* is substantive.[6]

## CONCLUSION

The panel's opinion should be upheld, the order dismissing Spencer's habeas petition should be vacated, and the case should be remanded for resentencing in light of *Begay*.

---

[6] Even if *Begay* were merely procedural, it *still* would apply retroactively as a watershed rule. "In order to qualify as watershed," a new procedural rule "must be necessary to prevent 'an impermissibly large risk'" of unlawful confinement and "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007). Both of those conditions are met here. The *Begay* rule is not merely a rule "aimed at improving the accuracy of trial" or "directed toward the enhancement of reliability and accuracy in some [general] sense." *Id*. Rather, refusal to apply *Begay* retroactively creates "an impermissibly large risk" that a prisoner will serve a substantively unreasonable—that is, unlawfully excessive—term of confinement. *Id*. *Begay* certainly also is "essential to the fairness" of the sentencing process. *See supra*, at 10-16.

April 21, 2014                    Respectfully submitted,

                                 /s/ *Michael Kimberly*

Andrew J. Pincus
Charles A. Rothfeld
Michael B. Kimberly
Paul W. Hughes
    *Mayer Brown LLP*
    *1999 K Street NW*
    *Washington, DC 20006*
    *(202) 263-3000*

Eugene R. Fidell
    *Yale Law School*
    *Supreme Court Clinic*
    *127 Wall Street*
    *New Haven, CT 06511*
    *(203) 432-4992*

*Counsel for the National Association
of Criminal Defense Lawyers*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 29(c)(7), the under-signed counsel for the *amicus curiae* certifies that this brief:

(i)    complies with the type-volume limitation of Appellate Rule 29(d) because it contains 6,649 words, including footnotes and excluding the parts of the brief exempted by Appellate Rule 32(a)(7)(B)(iii); and

(ii)    complies with the typeface requirements of Appellate Rule 32-(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

*/s/ Michael Kimberly*

## CERTIFICATE OF SERVICE

I certify that that on April 21, 2014, the foregoing brief was served electronically via the Court's CM/ECF system upon all counsel of record.


/s/ *Michael Kimberly*