No. 10-10676-U

IN THE

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT

KEVIN SPENCER,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Middle District of Florida

**SUPPLEMENTAL BRIEF FOR THE UNITED STATES
ON REHEARING EN BANC**

DAVID A. O'NEIL
  *Acting Assistant Attorney General*

A. LEE BENTLEY, III
  *Acting United States Attorney*

DAVID M. BITKOWER
  *Deputy Assistant Attorney General*

DAVID P. RHODES
LINDA JULIN MCNAMARA
  *Assistant U.S. Attorneys*
  *Appellate Division*
  *Middle District of Florida*

MICHAEL A. ROTKER
  *Attorney, Appellate Section*

  *United States Department of Justice*
  *Criminal Division*
  *950 Pennsylvania Avenue NW*
  *Suite 1264*
  *Washington, D.C.  20530*
  *(202) 514-3308*

## No. 10-10676-U

## *Spencer* v. *United States*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1, undersigned counsel hereby certifies that the following persons and parties have an interest in the outcome of this case:

Bentley III, A. Lee, Acting United States Attorney;

Bitkower, David M., Deputy Assistant Attorney General;

Corsemeier, Arnold B., Assistant United States Attorney;

Covington, Virginia M., United States District Judge;

Kimberly, Michael B., counsel for amicus curiae NACDL;

Krutules, Agne, former counsel for Petitioner-Appellant;

Maloy, W. Bruce, appellate counsel for Petitioner-Appellant;

McNamara, Linda Julin, Assistant United States Attorney,

     Deputy Chief, Appellate Division;

O'Neil, David A., Acting Assistant Attorney General;

O'Neill, Robert, former United States Attorney;

Rhodes, David P., Assistant United States Attorney, Chief,

Appellate Division;

Ronca, Peggy Morris, Assistant United States Attorney;

Rotker, Michael A., Attorney, United States Department of

Justice;

Savell, Julie Hackenberry, Assistant United States Attorney;

and

Spencer, Kevin, Petitioner-Appellant.


*Michael A. Rotker*

MICHAEL A. ROTKER
*Attorney*
*United States Department of Justice*

## STATEMENT REGARDING ORAL ARGUMENT

By order dated March 10, 2014, the Court set this case for en banc re-argument on Tuesday, June 24, 2014, in Atlanta, Georgia, and allotted each party 30 minutes of argument time.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . C1-of-2

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . vi

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     Statement Of The Facts . . . . . . . . . . . . . . . . . . . . . .4

    II.    Course Of Proceedings . . . . . . . . . . . . . . . . . . . . . . 4

        A.    Direct Review Proceedings . . . . . . . . . . . . . . . . 4

            1.    The Indictment And Conviction . . . . . . . . 4

            2.    Recidivism Enhancements . . . . . . . . . . . . . 5

            3.    The Sentencing Proceedings . . . . . . . . . . . 8

                a.    The Career Offender Recommendation . . . . . . . . . . . . . . . 8

                b.    Spencer's Objection . . . . . . . . . . . . . 9

                c.    The Sentencing . . . . . . . . . . . . . . . . 10

**Pages**

4.    The Direct Appeal  . . . . . . . . . . . . . . . . . .  11

B.    Collateral Review Proceedings  . . . . . . . . . . . . .  11

1.    The Section 2255 Motion  . . . . . . . . . . . .  11

2.    The Appeal  . . . . . . . . . . . . . . . . . . . . . . . .  12

SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

I.    Claims Alleging The Misapplication Of The
Federal Sentencing Guidelines Are Not
Cognizable Under 28 U.S.C. § 2255(a)  . . . . . . . . . . .  17

A.    Misapplications Of The Advisory
Sentencing Guidelines Do Not Satisfy
Any Of The Enumerated Grounds For
Section 2255 Relief  . . . . . . . . . . . . . . . . . . . . . . .  20

B.    Spencer's Cognizability Arguments Are
Unpersuasive  . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

C.    There Is No Principled Or Workable Basis
For Confining The Rule Spencer Advocates
To Career Offender Errors  . . . . . . . . . . . . . . . .  37

1.    Section 994(h)  . . . . . . . . . . . . . . . . . . . . . .  38

2.    Severity  . . . . . . . . . . . . . . . . . . . . . . . . . .  42

3.    Stigma  . . . . . . . . . . . . . . . . . . . . . . . . . . .  45

**Pages**

4.    Preservation . . . . . . . . . . . . . . . . . . . . . . .  46

II.    Begay Applies Retroactively In ACCA Cases,
Mandatory Guidelines Cases, And Advisory
Guidelines Cases Alike . . . . . . . . . . . . . . . . . . . . . . .  48

A.    *Begay* Is Retroactive In Spencer's Case . . . . . .  49

B.    *Begay* Is Retroactive In Cases That Became
Final Before It Was Decided . . . . . . . . . . . . . . .  51

C.    *Begay*'s Status As A Substantive Rule
Does Not Vary Based On The Nature Of
The Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  55

III.    Spencer's Conviction For Third-Degree Felony
Child Abuse Is Not A Career-Offender Crime
Of Violence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58

A.    Florida's Child Abuse Statute Does Not
Categorically Define A Crime Of Violence . . . .  59

B.    Florida's Felony Child Abuse Statute Is
Textually Divisible And Thus Amenable
To The Modified Categorical Approach . . . . . .  61

C.    The Intervening Change In Law Brought
About By *Descamps* Permits Spencer To
Relitigate His Claim . . . . . . . . . . . . . . . . . . . . .  68

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  71

CERTIFICATES OF COMPLIANCE AND OF SERVICE

-iv-

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Adams* v. *Lankford*,
    788 F.2d 1493 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Almendarez-Torres* v. *United States*,
    523 U.S. 224, 118 S. Ct. 1219 (1998) . . . . . . . . . . . . . . . . . . . . . 5

*Apprendi* v. *New Jersey*,
    530 U.S. 466, 120 S. Ct. 2348 (2000) . . . . . . . . . . . . . . . . . . . . 53

*Auman* v. *United States*,
    67 F.3d 157 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bailey* v. *United States*,
    516 U.S. 137, 116 S. Ct. 501 (1995) . . . . . . . . . . . . . . . . . . . . . 52

*Begay* v. *United States*,
    553 U.S. 137, 128 S. Ct. 1581 (2008) . . . . . . . . . . . . . . . . *passim*

*Blaik* v. *United States*,
    161 F.3d 1341 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 46

*Bousley* v. *United States*,
    523 U.S. 614, 118 S. Ct. 1604 (1998) . . . . . . . . . . . . . . . . . 51, 52

*Bryant* v. *Warden*,
    738 F.3d 1253 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 53, 55

*Burke* v. *United States*,
    152 F.3d 1329 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 18, 48

**Pages**

*Castillo* v. *Sec'y, Florida DOC*,
    722 F.3d 1281, 1290 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . 56

*Chambers* v. *United States*,
    555 U.S. 122, 129 S. Ct. 687 (2009) . . . . . . . . . . . . . . . 54, 55, 56

*Chapman* v. *United States*,
    500 U.S. 453, 111 S. Ct. 1919 (1991) . . . . . . . . . . . . . . . . . . . 33

*Clay* v. *United States*,
    537 U.S. 522, 123 S. Ct. 1072 (2003) . . . . . . . . . . . . . . . . . . . 11

*Clay* v. *United States*,
    260 F.2d 564 (5th Cir. 1958) (per curiam) . . . . . . . . . . . . . . . 18

*Custis* v. *United States*,
    511 U.S. 485, 114 S. Ct. 1732 (1994) . . . . . . . . . . . . . . . . . . . . 5

*Daniels* v. *United States*,
    532 U.S. 374, 121 S. Ct. 1578 (2001) . . . . . . . . . . . . . . . . . . . 48

*Darr* v. *Burford*,
    399 U.S. 200, 70 S. Ct. 587 (1950) . . . . . . . . . . . . . . . . . . . . . 50

*\*Davis* v. *United States*,
    417 U.S. 333 (1974) . . . . . . . . . . . . . . . . . . . . . 19, 35, 36, 52, 67

*Derman* v. *United States*,
    298 F.3d 34 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Descamps* v. *United States*,
    133 S. Ct. 2276 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Pages**

*Edwards* v. *United States*,
    523 U.S. 511, 118 S. Ct. 1475 (1995) . . . . . . . . . . . . . . . . . . . . . 8

*Fay* v. *Noia*,
    372 U.S. 391, 83 S. Ct. 822 (1963) . . . . . . . . . . . . . . . . . . . . . 50

*Felker* v. *Turpin*,
    518 U.S. 651, 116 S. Ct. 2333 (1996) . . . . . . . . . . . . . . . . . . . . 17

*Gall* v. *United States*,
    552 U.S. 38, 128 S. Ct. 586 (2007) . . . . . . . . . . . . . 22, 55, 56, 57

*Gilbert* v. *United States*,
    609 F.3d 1159 (11th Cir. 2010),
    vacated, 625 F.3d 1176 (11th Cir. 2010),
    rev'd, 640 F.3d 1293 (11th Cir. 2011) (en banc) . . . . . . . . . . . 51

*\*Gilbert* v. *United States*,
    640 F.3d 1293 (11th Cir. 2011) (en banc) . . . . . . . . . . . *passim*

*Glover* v. *United States*,
    531 U.S. 198, 121 S. Ct. 696 (2001) . . . . . . . . . . . . . . . . . . . . 43

*Gonzalez* v. *Thaler*,
    132 S. Ct. 641 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Griffith* v. *Kentucky*,
    479 U.S. 314, 107 S. Ct. 708 (1987) . . . . . . . . . . . . . . . . . 15, 49

*\*Hawkins* v. *United States*,
    706 F.3d 820 (7th Cir. 2013),
    as supplemented on denial of
    rehearing, 724 F.3d 915 (7th Cir. 2013) . . . . . . . . . . . . . *passim*

**Pages**

*Hill* v. *United States*,
    368 U.S. 424, 82 S. Ct. 468 (1962) . . . . . . . . . . . . . . . . 19, 20, 24

*James* v. *United States*,
    550 U.S. 192, 127 S. Ct. 1586 (2007) . . . . . . . . . . . . . . . . . . . . 59

*Johnson* v. *Singletary*,
    938 F.2d 1166 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 33

*Johnson* v. *United States*,
    559 U.S. 133, 130 S. Ct. 1265 (2010) . . . . . . . . . . . . . . . . . . . . 54

*Johnson* v. *United States*,
    544 U.S. 295, 125 S. Ct. 1571 (2005) . . . . . . . . . . . . . . . . . 34, 35

*Jones* v. *United States*,
    689 F.3d 621 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 51

*Kimbrough* v. *United States*,
    552 U.S. 85, 128 S. Ct. 558 (2007) . . . . . . . . . . . . . . . . . . . . . 41

*Mackey* v. *Warden*,
    739 F.3d 657 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 55

*McCoy* v. *United States*,
    266 F.3d 1245 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 52

*Mistretta* v. *United States*,
    488 U.S. 361, 109 S. Ct. 647 (1989) . . . . . . . . . . . . . . . . . . . . 21

*Peguero* v. *United States*,
    526 U.S. 23, 119 S. Ct. 961 (1999) . . . . . . . . . . . . . . . . . . . . . 20

**Pages**

*\*Peugh* v. *United States*,
    133 S. Ct. 2072 (2013)  . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 31, 55

*Reed* v. *Farley*,
    512 U.S. 339, 114 S. Ct. 2291 (1994) . . . . . . . . . . . . . . . . 19, 67

*Roper* v. *Simmons*,
    543 U.S. 551, 125 S. Ct. 1183 (2005) . . . . . . . . . . . . . . . . . . 52

*Rozier* v. *United States*,
    701 F.3d 681 (11th Cir. 2012)  . . . . . . . . . . . . . . . . . . . . . 54, 68

*Saffle* v. *Parks*,
    494 U.S. 484, 110 S. Ct. 1257 (1990) . . . . . . . . . . . . . . . . 51, 52

*Salinas* v. *United States*,
    547 U.S. 188, 126 S. Ct. 1675 (2006) (per curiam) . . . . . . . . . . 8

*Schriro* v. *Summerlin*,
    542 U.S. 348, 124 S. Ct. 2519 (2004) . . . . . . . . . . . . . . . . 51, 52

*Schwab* v. *Crosby*,
    451 F.3d 1308 (11th Cir. 2006)  . . . . . . . . . . . . . . . . . . . . . . 35

*Scott* v. *United States*,
    997 F.2d 340 (7th Cir. 1993)  . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Shepard* v. *United States*,
    544 U.S. 13, 125 S. Ct. 1254 (2005) . . . . . . . . . . . . 10, 13 16, 67

*Skilling* v. *United States*,
    561 U.S. 358, 130 S. Ct. 2896 (2010) . . . . . . . . . . . . . . . . . . . 51

**Pages**

*Spencer* v. *United States,*
    727 F.3d 1076 (11th Cir. 2013) . . . . . . . . . . . 13, 25, 66, 67, 68

*Stewart* v. *United States,*
    646 F.3d 856 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 35

*\*Sun Bear* v. *United States,*
    644 F.3d 700 (8th Cir. 2011) (en banc) . . . . . . . . . 25, 30, 37, 52

*Sun Oil Co.* v. *Wortman,*
    486 U.S. 717, 108 S. Ct. 2117 (1988) . . . . . . . . . . . . . . . . . . . 58

*Sykes* v. *United States,*
    131 S. Ct. 2267 (2011) . . . . . . . . . . . . . . . . . . . . . . . . 59, 60, 69

*Taylor* v. *United States,*
    495 U.S. 575, 110 S. Ct. 2143 (1990) . . . . . . . . . . . . . . . . . . . 59

*Timmreck* v. *United States,*
    441 U.S. 780, 99 S. Ct. 2085 (1979) . . . . . . . . . . . . . . . . . 19, 20

*\*United States* v. *Addonizio,*
    442 U.S. 178 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States* v. *Alexander,*
    609 F.3d 1250 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Archer,*
    531 F.3d 1347 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States* v. *Barker,*
    723 F.3d 315 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 64

**Pages**

*United States* v. *Barner*,
   572 F.3d 1239 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States* v. *Barrington*,
   648 F.3d 1178 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States* v. *Beckles*,
   565 F.3d 832 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 62

*United States* v. *Bennett*,
   472 F.3d 825 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 62

*United States* v. *Booker*,
   543 U.S. 220, 125 S. Ct. 738 (2005) . . . . . . . . . . . . . . . 10, 23, 32

*United States* v. *Canty*,
   570 F.3d 1251 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 54

*United States* v. *Castleman*,
   134 S. Ct. 1405 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

*United States* v. *Cepero*,
   224 F.3d 256 (3d Cir. 2000) (en banc) . . . . . . . . . . . . . . . . . . . . 2

*United States* v. *Chitwood*,
   676 F.3d 971 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 60, 69

*United States* v. *Corner*,
   598 F.3d 411 (7th Cir. 2010) (en banc) . . . . . . . . . . . . . . . . . . 42

*United States* v. *Eichman*,
   496 U.S. 310, 110 S. Ct. 2404 (1990) . . . . . . . . . . . . . . . . . . . . 53

**Pages**

*United States* v. *Foley*,
   508 F.3d 627 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States* v. *Frady*,
   456 U.S. 152, 102 S. Ct. 1584 (1982) . . . . . . . . . . . . . . 22, 49, 51

*United States* v. *George*,
   676 F.3d 249 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States* v. *Hall*,
   77 F.3d 398 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 54

*United States* v. *Harris*,
   586 F.3d 1283 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States* v. *Howard*,
   742 F.3d 1334 (11th Cir. 2014) . . . . . . . . . . . . . . . 62, 63, 64, 71

*United States* v. *Hunter*,
   559 F.3d 1188 (11th Cir. 2009),
   vacated, 558 U.S. 1143 (2010) . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *LaBonte*,
   520 U.S. 751, 117 S. Ct. 1673 (1997) . . . . . . . . . . . . . . . . . . . 39

*United States* v. *Lawrence*,
   662 F.3d 551 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States* v. *Merced*,
   603 F.3d 203 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 42

*United States* v. *Michael*,
   576 F.3d 323 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 40

**Pages**

*United States* v. *Nyhuis,*
　211 F.3d 1340 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 68

*United States* v. *Ozmon,*
　713 F.3d 474 (8th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States* v. *Sanchez,*
　517 F.3d 651 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States* v. *Spencer,*
　277 F. App'x 977 (11th Cir. 2008) (per curiam) (unpub.) . . . . 11

*United States* v. *Vazquez,*
　558 F.3d 1224 (11th Cir. 2009),
　vacated, 558 U.S. 1144, 130 S. Ct. 1135 (2010) . . . . . . . . 41, 42

*United States* v. *Verbitskaya,*
　406 F.3d 1324 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 50

*Wadlington* v. *United States,*
　428 F.3d 779 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Welch* v. *United States,*
　604 F.3d 408 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 52, 55

*Whalen* v. *United States,*
　445 U.S. 684, 100 S. Ct. 1432 (1980) . . . . . . . . . . . . . . . . . . . 35

*Whiteside* v. *United States,*
　— F.3d —, 2014 WL 1364019 (4th Cir. Apr. 8, 2014) . 2, 17, 38

*Whorton* v. *Bockting,*
　549 U.S. 406, 127 S. Ct. 1173 (2007) . . . . . . . . . . . . . . . . . . . 53

**Pages**

*Williams* v. *New York*,
337 U.S. 241, 69 S. Ct. 1079 (1949) . . . . . . . . . . . . . . . . . . . . . . 21

*Witt* v. *State*,
780 So.2d 946, 947 (Fla. 5 Dist. App. 2001) . . . . . . . . . . . . . . 69

*Young* v. *Alabama*,
427 F.2d 177 (5th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Zack* v. *Tucker*,
704 F.3d 917 (11th Cir. 2013) (en banc) . . . . . . . . . . . . . . . . . 55

**Statutes, Rules and Guidelines**

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 924(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 924(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

18 U.S.C. § 924(e)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 61

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. § 3553(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. § 3742(a)-(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 841(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 24

**Pages**

28 U.S.C. § 994(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40, 41, 42

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2253(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2253(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2253(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2255(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 2255(f)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

U.S.S.G. § 2B1.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

U.S.S.G. § 2J1.2(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

U.S.S.G. § 2J1.6(b)(2)(A)-(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

U.S.S.G. § 2L1.2(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

U.S.S.G. § 2M6.2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

U.S.S.G. § 2Q1.2(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

U.S.S.G. § 3A1.4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

U.S.S.G. § 4B1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S.S.G. § 4B1.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. § 4B1.5(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**Pages**

U.S.S.G. amend. 615, App. C. vol. II . . . . . . . . . . . . . . . . . . .  40-41

U.S.S.G. § 5G1.1(a)-(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Fla. Stat. § 827.03(1) (2003) . . . . . . . . . . . . . . . . . .  9, 12, 60, 65, 69

**Miscellaneous**

PROTECT Act of 2003, Pub. L. No. 108-21 . . . . . . . . . . . . . .  42-43

Protection of Children From Sexual Predators Act of 2003,
    Pub. L. N0. 105-314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

128 Cong. Rec. 26,512, 26,518 (daily ed. Sept. 30, 1982) . . . . . .  40

Iɴ ᴛʜᴇ

# United States Court of Appeals

ғᴏʀ ᴛʜᴇ Eʟᴇᴠᴇɴᴛʜ Cɪʀᴄᴜɪᴛ

No. 10-10676-U

Kᴇᴠɪɴ Sᴘᴇɴᴄᴇʀ,

*Petitioner-Appellant,*

v.

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs ᴏғ Aᴍᴇʀɪᴄᴀ,

*Respondent-Appellee.*

## SUPPLEMENTAL BRIEF FOR THE UNITED STATES ON REHEARING EN BANC

### JURISDICTIONAL STATEMENT

This is an appeal by convicted federal prisoner Kevin Spencer appeal from a final order and judgment of the United States District Court for the Middle District of Florida denying his motion to vacate sentence under 28 U.S.C. § 2255(a).  Docs. 17, 18.[1]  Final judgment was docketed on January 8, 2010, Doc. 18, and Spencer timely filed

---

[1] Record citations ("Doc.") are to *Spencer* v. *United States*, No. 3:08-cv-914-J-33MCR (M.D. Fla.), the Section 2255 case, and not *United States* v. *Spencer*, No. 3:06-cr-349-J-33MCR (M.D. Fla.), the underlying criminal case.

a notice of appeal on February 11, 2010, Doc. 20; see Fed. R. App. P.

4(a)(1)(B)(i).  The district court declined to issue a certificate of

appealability (COA), Doc. 22, but this Court granted a COA limited

to (1) whether Spencer's challenge to his advisory career-offender

sentence is cognizable under Section 2255, and (2) whether Spencer

was properly classified and sentenced as a career offender.

The district court had jurisdiction under 28 U.S.C. § 2255(a).

This Court has jurisdiction under 28 U.S.C. § 1291 and 28

U.S.C. § 2253(a).[2]

---

[2]  A COA may issue upon a substantial showing of the denial
of a "constitutional right." 28 U.S.C. § 2253(c)(2) see *United States* v.
*Cepero*, 224 F.3d 256, 264 (3d Cir. 2000) (en banc) (explaining that
a denial of any federal right cannot support a COA), abrogated on
other grounds by *Gonzalez* v. *Thaler*, 132 S. Ct. 641 (2012). The COA
in this case does not identify a substantial "constitutional issue," and
in our view, guidelines errors do not even plausibly present such an
issue.  See *Gilbert* v. *United States*, 640 F.3d 1293, 1321 (11th Cir.
2011) (en banc) ("Gilbert's claim that a sentencing guidelines
provision was misapplied to him is not a constitutional claim.");
*Whiteside* v. *United States*, — F.3d —, 2014 WL 1364019, at *13-15
(4th Cir. Apr. 8, 2014) (Wilkinson, J., dissenting) (explaining why
advisory guidelines errors do not merit COAs).  But even though a
COA should not have issued, the COA that did issue  confers
jurisdiction, see *Gonzalez*, 132 S. Ct. at 649, and we are not seeking
dismissal of the appeal based on this deficiency, *id*. (COA's failure to
specify a constitutional issue can be waived or forfeited).

## STATEMENT OF THE ISSUES

1.  Whether a claim alleging the misapplication of the advisory career-offender guideline, which neither alters the statutory sentencing range for the defendant's crime nor affects the defendant's eligibility to receive the sentence imposed, produces a "complete miscarriage of justice" and thereby presents a cognizable non-constitutional claim for Section 2255 relief.

2.  Whether *Begay* v. *United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008), is retroactively applicable in an initial collateral attack under Section 2255 that challenges an advisory career-offender enhancement and sentence.

3.  Whether, in light of *Begay* and *Descamps* v. *United States*, 133 S. Ct.  2276 (2013), Spencer's prior Florida conviction for third-degree felony child abuse qualifies as a career-offender "crime of violence."

## STATEMENT OF THE CASE

**I.     Statement Of The Facts**.

On June 21, 2006, Spencer sold crack cocaine to an informant. PSR ¶ 8.  Two days later, Clay County Florida Sheriff's Office deputies stopped a car in which Spencer was a passenger.  PSR ¶ 9. Spencer attempted to flee, but was promptly apprehended.   An ensuing search led to the discovery in Spencer's pants pocket of a pill bottle containing 25 rocks of crack cocaine.  *Id*.

**II.     Course Of Proceedings**.

**A.     Direct Review Proceedings**.

**1.     The Indictment And Conviction**.

A federal grand jury in the Middle District of Florida indicted Spencer for possession with intent to distribute an unspecified quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  In March 2007, Spencer pleaded guilty to this offense without a plea agreement.  His conviction on this offense exposed him to a statutory sentencing range of zero to 20 years' imprisonment.   See 21 U.S.C. § 841(b)(1)(C); PSR ¶ 65.

## 2.    Recidivism Enhancements.

Federal law provides enhanced penalties for convicted defendants whose criminal histories include certain numbers and types of prior convictions. See *Almendarez-Torres* v. *United States*, 523 U.S. 224, 230, 118 S. Ct. 1219, 1224 (1998) (collecting provisions). Two of the most commonly used recidivism-based sentencing enhancements are the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (ACCA), and the career-offender guideline, U.S.S.G. § 4B1.1.

*The ACCA.* Federal law prohibits convicted felons from possessing firearms, 18 U.S.C. § 922(g)(1), and sets a presumptive 10-year maximum sentence with no mandatory minimum, 18 U.S.C. § 924(a)(2). If, however, the offender's criminal history includes at least three prior convictions for a "violent felony" or "serious drug offense," then the ACCA elevates the penalties for the crime by mandating a minimum 15-year sentence and permits a maximum sentence of life. See 18 U.S.C. § 924(e); *Custis* v. *United States*, 511 U.S. 485, 487, 114 S. Ct. 1732, 1734 (1994).

-5-

The ACCA defines a "violent felony" as an offense punishable by more than one year in prison that:

> (i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii)  is burglary, arson or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  Clause (i) is known as the "elements clause"; Clause (ii)'s "is burglary, arson or extortion, involves use of explosives" provision is known as the "enumerated crimes clause"; and Clause (ii)'s "or otherwise" provision is known as the "residual clause."

*The Career-Offender Guideline.*  The career-offender guideline applies to defendants who (1) are over the age of eighteen, (2) stand convicted of a "crime of violence" or a "controlled substance offense," and (3) have at least two prior convictions for either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1(a).  This guideline uses a three-clause definition of the term "crime of violence" that is "virtually identical" to the ACCA's definition of

-6-

"violent felony." *United States* v. *Harris*, 586 F.3d 1283, 1285 (11th Cir. 2009).[3] And it operates by advising courts to use graduated offense levels based on the statutory maximum for the crime and to use criminal history category VI. See U.S.S.G. § 4B1.1(b).

Notwithstanding their similarities, the ACCA and career-offender guideline differ in other respects. For example, unlike the ACCA, the career offender guideline is triggered by *two* qualifying convictions and applies to anyone convicted of a violent crime or controlled substance offense. And, although both provisions strive to produce longer sentences for repeat offenders, they seek to achieve that result in different ways. The career-offender guideline raises the offender's range *within* the existing statutory minimum and maximum penalties set by Congress, see U.S.S.G. § 5G1.1(a)-(b); cf. *Edwards* v. *United States*, 523 U.S. 511, 515, 118 S. Ct. 1475, 1477 (1995), while the ACCA raises the statutory sentencing range itself – from a 10-year maximum with no minimum (the non-ACCA range)

---

[3] The difference is that the career-offender guideline's enumerated crimes clause reaches "burglary of a dwelling," while the ACCA's parallel provision reaches "burglary." See *United States* v. *Archer*, 531 F.3d 1347, 1350 n.1 (11th Cir. 2008).

to a life maximum with a 15-year mandatory minimum (the ACCA range).

### 3.    **The Sentencing Proceedings**.

a. *The Career Offender Recommendation*.  The probation officer recommended that the court sentence Spencer as a career offender (PSR ¶ 25) because his criminal history included a 2003 Florida state-court felony conviction for selling cocaine within 1,000 feet of a school, a "controlled substance offense," PSR ¶ 29, and a 2004 Florida state-court felony conviction for third-degree child abuse, a "crime of violence,"PSR ¶ 32.[4/]  As a career offender, Spencer faced a total adjusted offense level of 29 and a criminal history category of VI, which produced an advisory guidelines range of 151 to 188 months' imprisonment.   PSR ¶ 66.   Absent the enhancement, Spencer's adjusted offense level of 23 and criminal history category of IV would have produced an advisory range of 70 to 87 months' imprisonment.  PSR ¶¶ 24, 39.

---

[4/] Spencer's criminal history also included two prior convictions for drug possession, see PSR ¶¶ 30, 34, but those offenses do not constitute "controlled substance offenses."  See *Salinas* v. *United States*, 547 U.S. 188, 188, 126 S. Ct. 1675, 1675 (2006) (per curiam).

b. *Spencer's Objection*.  Spencer did not dispute that his 2003 cocaine conviction was a controlled substance offense, but he argued that his child-abuse conviction was not a crime of violence.  He contended that the Florida statute did not categorically define a crime of violence because it reached not only intentional acts that cause physical injury (which, he conceded, would qualify) but also intentional acts that cause only mental injury (which, he argued, would not qualify).  Doc. 49, at 6, 13.[5/] And, while Spencer admitted that the modified categorical approach applied, he argued that no

---

[5/]  Florida law makes it a third-degree felony for a person to "knowingly or willfully abuse[] a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child."  Fla. Stat. § 827.03(1) (2003).  "Child abuse" is defined as:

    (a)    intentional infliction of physical or mental injury upon a child;

    (b)    an intentional act that could reasonably be expected to result in physical or mental injury to a child; or

    (c)    active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.

Fla. Stat. § 827.03(1) (2003).

-9-

*Shepard*-approved documents, see *Shepard* v. *United States*, 544 U.S. 13, 125 S. Ct. 1254 (2005), illuminated the physical-versus-mental injury issue, and therefore, the conviction was nonqualifying.

    c.  *The Sentencing*.  The district court overruled Spencer's objections and classified him as a career offender.  *Id*. at 13-14. Spencer then requested a sentence at the "lower part of [the advisory guidelines range], the 151 months," Doc. 49, at 20, while the government requested a sentence "at least in the mid range of the guidelines."  *Id*. at 17.

    The court began by stating that "[t]he guidelines * * * are advisory," which, it told Spencer, means "I can depart upwards, I could depart downwards, I can sentence you within the guideline range."  *Id*. at 23; see *United States* v. *Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).  It then identified several "mitigating factors" (*i.e.*, Spencer's age, the quantity of drugs, and Spencer's difficult upbringing), and several aggravating factors (*i.e.*, the "damage and destruction" to third parties caused by Spencer's drug dealing, and Spencer's "criminal history"), and concluded that a 151-month

sentence was warranted, *id.* at 23-25.

### 4.    **The Direct Appeal**.

Spencer appealed, renewing his arguments that his child-abuse conviction was not a crime of violence.  On April 1, 2008, this Court rejected those arguments, holding that "Spencer's predicate conviction for felony child abuse involved a serious potential risk of physical injury to another."  *United States* v. *Spencer*, 277 F. App'x 977, at *3 (per curiam).  Spencer did not seek further review; accordingly, the judgment became final on or about July 1, 2008, after the 90-day period for seeking certiorari expired.  See *Clay* v. *United States*, 537 U.S. 522, 527, 123 S. Ct. 1072, 1076 (2003).

### B.    **Collateral Review Proceedings**.

### 1.    **The Section 2255 Motion**.

In September 2008, Spencer timely filed a *pro se* motion to vacate his sentence under Section 2255.  He argued that his career offender classification was erroneous as a freestanding matter (*i.e.*, that he was "actually innocent" of being a career offender) and was the product of ineffective assistance of counsel.  In later briefing, Spencer cited the then-recent decision in *Begay* v. *United States*, 553

-11-

U.S. 137, 128 S. Ct. 1581 (2008), as providing "[a]dditional * * *
support" for his claims.  Reply Br. 3.[6/]  The court denied the motion,
Order 6, and declined to issue a COA, *id*. at 11.

### 2.    **The Appeal**.

a.  Spencer timely filed a notice of appeal and requested a COA.
On August 2, 2010, a judge of this Court issued a COA on "the
following issue only":

> Whether, in light of *Begay* v. *United States*, 553 U.S.
> 137, *Gilbert* v. *United States*, 640 F.3d 1293 (11th Cir.
> 2011) (en banc) and *United States* v. *Hunter*, 559 F.3d
> 1188 (11th Cir. 2009), the movant's freestanding
> challenge to a career offender sentence imposed under
> U.S.S.G. § 4B1.1 is cognizable under 28 U.S.C. § 2255?
> If so, whether the district court, in light of *Begay*,
> erroneously determined that the movant was properly
> classified as a career offender where he had a prior state
> conviction for felony child abuse under Fla.
> Stat. § 827.03(1)?"

The Court appointed counsel for Spencer and, after briefing

---

[6/] *Begay* held that the ACCA's residual clause reaches crimes
that typically involve "purposeful, violent, and aggressive" conduct.
*Begay* explained that the residual clause extends only to "crimes that
are roughly similar, in kind as well as in degree of risk posed," to the
crimes in the enumerated-crimes clause.  *Id*. at 143-145.  Although
*Begay* construed the ACCA, the decision informs the meaning of the
career-offender guideline.  See *United States* v. *Alexander*, 609 F.3d
1250, 1253 (11th Cir. 2010).

and argument, vacated the order denying Spencer's Section 2255 motion and remanded for resentencing. See *Spencer* v. *United States*, 727 F.3d 1076, 1100 (2013). The panel held that Spencer's child-abuse conviction was not a crime of violence because the statute was overbroad and no *Shepard* documents addressed the physical-versus-mental injury issue. *Id.* at 1095-1099. The panel recognized that non-constitutional errors are cognizable only if they "result[] in a complete miscarriage of justice,'" *id.* at 1084, and, although it acknowledged that *Hawkins* v. *United States*, 706 F.3d 820, 822 (7th Cir. 2013), had held that advisory guidelines errors do not produce such results, it declined to follow *Hawkins* and held this standard had been met, *id.* at 1088.

b. The government filed a petition for rehearing en banc on the cognizability issue. On March 7, 2014, the Court granted the petition and invited supplemental briefing on the cognizability issue, as well as on the issues of *Begay*'s retroactivity and whether Spencer's child-abuse conviction is a crime of violence.

## SUMMARY OF ARGUMENT

**I**. Claims alleging a misapplication of the federal Sentencing Guidelines – especially the advisory sentencing guidelines – are not cognizable claims for Section 2255 relief.

**A**. Section 2255 narrowly limits the grounds for collateral attacks on a final judgment. Non-constitutional non-jurisdictional errors are not cognizable unless they produce a "complete miscarriage of justice," and claims alleging a misapplication of the advisory guidelines do not satisfy that demanding standard. Unlike ACCA errors, the actual sentence imposed in all guidelines cases is within fixed statutory limits and the defendant remains eligible to receive the same sentence even without the enhancement.

**B**. Neither the statutory text nor precedent nor the various policy considerations advanced by Spencer and his amicus warrant a different conclusion. And, notwithstanding the assurances by Spencer and his amicus to the contrary, there is no principled, workable basis for limiting a ruling in Spencer's favor to misapplications of the career-offender guideline. Indeed, the very

logic of their position confirms that any such ruling would reach "every type and kind of enhancement, of which there are scores in the guidelines." *Gilbert*, 640 F.3d at 1309-1310.

**II**. *Begay* is retroactive in Spencer's case because it was decided before his judgment had become final. See *Griffith* v. *Kentucky*, 479 U.S. 314, 107 S. Ct. 708 (1987). Although this case does not present the issue, *Begay* is retroactive in cases that became final before it had been decided because it announced a new substantive rule narrowing eligibility for recidivist sentencing enhancements. *Begay*'s status as a substantive rule is fixed, moreover, and does not fluctuate based on whether the prisoner is challenging an ACCA enhancement, a mandatory guidelines enhancement, or, as here, an advisory guidelines enhancement. In every case where it applies, *Begay* has the same substantive, narrowing effect and thus the same retroactive application.

**III**.  Spencer's conviction for third-degree felony child abuse is not a "crime of violence."

**A**.  Florida's child-abuse statute does not categorically define a crime of violence because the statute reaches intentional acts that cause "physical or mental" injury, only the former of which satisfies the residual clause.  The Florida statute is textually divisible into distinct crimes, however, and thus is amenable to analysis using the modified categorical approach.  But the available *Shepard* documents shed no light on whether Spencer's conviction necessarily involved qualifying physical injury.

**B**.  Spencer may relitigate the status of his child-abuse conviction, despite having unsuccessfully litigated the issue on direct review, because the intervening decision in *Descamps* altered the governing substantive law.

# ARGUMENT

## I.    CLAIMS ALLEGING A MISAPPLICATION OF THE ADVISORY GUIDELINES ARE NOT COGNIZABLE UNDER SECTION 2255(a).

Section 2255 authorizes federal prisoners to move to vacate their sentences, but this remedy does not "encompass all claimed errors in conviction and sentencing." *United States* v. *Addonizio*, 442 U.S. 179, 185, 99 S. Ct. 2235, 2240 (1979).  Rather, Congress, in its judgment, opted to "narrowly limit[] the grounds for collateral attack on final judgments." *Id*.; see *Felker* v. *Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 2340 (1996) ("[J]udgments about the proper scope of [collateral review] are normally for Congress to make."); see *Whiteside* v. *United States*, — F.3d —, 2014 WL 1364019, at *26 (4th Cir. Apr. 8, 2014) (Wilkinson, J., dissenting) ("Congress alone possesses the power and responsibility to define the contours of federal collateral review.").

Section 2255 thus permits collateral relief if "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] the court was without jurisdiction to impose such sentence, or [3] the sentence was in excess of the maximum

authorized by law, or [4] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). As this Circuit's predecessor long ago emphasized, in conducting this "threshold inquiry," *Burke* v. *United States*, 152 F.3d 1329, 1331 (11th Cir. 1998), courts must respect the fact that Congress enumerated specific bases for relief: "[i]t is not enough that [a Section 2255 movant] point an accusing finger at some supposed slip on the part of the Judge during the long history of this case"; rather, "he must tread the narrow trail of relief" afforded by the statute. See *Clay* v. *United States*, 260 F.2d 564, 565 (5th Cir. 1958) (per curiam).

Of the four "narrow trails of relief" enumerated by the statute – only one – the fourth – is at issue here.[7] Spencer contends only

---

[7] Spencer does not contend that his advisory guidelines sentence violates the Constitution – and it does not, see *Gilbert*, 640 F.3d at 1321; or that the court lacked jurisdiction – and it did not, see 18 U.S.C. § 3231; or that his sentence is "in excess of the maximum authorized by law" – and it is not, see *Auman* v. *United States*, 67 F.3d 157, 161 (8th Cir. 1995). Although Spencer in passing refers to his guidelines claim as involving "statutory error[]," EB Br. 12, it is unclear whether the guidelines are now, or ever were, "laws of the United States." See *Scott* v. *United States*, 997 F.2d 340, 341 (7th Cir. 1993). Regardless, the analysis would be the same even if they were: claims alleging violations of "law" are cognizable only
(continued...)

-18-

that his advisory-guidelines claim is "otherwise subject to collateral attack" because it resulted in a "complete miscarriage of justice." EB Br. 12, 16.    He is incorrect.    Misapplications of the Parole Commission guidelines, see *Addonizio*, *supra*, and the Federal Rules of Criminal Procedure, see *Timmreck* v. *United States*, 441 U.S. 780, 783, 99 S. Ct. 2085, 2088 (1979); *Hill* v. *United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962), have been held not to produce complete miscarriages of justice, and, as the Seventh Circuit recognized in *Hawkins*, the logic and reasoning of those decisions applies to the advisory guidelines.  Errors in calculating the advisory guidelines range do not categorically produce miscarriages of justice because they neither alter the statutory sentencing range for the crime nor categorically immunize the defendant from the punishment imposed.    Accordingly, because such claims do not present complete miscarriages of justice, they are not cognizable.

---

[7/](...continued)
if they produce a "complete miscarriage of justice."  See *Reed* v. *Farley*, 512 U.S. 339, 348-349, 114 S. Ct. 2291, 2297 (1994); *Davis* v. *United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305 (1974); *Adams* v. *Lankford*, 788 F.2d 1493, 1500 (11th Cir. 1986).

**A.    Misapplications Of The Advisory Sentencing Guidelines Do Not Satisfy Any Of The Enumerated Grounds For Section 2255 Relief**.

Section 2255's "otherwise subject to collateral attack" clause is not self-defining.  This catchall provision most readily permits collateral attacks alleging non-enumerated types of errors if and when Congress passes a statute so declaring.  Cf. 18 U.S.C. § 3742(a)-(b) (authorizing sentencing guidelines appeals).  In the absence of such a statute – and none exists here – this provision has been held to permit collateral relief for those non-constitutional, non-jurisdictional errors that involve "an omission inconsistent with the rudimentary demands of fair procedure" or present "a fundamental defect which inherently results in a complete miscarriage of justice." *Timmreck*, 441 U.S. at 783, 99 S. Ct. at 2088 (1979) (quoting *Hill*, 368 U.S. at 428, 82 S. Ct. at 471); accord *Peguero* v. *United States*, 526 U.S. 23, 27-28, 119 S. Ct. 961, 964 (1999).

Spencer concedes that the *Hill-Timmreck* standard governs the analysis of whether his advisory guidelines claim is cognizable under

-20-

Section 2255.  See EB Br. 12, 16.  The determinative issue, therefore, is whether advisory guidelines errors meet that standard.  And they do not.

1.  Misapplications of the advisory guidelines do not produce results that are "inconsistent with the rudimentary demands of fair procedure."  The system of guided discretion embodied in the guidelines is not an indispensable ingredient of fair sentencing procedure, but instead reflect a policy choice by Congress to provide sentencing courts with guidance for the exercise of discretion rather than to provide no discretion at all, even though the latter option is permissible.  See *Mistretta* v. *United States*, 488 U.S. 361, 363-364, 109 S. Ct. 647, 650 (1989); *Williams* v. *New York*, 337 U.S. 241, 252, 69 S. Ct. 1079, 1085 (1949).  And because a system of unbounded sentencing discretion within statutory limits is permissible, "errors in the administration of a system that curtails discretion cannot be 'inconsistent with the rudimentary demands of fair procedure.'" *Scott*, 997 F.2d at 342.

2.  Nor do misapplications of the advisory guidelines result in complete miscarriages of justice.

a.  Advisory guidelines sentencing requires a court to impose a sentence within the statutory limits fixed by Congress that is "sufficient, but not greater than necessary" to meet the statutory purposes of sentencing set out in 18 U.S.C. § 3553(a).  In fashioning a sentence, courts are guided by the non-exhaustive list of factors in Section 3553(a), of which the advisory guidelines range is but one, 18 U.S.C. § 3553(a)(4); *United States* v. *Foley*, 508 F.3d 627, 635 (11th Cir. 2007) (advisory guidelines range is "one of the factors a court must consider").  On direct appeal, a showing that the sentencing court miscalculated the guidelines range will ordinarily suffice to warrant a resentencing.  See *Gall* v. *United States*, 552 U.S. 38, 50-51, 128 S. Ct. 586, 597-598 (2007).  On collateral review, however, the same showing does not suffice because a federal prisoner seeking collateral review must clear a "significantly higher hurdle than would exist on direct appeal."  *United States* v. *Frady*, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593 (1982); see also *Addonizio*, 442 U.S. at

184, 99 S. Ct. at 2240 ("An error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.").[8] Legal error in calculating a defendant's advisory guidelines range before imposing a sentence in accordance with 18 U.S.C. § 3553 does not rise to the level of a "complete miscarriage of justice," for several reasons.

A sentencing court's erroneous calculation of the advisory guidelines range may have contributed to a longer sentence than would otherwise be suggested by the application of the correct advisory guidelines range. But this error does not alter the statutory boundaries within which the court exercises its post-*Booker* sentencing discretion. Here, the sentencing court possessed the statutory authority and the legal discretion to impose the sentence

---

[8] NACDL misapprehends the nature and function of collateral review by equating (Br. 1, 15) the question whether a sentence is substantively reasonable – a test used on direct review – with the separate and distinct question whether a sentence reflects a complete miscarriage of justice – the test used on collateral review. Whether or not a sentence is substantively reasonable does not determine whether an error in calculating the range from which the sentence was selected resulted in a complete miscarriage of justice; even sentences that are substantively unreasonable (and Spencer's is not) can present non-cognizable claims for relief.

-23-

it imposed: Spencer's 151-month sentence was within the authorized 20-year statutory maximum for his crime, the career-offender range did not alter any statutory minimum punishment, and the sentencing court retained the discretion to reject the advice of the guidelines and sentence Spencer outside the career-offender range. See 21 U.S.C. § 841(b)(1)(C); cf. *Addonizio*, 442 U.S. at 186, 99 S. Ct. at 2241 (sentencing error was not cognizable under Section 2255 where the sentence imposed was "within statutory limits"); *Hill*, 368 U.S. at 430, 82 S. Ct. at 472 (sentence was not "illegal" where the "punishment meted out was not in excess of that prescribed by the relevant statutes"). As the Seventh Circuit reasoned, because guidelines sentences are "well below the ceiling imposed by Congress," *Hawkins*, 706 F.3d at 824-825, and because an erroneous advisory guidelines range does not mandate a particular sentence, a sentence within lawful statutory boundaries, even if selected from an incorrect range, is not a "complete miscarriage of justice."

Spencer, perhaps unwittingly, has tacitly acknowledged as much. In his brief, Spencer agrees with the panel (727 F.3d at 1087) that the decision in *Sun Bear* v. *United States*, 644 F.3d 700 (8th Cir. 2011) (en banc), which held non-cognizable a misapplication of the mandatory career-offender guideline, is distinguishable because Sun Bear's sentence was within the guidelines range that would have applied if he had not been classified as a career offender. EB Br. 36-37. But by endorsing that view, Spencer seemingly recognizes that at least *some* career offender errors – *i.e.*, those where the sentence imposed falls within the non-career-offender range – do not produce complete miscarriages of justice. In our view, the cognizability inquiry is a categorical one that focuses not on whether an error in a given case on a particular record produced a miscarriage of justice (as would be the case on plain-error review), but instead on whether a particular type of error categorically produces a "complete" miscarriage of justice in every case without exception or further case-specific inquiry. ACCA errors meet that standard; guidelines errors do not.

b.  Spencer's eligibility to receive the same sentence he received even without the career-offender enhancement, and the absence of any erroneously imposed statutory minimum, further supports the view that advisory guidelines errors are not cognizable miscarriages of justice.  If the sentencing court had known at the time of sentencing that Spencer was not a career offender, that determination would have resulted in a lower guidelines range and thus altered the starting point for his sentencing – but it would not have immunized Spencer from the 151-month sentence he received. To the contrary, the district court still could have lawfully and validly have imposed that sentence under the advisory guidelines. The existence of discretion to impose the exact same sentence provides further support for the conclusion that such errors do not produce complete miscarriages of justice.

c.  The pertinent inquiry in analyzing the cognizability of advisory guidelines errors, moreover, is not whether the record in a given case shows that the sentencing judge subjectively would have imposed the same sentence but-for the error, but instead whether

the court had the objective legal authority to reimpose the same sentence after considering the properly calculated advisory range. *Addonizio* is instructive on the use of an objective test. In that case, the court imposed the statutory maximum sentence of ten years based on its stated expectation that the defendant would be paroled after serving one-third of that term. The Parole Commission later revised its guidelines in a way that showed that the court's assumption about the amount of prison time to be served was flawed, and that change effectively required the defendant to serve the full ten-year term. Reversing the lower courts, the Supreme Court held that Addonizio's sentencing claim was not a cognizable claim for Section 2255 relief: even though the sentence was longer than what the judge subjectively intended, "according to all of the objective criteria – federal jurisdiction, the Constitution, and federal law – the sentence was and is a lawful one." 442 U.S. at 187, 99 S. Ct. at 2241. The Court thus held that "claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge" do not provide valid grounds for a collateral

attack.  *Id.*  This confirms that objective criteria, not subjective ones, inform the cognizability question.

*Addonizio*'s use (indeed, endorsement) of an objective cognizability approach is consistent with the "basic distinction between direct review and collateral review." *Addonizio*, 442 U.S. at 184, 99 S. Ct. at 2240.  In considering whether guidelines errors raised on direct appeal merit a resentencing, courts appropriately consider the sentencing court's stated views, if any, about what sentence it would have imposed but-for the error.  See *United States* v. *Barner*, 572 F.3d 1239, 1248 (11th Cir. 2009) ("Where a district judge clearly states that he would impose the same sentence, even if he erred in calculating the guidelines, then any error in the calculation is harmless.").  But the "balance the cases strike between the interest in finality and the injustice of a possibly mistaken sentence," *Hawkins*, 706 F.3d at 825, cuts against the use of the same, subjective, record-driven approach on collateral review. Indeed, in *Addonizio*, the sentencing court stated that it had expected the defendant to serve only one-third of his sentence, 442

U.S. at 183, 99 S. Ct. at 2239, but the Supreme Court found the claim not cognizable because, objectively speaking, the sentence was lawful.  442 U.S. at 187, 99 S. Ct. at 2241; see also *Sun Bear*, 644 F.3d at 705 (objective criteria established that a misapplication of the mandatory career-offender guideline was not cognizable under Section 2255).[9/]

### B. Spencer's Cognizability Arguments Are Unpersuasive.

Spencer and his amicus argue that various precedents, principally *Peugh* v. *United States*, 133 S. Ct. 2072 (2013), support the conclusion that advisory guidelines errors produce complete miscarriages of justice; they also contend that the Seventh Circuit was wrong to hold otherwise.  On both scores, they are mistaken.

1. Spencer places extensive reliance on *Peugh*, arguing that it supports the notion "that an erroneous career-offender sentence under the advisory Guidelines can be collaterally challenged via an

---

[9/] NACDL asserts that the government has "tellingly fail[ed] to cite a single case for its 'objective' inquiry approach – * * * because it cannot."  Br. 15.  But we can, and we have, cited authority endorsing our approach, *e.g.*, *Addonizio* and *Sun Bear*.

initial Section 2255 motion." EB Br. 14. *Peugh* was a direct appeal by a defendant convicted of fraud offenses who was sentenced under the advisory guidelines in effect at the time of sentencing, even though those guidelines were more onerous than the guidelines in effect at the time of his crime. The Supreme Court granted certiorari to resolve a circuit split about whether the Ex Post Facto Clause applies to the advisory guidelines and ultimately held that the clause was applicable because it satisfied the "sufficient risk" test developed in the Court's ex post facto precedents. 133 S. Ct. at 2082; see *id.* ("The touchstone of this Court's inquiry is whether a given change in law presents a sufficient rusk of increasing the measure of punishment attached to the covered crimes."). *Peugh* lends no support to Spencer's position. *Peugh* was a direct appeal, not (as here) a collateral attack; it involved constitutional error, not (as here) non-constitutional error; and it applied a "sufficient risk" standard, not (as here) the more demanding "complete miscarriage of justice" standard that Spencer concedes is applicable. The Seventh Circuit in *Hawkins II* thus was correct to discount the

import of *Peugh* on collateral review. 724 F.3d at 915-917.

Alternatively, Spencer contends that *Peugh* indirectly supports his position. Spencer asserts that *Peugh*'s reaffirmation of the continuing importance of the role of the guidelines even after *Booker* – *i.e.*, that the guidelines remain the "lodestone of sentencing," EB Br. 14, and that 80% of criminal sentences are within the advisory range, EB Br. 15 – means that the advisory nature of the guidelines does not mitigate the severity of an erroneous career-offender designation, and thereby supports his theory that such errors produce complete miscarriages of justice. EB Br. 14-16. His argument, in other words, is that the guidelines, although nominally advisory, continue to exert a "gravitational pull" away from non-guidelines sentences, which effectively transforms them in the real world into quasi-mandatory guidelines. Both the hypothesis and the conclusion are wrong.

*Peugh*'s reference to the fact that 80% of all post-*Booker* sentences are within the advisory range is an inaccurate portrayal of the landscape, at least as far as career-offender sentences are

concerned.  According to a table compiled by the Department of Justice using official Sentencing Commission data, in Fiscal Year 2013, roughly 70% of the defendants who qualified as career offenders (1,597 out of 2,268) were sentenced outside of the advisory range.  See Addendum A.[10] Even discounting government-sponsored variances, the figure was nearly 30%.  *Id.*  These statistics illustrate, contrary to Spencer, that sentencing courts are not being overborne by the pull of the advisory guidelines range, at least not in career-offender cases.  See, *e.g.*, *United States* v. *Ozmon*, 713 F.3d 474, 476 (8th Cir. 2013) (affirming downward variance from career offender range); *United States* v. *Lawrence*, 662 F.3d 551, 563 (D.C. Cir. 2011) (same).[11] And more generally, the legal question whether a particular type of claim presents a cognizable miscarriage of justice

-----

[10] The raw Sentencing Commission data can be found at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2013/TableN.pdf.

[11]  Even if this data supported Spencer's theory that the guidelines are not truly advisory, it would not alter the conclusion that guidelines errors are not cognizable.  Even when the guidelines were truly mandatory, the overwhelming majority of courts held that errors in their application were not cognizable claims for Section 2255 relief.  Statistical data cannot obscure this basic point.

ought not to turn on changing and unpredictable statistical patterns – especially patterns that do not necessarily reflect individualized sentencing determinations.

Insofar as Spencer contends that the "pull" exerted by the advisory-in-name-only-guidelines makes an error in their application analogous to an error in applying the ACCA, it is even farther afield. The fact that ACCA errors produce "extra punishment in the form of additional prison time," EB Br. 28, is not what makes them cognizable; were that so, then presumably *any* sentencing error that had that effect would be cognizable – a proposition that proves too much in light of cases like *Addonizio* and *Gilbert*. Rather, as we have explained, such errors are cognizable because they were illegal and *ultra vires* at their inception: the resulting sentences are not "within the discretion the legislature accord[ed] the sentencing body" to impose. See *Johnson* v. *Singletary*, 938 F.2d 1166, 1183 (11th Cir. 1991). The imposition of a sentence that was not "authorized by statute," *Chapman* v. *United States*, 500 U.S. 453, 465, 111 S. Ct. 1919, 1927 (1991), of that reflected an erroneous determination of a

statutory mandatory minimum sentence, in other words, implicates fundamental separation-of-powers principles rendering such errors cognizable. See *Whalen* v. *United States*, 445 U.S. 684, 689, 100 S. Ct. 1432, 1436 (1980) ("[T]he power * * * to prescribe the punishments to be imposed upon those found guilty of [federal crimes] resides wholly with the Congress."). Such concerns are inapplicable in the guidelines setting.

2. The remaining cases Spencer cites are equally unavailing, if not entirely inapposite. *Johnson* v. *United States*, 544 U.S. 295, 125 S. Ct. 1571 (2005), involved a Section 2255 motion challenging a mandatory career-offender designation in light of the subsequent vacatur of a state court predicate conviction. As Spencer concedes, EB Br. 23 & n.6; *id*. at 31, *Johnson* held only that the defendant's motion was time-barred under 28 U.S.C. § 2255(f)(4), so the Court had no occasion to decide whether his claim would have been cognizable had his motion been timely filed. 544 U.S. at 311, 125 S. Ct. at 1582. As such, the discussion of whether Johnson's mandatory-guidelines claim would have been cognizable was not

necessary to the result and is not controlling. Beyond that, the discussion made no mention of the extensive appellate court precedent declaring guidelines claims non-cognizable, relying instead on cases involving the Armed Career Criminal Act. Although *Johnson*'s ACCA-driven dicta "is not something to be lightly cast aside," *Schwab* v. *Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006), it should not be followed here.[12/]

Spencer's reliance on the Supreme Court's decision in *Davis* is misplaced because, as Spencer concedes, the error of which he complains is "not the same as that recognized in *Davis*." EB Br. 20. *Davis* involved a defendant who, by virtue of intervening precedent, stood convicted of a non-existent crime, a quintessential miscarriage of justice. But even though the claim in *Davis*, like Spencer's, arose

---

[12/] *Stewart* v. *United States*, 646 F.3d 856 (11th Cir. 2011), is similarly inapposite. The Court there held that the defendant's second-in-time Section 2255 motion challenging his career-offender status based on a vacated state court conviction was not a "second or successive" motion. Like *Johnson*, *Stewart* did not reach the question of whether the underlying claim was cognizable. In any case, *Gilbert*'s statement that the guidelines cognizability question under Section 2255 was unresolved, see 640 F.3d at 1306 & n.13, confirms that Spencer is over-reading *Johnson* and *Stewart*.

-35-

from an intervening change in the law, the miscarriage of justice in *Davis* resulted because the change "established that the conduct for which petitioner had been convicted and sentenced was lawful." *Addonizio*, 442 U.S. at 186-187, 99 S. Ct. at 2240. Spencer's conduct, by contrast, is, and always has been, been unlawful. *Davis*'s reasoning does not extend beyond the context of a conviction for a non-existent offense, see *Sun Bear*, 644 F.3d at 706, to the distinctive realm of sentencing error. See, *e.g.*, *Gilbert*, 640 F.3d at 1315-1318 (declining to follow the panel's view that a misapplication of the career-offender guideline was the same as the error in *Davis*).

Spencer's reliance on cases involving Section 2255 relief for misapplications of the Armed Career Criminal Act of 1984 is even wider of the mark. EB Br. 26-29. ACCA errors are not "analogous" to the error in his case; the two errors do not produce "the same type of harm." EB Br. 28. As we explained *supra*, misapplications of the ACCA are cognizable not simply because they result in "additional prison time," EB Br. 28, but rather because the sentencing court lacked the authority to impose the sentence in the first place, which

made the resulting sentence "in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). The same cannot be said of a guidelines error – particularly an advisory guidelines error – because the district court has statutory authority to impose the sentence that it did notwithstanding the error and was not limited in the exercise of its discretion by any erroneous statutory mandatory minimum term.[13]

C. **There Is No Principled Or Workable Basis For Confining The Rule Spencer Advocates To Career Offender Errors**.

Spencer repeatedly seeks to assure the Court that it can rule that collateral relief is available for career-offender errors without opening the door to Section 2255 relief for other guidelines errors

---

[13] In *Whiteside*, the Fourth Circuit largely embraced the now-vacated panel decision in this case and held, contrary to *Hawkins*, that advisory guidelines errors are cognizable under Section 2255. The Solicitor General is currently considering whether to authorize a petition for rehearing en banc in *Whiteside*; but in any event, *Whiteside*'s analysis was rightly criticized for being "conceptually unsound," *Whiteside*, 2014 WL 1364019, at *19 (Wilkinson, J., dissenting), and "represent[ing] a dramatic expansion of federal collateral review * * * unsupported by law or precedent," *id*. at *12, and it is unpersuasive on its own terms. As Spencer's arguments largely parrot the analysis in *Whiteside*, his analysis is similarly unsound and unpersuasive.

-37-

because, he says, career offender errors are simply different.  EB Br. 18-29; see also NACDL Br. 14, 17-19.  The grounds Spencer proffers supposedly differentiating career offender errors from other guideline errors are simply *ad hoc* distinctions without a difference, none of which provides a principled or workable approach.

1.  *Section 994(h).*  Spencer contends that the career-offender guideline is different because it was "mandated by federal statute." EB Br. 18 (citing 28 U.S.C. § 994(h)).  That is true, but Spencer never explains why that is relevant.  If the idea is that, because the career-offender guideline is the product of a statutory directive, its misapplication results in a sentence above the "statutory" maximum, it is misguided.  See p. 18 n.7, *supra*.  Section 4B1.1 is a guideline, and Section 994(h) does not transform it into something else.  Nor could it:  Section 994(h), by its terms, is a directive to the Sentencing Commission to set guidelines ranges "at or near the maximum" for the crime.  28 U.S.C. § 994(h); *United States* v. *LaBonte*, 520 U.S. 751, 761 n.5, 117 S. Ct. 1673, 1674-1675 (1997).  "By its terms, [Section 994(h)] tells the Sentencing Commission, not the courts,

what to do." *United States* v. *Michael*, 576 F.3d 323, 328 (6th Cir. 2009).  Thus, when a court sentences a defendant as a career offender, it is acting pursuant to its authority

under the guidelines, and not pursuant to Section 994(h).[14/]

In a similar vein, NACDL asserts that the career-offender guideline has "a clear, defining characteristic that sets it apart from other enhancements: it is the *only* Guidelines provision that (consistent with Congress's directive) uses the statutory *maximum* as the jumping-off point for the sentencing analysis." NACDL Br. 17 (emphases in original).  That is incorrect.  The guideline governing repeat and dangerous sex offenders, for instance, uses the same paradigm as the career-offender guideline:  it provides for graduated offense levels depending on the "offense statutory maximum" for the crime.  See U.S.S.G. § 4B1.5(a)(1); see also  U.S.S.G. amend. 615, App. C. vol. II (Section 4B1.5 uses "a table that, like the table in

---

[14/] Section 994(h) was adopted in lieu of an amendment that would have required district courts to sentence career offenders to the statutory maximum. See *United States* v. *Sanchez*, 517 F.3d 651, 663-664 (2d Cir. 2008) (citing 128 Cong. Rec. 26,512, 26,518 (daily ed. Sept. 30, 1982)).  The rejection of this amendment further confirms that the career offender guideline is just that – a guideline.

Section 4B1.1, bases the applicable offense level on the statutory maximum for the offense"). And other guidelines enhancements use the offense statutory maximum to set the defendant's offense level. The fraud guideline, for example, sets a base offense level of 6 but provides for an offense level of 7 if the offense has a "statutory maximum term of imprisonment of 20 years or more." U.S.S.G. § 2B1.1(a)(1); see *United States* v. *Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011). The guidelines governing obstruction of justice and certain failure-to-appear offenses similarly tether the offense level for the offense to the statutory maximum. See U.S.S.G. § 2J1.2(b)(1)(A); U.S.S.G. § 2J1.6(b)(2)(A)-(C). Thus, the career offender guideline's supposedly unique and defining characteristic – springboarding off of the statutory maximum – is neither unique nor defining.

The fate of this Court's decision in *United States* v. *Vazquez*, 558 F.3d 1224 (2009), also cuts against Spencer's reliance on Section 994(h). *Vazquez* held that a sentencing court's authority to disagree with certain policy decisions reflected in the guidelines, as recognized

in *Kimbrough* v. *United States*, 552 U.S. 85, 128 S. Ct. 558 (2007), did not extend to policy-based disagreements with the career-offender guideline because that guideline was the product of "direct congressional expression" – *i.e.*, Section 994(h).  *Id.* at 1228-1229. *Vazquez* was vacated, however, 558 U.S. 1144, 130 S. Ct. 1135 (2010), and its short-lived approach to the career-offender guideline has "fall[en] out of favor."  *United States* v. *Merced*, 603 F.3d 203, 218 (3d Cir. 2010); see also *United States* v. *Corner*, 598 F.3d 411, 414-416 (7th Cir. 2010) (en banc) (overruling circuit precedent following the same approach as *Vazquez*).

NACDL relatedly asserts that, by virtue of Section 994(h), "the career offender rule has no equal * * * [a]mong Guidelines enhancements."  Br. 13.  NACDL's sweeping pronouncements are overbroad and, once again, incorrect.  Congress has passed other legislation, comparable to Section 994(h), requiring the Sentencing Commission to use specific offense levels or even directly amending specific guidelines language.  See, *e.g.*, PROTECT Act of 2003, Pub. L. No. 108-21, Title I, § 104(a), 117 Stat. 650, 653 (mandating an 8-

level increase in the base offense level for kidnapping); *id.* Title IV, § 401(g), 117 Stat. 671 (limiting ability to qualify for acceptance-of-responsibility adjustment); *id.* § 401(i), 117 Stat. 672 (directing increased penalties for child pornography offenses); Protection of Children From Sexual Predators Act of 2003, Pub. L. N0. 105-314, Title V, § 502 (directing the Commission to "review and amend" the guidelines governing certain repeat sexual offenders).  Thus, while NACDL, like Spencer, assures the Court that a ruling in Spencer's favor would not extend beyond career offender errors, their logic strongly suggests exactly the opposite.

2.  *Severity*.  Spencer asserts that career-offender errors are "substantially more serious than an ordinary sentencing error."  EB Br. 19-20; see also NACDL Br. 22 (career-offender errors are "uniquely severe in consequence" and differ from "ordinary misapplication[s] of the guidelines").  Yet neither Spencer nor his amicus attempt to explain how the amorphous, subjective standard they advocate is to be applied.  He says only that, in this case, on these particular facts, the career-offender error had a "serious"

impact because it "more than doubled" Spencer's advisory guidelines range. EB Br. 20; see NACDL Br. 4. Such a subjective and indeterminate provides neither a principled nor a workable standard. Is a doubling of the advisory range a necessary condition, or merely a sufficient one – or both? What if a career-offender error only increased the advisory range by some lesser percentage, say 60%? Would that qualify as "substantially more serious"? What about 50%? Or 25%? And how is court supposed to make that determination? Is severity measured "in absolute terms" or "by some fraction of the total authorized sentence"? Cf. *Glover* v. *United States*, 531 U.S. 198, 204, 121 S. Ct. 696, 700-701 (2001); see *id*. (noting the lack of an "obvious dividing line" for gauging prejudice in the context of ineffective assistance of counsel claims involving mandatory guidelines errors).

What about other guidelines enhancements that have equally (if not more) severe consequences than the career-offender enhancement? See, *e.g.*, U.S.S.G. § 2M6.2(a)(1) (24-level increase for certain offenses committed with the intent to injure the United

States or aid a foreign nation); U.S.S.G. § 2L1.2(b)(1)(A) (16-level increase for illegal reentry after deportation following an aggravated felony); U.S.S.G. § 2Q1.2(b)(2) (9-level increase for certain offenses that created a substantial likelihood of death or serious bodily injury); U.S.S.G. § 3A1.4(a) (12-level increase for felonies that involved or were intended to promote a terrorism offense). Is Spencer's position that a misapplication of one of these enhancements is never "serious enough" to warrant relief, even if the effect was to more than double the advisory guidelines range? If so, why?

The flaws in Spencer's "severity" approach do not end here, however. The benchmark for gauging severity, we are told, is "ordinary sentencing error," EB Br. 19, an equally vague and unworkable term. Is an erroneous two-level enhancement ordinary? If so, what about a three- or four-level enhancement? Or an erroneous criminal history designation — are there any circumstances that make that kind of error ordinary? Spencer's failure to provide a methodology for how to implement his preferred approach in a

principled, non-arbitrary fashion serves only to underscore the shortcomings of his approach.

3. *Stigma.* Spencer (EB Br. 19, 20) and NACDL (Br. 14) contend that career-offender designations are different because they stigmatize the defendant by "branding" him as a career offender. This proffered distinction is illusory and irrelevant. Imagine three hypothetical drug-dealer defendants whose sentences were enhanced, respectively, for committing perjury, for possessing more drugs than they actually possessed, and for possessing a weapon that was not actually possessed. If, in retrospect, it turns out that these enhancements were wrongly applied, each of these defendants could claim they too were wrongly "branded" – as a liar, a kingpin, and an armed offender. This supposed "limiting" principle has no limits.

More fundamentally, Section 2255 does not permit collateral relief for stigmatic harm; it is a mechanism for a prisoner to assert a "right to be released" from improper custody, 28 U.S.C. § 2255(a); cf. *Blaik* v. *United States*, 161 F.3d 1341, 1342-1343 (11th Cir. 1998) (holding that Section 2255(a)'s release-from-custody language

precludes collateral attacks to noncustodial portions of a sentence). And if Section 2255 relief does not lie to challenge a restitution order because that does not relate to custody, as *Blaik* held, Section 2255 relief does not lie to challenge claimed stigmatic harm.

4. *Preservation.* Lastly, Spencer argues the Court should "establish a bright line rule" that "a *preserved* sentencing error – or, at the very least, such an error in application of a career-offender enhancement" – is cognizable. EB Br. 31 (emphasis added). This argument is misguided: the factual issue of whether an individual defendant adequately preserved an issue bears no relationship to the legal issue of whether Congress has given federal courts the power to grant relief based on such errors. The doctrines of preservation and cognizability do not rise or fall together. See, *e.g.*, *Gilbert*, 640 F.3d at 1300-1301 (preserved claim of guidelines error held non-cognizable).

For all these reasons, Spencer's effort to draw the line at the career-offender guideline is flawed and should be rejected. In *Gilbert*, this Court rejected a similar request, explaining that the "finality-busting effects" of "[t]he rule Gilbert asks us to create for his benefit would apply to every type and kind of enhancement, of which there are scores in the guidelines," 640 F.3d at 1309-1310, because there is no principled way to "confine[]" that rule to career-offender errors: "[i]f the savings clause operates to allow attacks on old sentences that were lengthened by [a career offender] enhancement[] that later decisions have called into doubt, there is no reason it would not also operate to do the same with any other guidelines calculation error." *Id.*

Spencer contends that "this case does not implicate finality of conviction and floodgate concerns that concerned the *Gilbert* Court" because *Gilbert* was a successive collateral attack, not an initial one. EB Br. 31. These assertions miss the mark. Finality concerns are *heightened* in the context of successive collateral attacks, see *United States* v. *George*, 676 F.3d 249, 258 (1st Cir. 2012), but that does not

-47-

mean they are *absent* in initial collateral attacks. See, *e.g.*, *Daniels* v. *United States*, 532 U.S. 374, 383, 121 S. Ct. 1578, 1584 (2001); *Frady*, 456 U.S. at 169 n.17, 102 S. Ct. at 1595 n.17. Spencer's effort to reconceive of Section 2255 as a second direct appeal, unencumbered by finality concerns, thus is misguided: finality concerns are implicated by any collateral attack on a final judgment. Cf. *Burke*, 152 F.3d at 1332 ("Section 2255 is not a substitute for direct appeal."). Similarly, the "floodgate" concerns that worried the *Gilbert* Court are cause for worry here too as the holding Spencer seeks, if embraced, would spur countless numbers of Section 2255 motions attacking guidelines sentences.

## II. *BEGAY* APPLIES RETROACTIVELY IN ACCA CASES, MANDATORY GUIDELINES CASES, AND ADVISORY GUIDELINES CASES ALIKE.

Spencer asserts that *Begay* applies retroactively because it announced a new substantive rule. EB Br. 37-43; see also NACDL Br. 23-29. Although that conclusion (and much of the analysis on which it relies) is largely correct, see pp. 50-54, *infra*, it is entirely beside the point insofar as Spencer is concerned because *Begay* was

-48-

decided while Spencer's case was still pending on direct review.

### A.    *Begay* Is Retroactive In Spencer's Case.

*Begay* was decided on April 16, 2008, fifteen days after this Court affirmed Spencer's conviction and ten weeks before Spencer's 90-day-window for seeking certiorari expired.  See *Greene* v. *Fisher*, 132 S. Ct. 38, 44 (2011).  Because *Begay* was decided *before* Spencer's judgment had become final, the rule it announced is retroactive in Spencer's case regardless of whether it is substantive.  See *Griffith* v. *Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 716 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.").[15/]

That Spencer invoked *Begay* on collateral review does not matter to the retroactivity analysis.  The relevant inquiry is a

---

[15/] This Court has stated that *Griffith*'s automatic retroactivity rule for cases not yet final is limited to defendants "who preserved their objections throughout the trial and appeals process."  *United States* v. *Verbitskaya*, 406 F.3d 1324, 1340 n.8 (11th Cir. 2005). Spencer has done so: he objected at trial and renewed his argument on direct appeal.

temporal one: as long as the decision announcing the new rule was issued before the judgment had become final – as it was here – the rule is retroactive.  See, *e.g.*, *Wadlington* v. *United States*, 428 F.3d 779, 784 (8th Cir. 2005) (new rule announced before judgment had become final on direct review was retroactive even though the prisoner first invoked the rule on collateral review); *Derman* v. *United States*, 298 F.3d 34, 42 (1st Cir. 2002) (same).[16/]

## B. *Begay* Is Retroactive In Cases That Became Final Before It Was Decided.

Although this case does not present the question whether *Begay* applies retroactively in cases that were final before it was

---

[16/] Spencer arguably could have relied on *Begay* to seek either rehearing in this Court or certiorari in the Supreme Court, but his failure to have done has no bearing on whether *Begay* is retroactive. And, although at one time, a prisoner's failure to have sought discretionary review could have triggered a procedural default, cf. *Darr* v. *Burford*, 399 U.S. 200, 70 S. Ct. 587 (1950), that is no longer the law today, see *Fay* v. *Noia*, 372 U.S. 391, 435, 83 S. Ct. 822, 847 (1963) (expressly overruling this part of *Darr*); see *Young* v. *Alabama*, 427 F.2d 177, 178 n.5 (5th Cir. 1970) (noting that *Fay* "laid [*Darr*] to rest"). Accordingly, we have not raised a procedural default defense here because Spencer adequately preserved his claim. See generally *Frady*, 456 U.S. 152, 102 S. Ct. 1854.

announced, the government has acknowledged,[17] and the courts of appeals that have reached the issue have held (correctly),[18] that *Begay* is a substantive rule with retroactive effect on collateral review. See *Schriro* v. *Summerlin*, 542 U.S. 348, 351, 124 S. Ct. 2519, 2522 (2004) (new substantive rules are retroactive but new procedural rules usually are not).

1. A "substantive" rule includes one that narrowly interprets an element of a federal criminal statute, see *Bousley* v. *United States*, 523 U.S. 614, 620-621, 118 S. Ct. 1604 (1998),[19] or interprets a constitutional guarantee broadly to hold that particular conduct or persons covered by a statute are beyond the State's power to either proscribe or punish, see *Saffle* v. *Parks*, 494 U.S. 484, 494-495, 110

---

[17] See *Gilbert* v. *United States*, 609 F.3d 1159, 1165 (11th Cir. 2010), vacated, 625 F.3d 716; *Sun Bear*, 644 F.3d at 703-704; *Welch* v. *United States*, 604 F.3d 408, 414 n.8 (7th Cir. 2010).

[18] See *Jones* v. *United States*, 689 F.3d 621, 625 (6th Cir. 2012); *Welch*, 604 F.3d at 415.

[19] See *Skilling* v. *United States*, 561 U.S. 358, 130 S. Ct. 2896 (2010); *Bailey* v. *United States*, 516 U.S. 137, 116 S. Ct. 501 (1995).

S. Ct. 1257, 1265 (1990).[20] Substantive rules are retroactive on collateral review because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose. *Bousley*, 523 U.S. at 620, 118 S. Ct. 1604 (quoting *Davis*, 417 U.S. at 346, 94 S. Ct. at 2305). Procedural rules – *i.e.*, rules that "regulate only the manner of determining the defendant's culpability," *Schriro*, 542 U.S. at 353, 124 S. Ct. at 2523 – do not implicate these concerns, and are not retroactive on collateral review.[21]

---

[20] See, *e.g., United States* v. *Eichman*, 496 U.S. 310, 110 S. Ct. 2404 (1990) (First Amendment prohibits prosecution for flag burning); *Roper* v. *Simmons*, 543 U.S. 551, 125 S. Ct. 1183 (2005) (Eighth Amendment bars death penalty for juveniles).

[21] A new procedural rule would be retroactive if it was a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding," *Saffle*, 494 U.S. at 495, 110 S. Ct. 1257, but no rule has ever "satisfied the requirements for watershed status." *Whorton* v. *Bockting*, 549 U.S. 406, 418, 127 S. Ct. 1173, 1182 (2007). Spencer says that *Begay* would so qualify, EB Br. 37 n.11, but he is wrong: *Begay* does not mean that every pre-*Begay* sentence offends "the concept of ordered liberty." *McCoy* v. *United States*, 266 F.3d 1245, 1257 (11th Cir. 2001); see *id.* (holding *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), was not watershed because it did not fundamentally taint every pre-*Apprendi* sentence).

2.    In *Bryant* v. *Warden*, 738 F.3d 1253 (11th Cir. 2013), a successive collateral attack, this Court applied these principles and held that "[t]he new rule announced in *Begay* is substantive rather than procedural because it narrowed the scope of [the ACCA] by interpreting its terms, specifically, the term violent felony." *Id.* at 1278.  That conclusion is correct and equally applicable here.  *Begay* narrowed the reach of the ACCA's residual clause – and by logical extension, the career-offender guideline's residual clause: before *Begay*, courts understood Congress to have intended to reach a broad range of prior convictions, but those decisions, *Begay* teaches, misconstrued Congress's intent.  Compare *United States* v. *Hall*, 77 F.3d 398, 401-402 (11th Cir. 1996) (carrying a concealed weapon was a violent felony) with *United States* v. *Canty*, 570 F.3d 1251, 1255 (11th Cir. 2009) (holding that *Hall* was abrogated by *Begay*).  *Begay* thus narrows the class of persons who are eligible to receive a recidivist sentencing enhancement, and no procedures permit a non-*Begay*-qualifying conviction from being treated as a violent felony.

-53-

*Begay* differs from other substantive rules in that it does not categorically immunize an offender from *any* punishment for his crime, but merely narrows the range of available penalties. From a retroactivity standpoint, however, the difference between immunity from punishment and immunity from enhanced punishment is "one of degree, not one of kind," *Welch*, 604 F.3d at 415, and does not alter the conclusion that *Begay* is retroactive.[22]

### C. *Begay*'s Status As A Substantive Rule Does Not Vary Based On The Nature Of The Claim.

In *Gilbert*, a mandatory guidelines case, this Court assumed that *Begay* was a substantive rule with retroactive effect. 640 F.3d at 1320; see also *Zack* v. *Tucker*, 704 F.3d 917, 925-926 (11th Cir. 2013) (en banc) (citing *Begay* and *Chambers* as examples of new rules that are "retroactive * * * on collateral review"). In *Bryant*, an

---

[22] For the same reasons, the government has conceded that other decisions construing the ACCA, *e.g.*, *Descamps* v. *United States*, 133 S. Ct. 2276 (2013), *Johnson* v. *United States*, 559 U.S. 133, 130 S. Ct. 1265 (2010), *Chambers* v. *United States*, 555 U.S. 122, 129 S. Ct. 687 (2009), announced substantive rules retroactively applicable on collateral review. See *Rozier* v. *United States*, 701 F.3d 681, 684 (11th Cir. 2012) (noting concession that *Johnson* is retroactive). The analysis of why *Begay* is retroactive is equally applicable to these decisions.

ACCA case, the Court held that "[t]he new rule announced in *Begay* applies retroactively on collateral review." *Mackey* v. *Warden*, 739 F.3d 657, 662 (11th Cir. 2014) (citing *Bryant*, 738 F.3d at 1276-1277). Although these cases are not technically controlling here – because Spencer was sentenced under the advisory guidelines – *Begay* narrows eligibility for the advisory career-offender enhancement just as much as it narrowed eligibility for the enhancements in those cases. And, as was true in those cases, no procedures can be afforded to render that enhancement applicable.[23/]

In a supplemental opinion denying rehearing in *Hawkins*, the Seventh Circuit, while agreeing that *Chambers* is retroactive in mandatory guidelines and ACCA cases, stated that *Chambers* was not retroactive in Hawkins' case because he, like Spencer, was challenging an advisory guidelines career-offender enhancement. See *Hawkins* v. *United States*, 724 F.3d 915, 916 (2013). The court reasoned that, because *Peugh* reaffirmed the rule of *Gall* that errors

---

[23/]  A ruling that *Begay* is *retroactive* in all cases does not dictate whether a *Begay*-based claim of error is *cognizable*. This case illustrates the point: although *Begay* is retroactive, Spencer's advisory guidelines claim is not cognizable.

in calculating the advisory guidelines range are "procedural," decisions like *Chambers* that "reinterpret the advisory guidelines don't have retroactive application," *id.* at 917-918, because, in that context, they are procedural rules.

*Hawkins*' dictum that a rule's status as substantive or procedural varies based on the context in which the claim is asserted is questionable.[24/] The Court did not cite any examples of any other rules that were substantive for some purposes and procedural for others, and we are not aware of any such chameleon-like rules. The better view is that a rule either is or is not substantive, and that its status as such does not involve a context-dependent assessment into how the rule is being invoked.

This conclusion also rests on faulty logic. That an error in calculating the defendant's advisory guidelines range renders the sentence "procedurally unreasonable" for *Gall* purposes does not mean that the rule is also "procedural" for *Teague* purposes. *Gall*

---

[24/] The court's discussion of *Chambers*'s retroactivity was "not necessary to the result in that case," *Castillo* v. *Sec'y, Florida DOC*, 722 F.3d 1281, 1290 (11th Cir. 2013), because Hawkins' advisory guidelines claim was not cognizable anyway.

defined "substance" and "procedure" to distinguish between two types of sentencing errors on *direct review*, but those definitions were not derived from, and are not coextensive with, *Teague*'s definitions of "substance" and "procedure" used to categorize the kinds of new rules retroactive on *collateral review*. Given the distinct purposes of *Gall* and *Teague*, there was no basis for equating the two definitions. Cf. *Sun Oil Co.* v. *Wortman*, 486 U.S. 717, 726, 108 S. Ct. 2117, 2124 (1988) ("Except at the extremes, the terms 'substance' and 'procedure' precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn.").

## III.  SPENCER'S CONVICTION FOR THIRD-DEGREE FELONY CHILD ABUSE IS NOT A CAREER-OFFENDER CRIME OF VIOLENCE.

The Florida child-abuse statute under which Spencer was convicted does not categorically define a crime of violence. And, although the statute is divisible, such that the modified categorical approach can be applied, the available *Shepard* documents shed no light on the elements of Spencer's conviction; as a result, there is no way to determine whether Spencer was necessarily convicted of an

offense having an element that corresponds to a crime of violence. On this record, then, Spencer's child-abuse conviction cannot be classified as a crime of violence.

### A. Florida's Felony Child Abuse Statute Does Not Categorically Define A Crime Of Violence.

The first step in determining whether a prior conviction is for a "crime of violence" involves the application of the categorical approach, see *Taylor* v. *United States*, 495 U.S. 575, 110 S. Ct. 2143 (1990), under which courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime – *i.e.*, the offense as commonly understood." *Descamps*, 133 S. Ct. at 2281. In conducting this comparison, courts look "only to the statutory definitions of the prior offenses, and "not to the particular facts underlying those convictions." *Taylor*, 495 U.S. at 600, 110 S. Ct. at 2159.[25/]

---

[25/] *Taylor* devised the categorical approach in determining when a crime listed in the ACCA's enumerated-crimes clause qualifies for enhancement, but a similar categorical analysis governs when the question is whether an offense falls within the residual clause "because, as a categorical matter, it presents a serious potential of physical injury to another." *Sykes* v. *United States*, 131 S. Ct. 2267,

(continued...)

In this case, the "statute forming the basis" for Spencer's conviction makes it a third-degree felony for a person to "knowingly or willfully abuse[] a child," Fla. Stat. § 827.03(1) (2003), and, as noted, the statute contains three alternative definitions of "child abuse." See p.9 n.5, *supra*. A conviction under any of these definitions does not categorically satisfy the residual clause.[26] Although a defendant who commits an intentional act that causes, or could reasonably be expected to cause, "physical injury" to a child would have been convicted of a crime of violence, as Spencer concedes, a defendant who commits an intentional act that causes, or could reasonably be expected to cause, "mental injury" to a child

---

[25](...continued)
2273 (2011); see also, *e.g.*, *United States* v. *Chitwood*, 676 F.3d 971, 976 (11th Cir. 2012) (modified categorical approach applies to the residual clause "where some, but not all, of the violations of a particular statute involve the requisite violence"). The sentencing court in such a case "consider[s] whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiry into the specific conduct of this particular offender." *Sykes*, 131 S. Ct. at 2272 (quoting *James* v. *United States*, 550 U.S. 192, 202, 127 S. Ct. 1586, 1592 (2007)).

[26] A conviction under Florida's child-abuse statute does not qualify for enhancement under either the elements clause or the enumerated-crimes clause.

would not have been convicted of a crime of violence. See 18 U.S.C. § 924(e)(2)(B)(ii) (residual clause requires proof of a "serious potential risk of *physical injury* to another") (emphasis added).[27/] Because the statute reaches conduct that would and would not constitute a crime of violence, it does not categorically define a crime of violence.

### B.    Florida's Felony Child Abuse Statute Is Textually Divisible And Thus Amenable To The Modified Categorical Approach.

When the elements of the statute of conviction are broader than those of the generic offense, as they are here, a conviction under that statute may still support an enhancement under the "modified categorical approach." This approach permits a court to look beyond the statutory text and to consult a limited class of documents to determine "whether the prior conviction involved a determination that the defendant was guilty of each of the elements of the generic

---

[27/] Spencer's passing assertion that the residual clause is "void for vagueness," EB Br. 52 n.14, is perfunctory and undeveloped, and thus waived, see *Old West Annuity* v. *Apollo Group*, 605 F.3d 856, 860 n.1 (11th Cir. 2010). The argument is also meritless. See *United States* v. *Gandy*, 710 F.3d 1234, 1239 (11th Cir. 2013).

offense." *United States* v. *Howard*, 742 F.3d 1334, 1342 (11th Cir.

2014).    When a prior conviction arises from a guilty plea, the

universe of documents that may be consulted in conducting the

modified categorical approach include "the charging document, the

terms of a plea agreement or transcript of colloquy between judge

and defendant in which the factual basis for the plea was confirmed

by the defendant, or * * * some comparable judicial record

of this information," *Shepard*, 544 U.S. at 26, 125 S. Ct. at 1262. This

Circuit has long held that unobjected-to facts in a presentence

investigation report are "comparable judicial record[s]" that may be

consulted in conducting the modified categorical approach.  See, *e.g.*,

*United States* v. *Beckles*, 565 F.3d 832, 843 (11th Cir. 2009); *United*

*States* v. *Bennett*, 472 F.3d 825, 832-834 (11th Cir. 2006).[28]

---

[28] In *Howard*, this Court reaffirmed that sentencing courts may
rely on unobjected-to facts in a presentence report in fashioning an
appropriate sentence while noting, but declining to decide, "what
effect, if any, *Descamps* has on sentencing courts' ability to rely on
unobjected-to facts in the PSR when determining whether to impose
an ACCA enhancement."  742 F.3d at 1349 n.10.  This case does not
present that issue, hoewver, because there are no unobjected-to facts
in the PSR that reflect the basis of Spencer's child-abuse conviction.

1.  Prior to *Descamps*, this Circuit had held that the modified categorical approach could be applied to a conviction under any non-generic statute, see, *e.g.*, *Howard*, 742 F.3d at 1343, but that approach is "no longer tenable after *Descamps*."   *Id.*; see *id.* ("*Descamps* dictates discarding that assumption.").  After *Descamps*, the modified categorical approach may now be applied only to a conviction under a non-generic statute that is textually "divisible," *Descamps*, 133 S. Ct. at 2281; accord *United States* v. *Castleman*, 134 S. Ct. 1405, 1414 (2014), *i.e.*, a statute that "sets out one or more elements of the offense in the alternative."   *Howard*, 742 F.3d at 1343; see also *Descamps*, 133 S. Ct. at 2281.

A textually-divisible statute defines "several different * * * crimes," *Descamps*, 133 S. Ct. at 2285, and therefore, the modified categorical approach serves as a tool by which the court can determine "which [of those alternative crimes] the defendant was convicted of."  *Id.*  But as with the categorical approach, the modified categorical approach "focus[es] on the elements, rather than the facts," *Howard*, 742 F.3d at 1347; courts "must not * * * consult

documents 'to discover what the defendant actually did' and compare that conduct to the elements of the generic offense." *Id*. (quoting *Descamps*, 133 S. Ct. at 2287).

2.  The foregoing principles confirm that Florida's child abuse statute is textually divisible in two different respects.  First, the statute contains three alternative definitions of "child abuse":  (a) intentionally injuring a child, (b) intentionally committing an act that could reasonably cause injury to a child, or (c) encouraging another to commit a qualifying act against a child.  Although disjunctive subsections are not the *sine qua non* of a divisible statute, a legislature's use of such subsections is persuasive evidence that the statute is divisible.  See *United States* v. *Barker*, 723 F.3d 315, 320 (2d Cir. 2013).  Second, each of these three crimes is divisible into distinct sub-crimes depending on whether the offense caused "physical *or* mental" injury.  See *Descamps*, 133 S. Ct. at 2281 (listing as an example of a divisible statute a burglary statute that "involves entry into a building *or* an automobile").

Because the statute is divisible, the modified categorical approach may be applied not only to determine which variant of the child-abuse offense a defendant was convicted of, but also to determine whether the conviction necessarily involved qualifying physical injury or nonqualifying mental injury.

3. Here, the first-level divisibility question is easily answered. The transcript of Spencer's state-court guilty plea colloquy confirms that Spencer was convicted of "engag[ing] in sexual activity with a minor and that action could reasonably cause physical or mental injury to that child," which tracks the language of the second variant of this offense, see Fla. Stat. § 827.03(1)(b). The transcript, however, does not shed any light on the second-level divisibility question because it refers to "physical or mental injury." And none of the remaining *Shepard* documents illuminate the type of injury undergirding Spencer's conviction.

a. *The Information*. The information charged Spencer with lewd and lascivious battery upon a person between the ages of 12 and 16. It alleged that he had "engage[d] in sexual activity with [the

victim], a person 12 years of age or older, but less than 16 years of age, by placing his penis in or upon the vagina of [the victim]," in violation of Fla. Stat. § 800.04(4). Even assuming *arguendo* that a court may consider the allegations in an information charging an offense different from the one the defendant pleaded guilty to, the allegations in this information shed no light on this issue.

b. *The Guilty Plea Transcript.* The transcript of Spencer's guilty plea contains no information regarding the nature of the injury.

c. *The Plea Agreement and Judgment.* Neither the written "Plea of Guilty and Negotiated Sentence" attendant to Spencer's plea nor the ensuing written judgment contain any pertinent information about the basis for the charge as it relates to the victim's harm. These documents merely confirm that Spencer was convicted of third-degree felony child abuse; they say nothing about the elements of the conviction.

d. *The Federal Presentence Report.* The PSR noted that Spencer was originally charged with lewd and lascivious assault on

a child between the ages of 12 and 16, but that he was permitted to plead guilty to what it termed the "lesser include[d] offense of felony child abuse." PSR ¶ 32.[29/] The PSR goes on to state that, "[o]n June 20, 2004, [Spencer] engaged in sexual intercourse with a 14-year-old female victim." *Id.* The "sexual intercourse" description is not an admission that may be considered, however, because Spencer specifically objected to that description (in writing and at the sentencing hearing), so it is not "unobjected to,"[30/] and in any event, it does not illuminate the physical-versus-mental injury issue.

\* \* \*

Although the sentencing court erred in classifying Spencer's conviction as a crime of violence, the question whether an error occurred in the first instance is separate and distinct from the ultimate question whether the alleged error amounts to a complete miscarriage of justice so as to be cognizable on collateral review. For

---

[29/] As the panel noted, 727 F.3d at 1094 n.39, the charge to which Spencer pleaded guilty was not a "lesser-included" offense.

[30/] That said, Spencer's Section 2255 motion attached an affidavit from the victim herself who explained that she and Spencer had indeed engaged in intercourse.

the reasons stated in Part I, *supra*, it did not.

## C.    The Intervening Change In Law Brought About By *Descamps* Permits Spencer To Relitigate His Claim

The Court did not request supplemental briefing on the significance (if any) of the fact that, during direct review, Spencer litigated the very same claim he now seeks to litigate on collateral review, *i.e.*, whether his child-abuse conviction is a crime of violence. The panel addressed that issue, however, and it held that the so-called relitigation bar – *i.e.*, the rule that "claims will ordinarily not be entertained under Section 2255 that have already been rejected on direct review," *Reed*, 512 U.S. at 358, 114 S. Ct. at 2302 (Scalia, J., concurring in part); see *United States* v. *Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) – did not preclude Spencer from relitigating his claim now because *Begay* was an intervening change in the governing substantive law. 727 F.3d at 1096-1099; see also *Davis*, 417 U.S. at 342, 94 S. Ct. at 2303 (exception to the relitigation bar when there has been an intervening change in the substantive law); *Rozier* v. *United States*, 701 F.3d 681, 684 (11th Cir. 2012) (same).

-67-

Although *Begay* did change the governing substantive law in a generalized sense, the panel failed to appreciate that this change had no effect on Spencer's case. As the panel conceded, the Florida statute under which Spencer was convicted depends upon proof of "knowing[] or willful[]" action by the abuser, Fla. Stat. § 827.03(2)(c), and, for that reason, the panel properly recognized that the statute defined a "general intent" crime, 727 F.3d at 1098; see *Witt* v. *State*, 780 So.2d 946, 947 (Fla. 5 Dist. Ct. App. 2001) (requirement of knowing or willful conduct in aggravated child-abuse statute ensures that "the abuse * * * is knowing and not merely negligent"). Because the statute has an express *mens rea* requirement beyond mere recklessness, *Begay*'s framework does not apply. See, *e.g.*, *Williams* v. *Warden*, 713 F.3d 1332, 1347 n.6 (11th Cir. 2013) (holding that *Sykes* v. *United States*, 131 S. Ct. 2267 (2011), limited *Begay* to strict liability, negligence and recklessness crimes); accord *United States* v. *Schneider*, 681 F.3d 1273, 1279-1280 (11th Cir. 2012); *United States* v. *Chitwood*, 676 F.3d 971, 979 (11th Cir. 2012). Because *Begay* thus is irrelevant, it cannot authorize Spencer to relitigate his

claim.

But *Descamps* does authorize relitigation.  Like *Begay*, *Descamps* alters the governing substantive law, and unlike *Begay*, that alteration does affect the analysis in a significant respect.  In affirming the district court's ruling that Spencer's conviction was for a crime of violence, this Court applied the modified categorical approach.  Drawing on prior cases involving the inherent risk of physical injury to minor victims associated with sexual offenses, the panel concluded that "Spencer's predicate conviction for felony child abuse involved a serious potential risk of physical injury to another." Although the opinion is not entirely clear about how it reached that conclusion, it appears, from the court's reliance on cases involving physical harm from sex offenses, that the court focused on what Spencer "actually did" – *i.e.*, had sexual intercourse with a young girl – and then compared that conduct to the generic offense.

That mode of analysis not only assumes the answer to the determinative question of whether Spencer was necessarily convicted of an offense involving physical as opposed to mental injury, but it

also fails to heed *Descamps*' requirement that courts "focus on the elements, rather than the facts," *Howard*, 742 F.3d at 1347; see also *Descamps*, 133 S. Ct. at 2287.   The intervening change in law brought about by *Descamps*, and its refinement of how courts are to apply the modified categorical approach, therefore permits Spencer to relitigate his claim.

## CONCLUSION

The judgment should be affirmed.

Respectfully submitted,

A. LEE BENTLEY III
   *United States Attorney*

DAVID A. O'NEIL
   *Acting Assistant Attorney General*

DAVID P. RHODES
LINDA JULIN MCNAMARA
   *Assistant U.S. Attorneys*
   *Appellate Division*
   *Middle District of Florida*

DAVID M. BITKOWER
   *Deputy Assistant Attorney General*

By: *Michael A. Rotker*

MICHAEL A. ROTKER
   *Attorney, Appellate Section*

   *Criminal Division*
   *United States Department of Justice*
   *950 Pennsylvania Ave NW*
   *Suite 1264*
   *Washington, D.C.  20530*
   *(202) 514-3308*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing Supplemental Brief for the United States on Rehearing En Banc uses a proportionally spaced font – Century Schoolbook, 14-point – and contains 13,220 words, which is less than the 14,000 word limit set by Fed. R. App. P. 32(a)(7)(B)(i).

*Michael A. Rotker*
_____
MICHAEL A. ROTKER
    *Attorney*
    *United States Department of Justice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused two (2) true and correct copies of the foregoing Supplemental Brief for the United States on Rehearing En Banc to be served this 21st day of May 2014, by the Court's ECF system and first class mail, postage prepaid, on:

Bruce Maloy, Esq.
Maloy, Jenkins & Parker
75 Fourteenth Street, NW
25th Floor
Atlanta, GA 30309
(404) 875-2700

Kimberly J. Johnson, Esq.
Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C.
3455 Peachtree Road, NE
The Pinnacle, Suite 925
Atlanta, GA 30326-3243
(404) 523-7706
   *Appointed Counsel for Kevin Spencer*

Michael B. Kimberly, Esq.
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3127
   *Counsel for Amicus Curiae*

*Michael A. Rotker*
—————————————————
MICHAEL A. ROTKER
   *Attorney*
   *United States Department of Justice*

# ADDENDUM A

## Table Of Career Offenders Sentenced
## in Fiscal Year 2013 By Departure Status

Prepared by The Office Of Policy and Legislation,
United States Department of Justice, Criminal Division,
based on data provided by the United States
Sentencing Commission

### CAREER OFFENDERS SENTENCED
### IN FY 2013 BY DEPARTURE STATUS

| | 2013 | |
|---|---|---|
| | Count | Percent |
| **Within Range** | *671* | *29.6%* |
| **Upward Departure** | *11* | *.5%* |
| **Upward Departure with Booker** | *1* | *.0%* |
| **Above Range with Booker** | *15* | *.7%* |
| **Remaining Above Range** | *1* | *.0%* |
| **5K1.1/Substantial Assistance** | *569* | *25.1%* |
| **Early Disposition/Fast Track** | *21* | *.9%* |
| **Gov. Sponsored Below Range** | *338* | *14.9%* |
| **Downward Departure** | *54* | *2.4%* |
| **Downward Departure with Booker** | *50* | *2.2%* |
| **Below Range with Booker** | *529* | *23.3%* |
| **Remaining Below Range** | *8* | *.4%* |
| **Total** | *2268* | *100.0%* |

Source: Table prepared by the Office of Policy and Legislation, Criminal Division, from data provided by the U.S. Sentencing Commission.

### CAREER OFFENDERS SENTENCED
### IN FY 2013 BY DEPARTURE STATUS

| | 2013 | |
|---|---|---|
| | Count | Percent |
| **Within Range** | *671* | *29.6%* |
| **Upward Departure & Above the Range** | *28* | *1.2%* |
| **5K1.1/Substantial Assistance** | *569* | *25.1%* |
| **Early Disposition/Fast Track** | *21* | *.9%* |
| **Other Gov. Sponsored Below Range** | *338* | *14.9%* |
| **Non-Gov. Sponsored Downward Dep. and Oher Below Range** | *641* | *28.3%* |
| **Total** | *2268* | *100.0%* |

Source: Table prepared by the Office of Policy and Legislation, Criminal Division, from data provided by the U.S. Sentencing Commission.